# EXHIBIT 16

**quinn emanuel** trial lawyers | boston

111 Huntington Avenue, Suite 520, Boston, Massachusetts 02199-7626 | TEL (617) 712-7100 FAX (617) 712-7200

WRITER'S DIRECT DIAL NO.
**(617) 712-7103**

WRITER'S EMAIL ADDRESS
**patrickcurran@quinnemanuel.com**

April 4, 2020

Douglas Lumish
Latham & Watkins LLP
140 Scott Drive
Menlo Park, CA 94025

Re:   *Neural Magic, Inc. v. Facebook, Inc.*, No. 20-CV-10444 (D. Mass.)

Dear Doug:

Thank you for your April 7, 2020 letter. Your letter unfortunately confirms that, although we have tried in good faith to cooperatively achieve your stated goal of mooting Neural Magic's planned motion for a preliminary injunction, we have now reached an impasse. Neural Magic will proceed with its motion. If your client reconsiders any of its positions Neural Magic remains open to constructive discussions aimed at resolving this dispute.

<u>Trade secret definitions</u>. Thank you for acknowledging Facebook understands the scope of trade secrets at issue in Neural Magic's preliminary injunction papers. We appear to disagree on whether these techniques were in fact secret, or were instead public; your letter claims that "the broad categories of information that NMI references (register allocations, timing sequences for FMA instructions, and cache reuse) have been known for years, as evidenced by the Liu paper, and so cannot be trade secrets." We disagree that the specific algorithms used by Neural Magic, and later by Facebook, for performance-engineering enhancements in sparse matrix multiplication were known. We will proceed to engage the Court on this issue and will work with you to resolve our dispute in the litigation process.

<u>Liu</u>. In our April 4, letter, we noted that "Facebook has yet to explain what in Liu supposedly discloses the trade secrets at issue," and asked for "your explanation on that issue." (April 4 Ltr. at 2.) We also noted that Facebook repeatedly asserted, in multiple letters, that its approach was "derived" from Liu (not "disclosed" by Liu). *Id*. We asked that you "[p]lease explain the basis for that contention, including the persons at Facebook who purportedly 'derived' this technique" from Liu, as well as "when this work began, and when that work completed." *Id*. Your letter ignores this entirely—and curiously, no longer claims Facebook "derived" techniques from Liu.

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Instead, your letter now claims the techniques at issue are "evidenced by the Liu paper" (April 7 Ltr. at 1) but cites no particular disclosures in the Liu paper as evidencing any of the techniques we identified.

We are confused by Facebook's position. Is Facebook abandoning its prior claim that particular employees at Facebook "derived" the techniques at issue from Liu? If not, will Facebook provide the basis for its "derivation" claim? And if Facebook is abandoning its "derivation" arguments, will Facebook explain what in Liu "evidences" Neural Magic's performance-engineering techniques?

Scope of Facebook's proposed voluntary commitment. As we explained on April 4, and as we had previously explained on March 31, "our client is deeply concerned that carefully-worded statements in your letter regarding restrictions Facebook purportedly placed on further use of particular 'code' may be an effort to continue using Neural Magic's algorithms, via alternatively implementations of those algorithms in internal code that was not published on GitHub." (April 4 Ltr. at 1; March 31 Ltr. at 2.) We also explained "that it was insufficient for Facebook to only represent that it is not using the accused code or any derivative works of that code, as this does not address the *algorithms* at issue—only code that memorializes one *implementation* of those algorithms." (April 4 Ltr. at 1, quoting March 31 Ltr. at 3.) We asked that Facebook "address my client's concern that its trade-secret algorithms are being used in other code Facebook did not yet publish." (April 4 Ltr. at 1.) We also noted that this should not be difficult to confirm or deny; "Facebook need not search every line of code in the company – only its very limited base of *sparse matrix execution* code," which is "a targeted and discrete inquiry." (*Id*. at 2.)

Your April 7 response does not address whether Neural magic's "trade-secret algorithms are being used in other code Facebook did not yet publish," as my client requested. Instead your letter carefully avoids addressing *existing* code internal to Facebook, offering only not to write *new* code in the future: "Facebook is not 'using the accused code as a reference for writing *new* code or making derivative works *of that* code,' and that 'the algorithms in the accused code are not being analyzed by Facebook engineers and *recreated in new code*." (April 7 Ltr. at 1.) Your client's refusal to address existing internal code heightens my client's concerns with the scope of Facebook's proposed voluntary commitment. We disagree with your assertion that "Facebook has gone above and beyond anything the law would impose." (*Id*. at 1.) The law requires Facebook to cease using misappropriated trade secrets in *any* code—old or new. Neural Magic will be forced to pursue that remedy in the litigation process. If your client reconsiders, please let us know promptly.

Thank you again for your willingness to discuss these issues.

Sincerely,

Patrick D. Curran

09780-00001/12076758.1