**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NEURAL MAGIC, INC.,<br><br>    Plaintiff,<br><br>            v.<br><br>FACEBOOK, INC. and ALEKSANDAR ZLATESKI,<br><br>    Defendants. | Civil Action No. 1:20-cv-10444-DJC<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
<u>PARTIAL MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ....................................................................................................................2

III. APPLICABLE LEGAL STANDARDS ..................................................................................2

    A. Motions To Dismiss ....................................................................................................2

    B. The MUTSA And Preemption ....................................................................................3

        1. MUTSA Preemption Applies Regardless Of Whether Allegedly Confidential Information Qualifies As A Trade Secret ...............................4

        2. MUTSA Preemption Applies To Any Claims Arising From The Same Operative Facts As An Alleged Misuse Of Confidential Information ........................................................................................................7

IV. COUNTS III AND VI OF NMI'S COMPLAINT SHOULD BE DISMISSED, AND COUNT V SHOULD BE DISMISSED IN PART ................................................10

    A. NMI's Chapter 93A Claim (Count III) Should Be Dismissed ................................10

    B. NMI's Unjust Enrichment Claim (Count VI) Should Be Dismissed ......................11

    C. NMI's Tortious Interference Claim (Count V) Should Be Dismissed In Part ..............................................................................................................................12

V. CONCLUSION .....................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AccuImage Diagnostics Corp v. Terarecon, Inc.*,
 260 F. Supp. 2d 941 (N.D. Cal. 2003) ........................................................................................6

*Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*,
 649 F. Supp. 2d 702 (N.D. Ohio 2009) ......................................................................................5

*Auto Channel, Inc. v. Speedvision Network, LLC*,
 144 F. Supp. 2d 784 (W.D. Ky. 2001) ....................................................................................5, 8

*Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*,
 2017 WL 412524 (N.D. Cal. Jan. 31, 2017) ............................................................................5, 7

*Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*,
 270 F. Supp. 2d 943 (W.D. Mich. 2003) ....................................................................................5

*Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*,
 No. CV 16-2499, 2017 WL 1105648 (E.D. Pa. Mar. 24, 2017) .................................................3

*Chatterbox, LLC v. Pulsar Ecoproducts, LLC*,
 2007 WL 1388183 (D. Idaho May 9, 2007) ...............................................................................5

*Diamond Power Int'l, Inc. v. Davidson*,
 540 F. Supp. 2d 1322 (N.D. Ga. 2007) .........................................................................4, 5, 9, 11

*Ethypharm S.A. France v. Bentley Pharm., Inc.*,
 388 F. Supp. 2d 426 (D. Del. 2005) .......................................................................................8, 11

*Evariste v. Massachusetts*,
 No. CV 19-10671-NMG, 2020 WL 409340 (D. Mass. Jan. 24, 2020) ......................................3

*Firetrace USA, LLC v. Jesclard*,
 800 F. Supp. 2d 1042 (D. Ariz. 2010) ........................................................................................5

*Hauck Mfg. Co. v. Astec Indus., Inc.*,
 375 F. Supp. 2d 649 (E.D. Tenn. 2004) ............................................................................ *passim*

*Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*,
 139 S. Ct. 628 (2019) ..................................................................................................................6

*Maine Pointe, LLC v. Collins*,
 No. CV 18-12072, 2018 WL 5303038 (D. Mass. Oct. 25, 2018) ...............................................3

*Mattel, Inc. v. MGA Entm't, Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ..............................................................................5, 6

*Meyn America, LLC v. Tarheel Distributors, Inc.*,
    36 F. Supp. 3d 1395 (M.D. Ga. 2014) ...................................................................................10

*Nat'l Cas. Co. v. OneBeacon Am. Ins. Co.*,
    No. CIV.A. 12-11874-DJC, 2013 WL 3335022 (D. Mass. July 1, 2013) ..................................1

*O'Hara v. Diageo-Guinness, USA, Inc.*,
    306 F. Supp. 3d 441 (D. Mass. 2018) ....................................................................................11

*Office Depot, Inc. v. Impact Office Prod., LLC*,
    821 F. Supp. 2d 912 (N.D. Ohio 2011).......................................................................7, 10, 12

*Petrosyan v. Maserati N. Am., Inc.*,
    No. 19-CV-12425-DJC, 2020 WL 2104789 (D. Mass. May 1, 2020) ......................................3

*Powell Prod., Inc. v. Marks*,
    948 F. Supp. 1469 (D. Colo. 1996) ..........................................................................................8

*PartyLite Gifts, Inc. v. Swiss Colony Occasions*,
    246 F. App'x 969 (6th Cir. 2007) ............................................................................................5

*Tomasella v. Nestle USA, Inc.*,
    364 F. Supp. 3d 26 (D. Mass. 2019) ......................................................................................11

*Yates v. United States*,
    574 U.S. 528 (2015)..................................................................................................................7

**State Cases**

*Amgen USA, Inc. v. Karyopharm Therapeutics, Inc.*,
    2019 WL 3552515 (Mass. Super. June 12, 2019)....................................................................4

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*,
    123 Haw. 314 (2010) .....................................................................................................5, 8, 9

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
    171 Cal. App. 4th 939 (2009) .....................................................................................7, 9, 10, 11

*Mortg. Specialists, Inc. v. Davey*,
    153 N.H. 764 (2006) ........................................................................................................5, 7, 8

*Savor, Inc. v. FMR Corp.*,
    812 A.2d 894 (Del. 2002) ....................................................................................................5, 8

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (2010) ..................................................................................................6

*Swanset Dev. Corp. v. City of Taunton*,
   423 Mass. 390 (1996) ..................................................................................................12

*Weins v. Sporleder*,
   605 N.W.2d 488 (S.D. 2000) .....................................................................................5, 8

**Federal Statutes**

18 U.S.C. §§ 1836(b)(3)(A)-(B) ..........................................................................................11

**State Statutes**

M.G.L. 93 § 42A-42G.............................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................................................3

**I.      INTRODUCTION**

Plaintiff Neural Magic, Inc. ("NMI") accuses Defendants Facebook, Inc. ("Facebook") and Dr. Aleksandar Zlateski of trade secret misappropriation under the Massachusetts Uniform Trade Secrets Act ("MUTSA") (Count I) and Defend Trade Secrets Act ("DTSA") (Count II). NMI also asserts claims for a violation of Mass. Gen. L. c. 93A § 11 (Count III), unjust enrichment (Count VI), and tortious interference (Count V). But these latter claims are preempted, in whole or in part, under the MUTSA, which "supersede[s] any conflicting laws of the commonwealth providing civil remedies for the misappropriation of a trade secret." M.G.L. 93 § 42F(a).

In enacting the MUTSA in October 2018, Massachusetts joined forty-seven other states in adopting some form of the Uniform Trade Secrets Act ("UTSA"). The UTSA was designed to bring clarity and a uniform set of principles to the states' web of rules and rationales for determining when a party is, or is not, liable for acquiring, disclosing, or using another's information of value. A vast majority of the states that have enacted the UTSA hold that the UTSA preempts (or supersedes) any other state law claims based on the same nucleus of facts as a misappropriation claim. This Court should adopt and apply the majority rule.

Under the majority rule, NMI's Chapter 93A, unjust enrichment, and tortious interference claims are preempted, as a matter of law, because they are based in whole (Counts III and VI) or in part (Count V) on the same allegations as NMI's MUTSA claim. Consequently, Counts III and VI should be dismissed,[1] and Count V should be dismissed in part.[2]

---

[1] NMI's unjust enrichment claim (Count VI) also fails because adequate remedies at law exist for the harm NMI alleges, e.g., pursuant to the MUTSA and DTSA.

[2] Defendants' "partial motion to dismiss suspends the time to answer the claims not subject to th[is] motion." *Nat'l Cas. Co. v. OneBeacon Am. Ins. Co.*, No. CIV.A. 12-11874-DJC, 2013 WL 3335022, at *6 (D. Mass. July 1, 2013).

1

## II. BACKGROUND

NMI filed its complaint on March 4, 2020. D.I. 1. NMI asserted claims under the MUTSA (Count I), the DTSA (Count II), and Chapter 93A (Count III), and for breach of contract (Count IV), tortious interference (Count V), and unjust enrichment (Count VI). *Id.* NMI's claims relate to its allegations that Dr. Zlateski, a former employee of NMI, stole NMI trade secrets when he left the company to work for Facebook, and that Facebook then used and published those trade secrets. *See* D.I. 1 ¶¶ 24, 28. Each of NMI's counts arises out of, and incorporates by reference, these allegations. *See id.* ¶¶ 39, 48, 58, 63, 76, 83.

With respect to NMI's Chapter 93A claim (Count III), specifically, NMI alleges that "Zlateski's and Facebook's unfair conduct included, but is not limited to stealing [NMI's] trade secrets . . . and publishing them publicly and for free." *Id.* ¶ 60. For its unjust enrichment claim (Count VI), NMI alleges that Facebook and Dr. Zlateski enjoyed an "economic benefit [a]s a direct and proximate result of their unjust and unconscionable conduct in using confidential, proprietary, and trade secret information from [NMI]." *Id.* ¶¶ 83-87. In its tortious interference claim (Count V), NMI alleges that Facebook interfered with two separate provisions of Dr. Zlateski's contract with NMI, a non-disclosure provision and a non-competition provision. *See id.* at ¶¶ 77-78. NMI's claims concerning the former provision are based on the same allegations as its trade secrets claims. *See id.* ¶ 78 (alleging that Facebook interfered with a contractual relationship "by seeking disclosure of [NMI's] trade secrets, and other confidential and proprietary information.").

The parties met and conferred to discuss this motion on May 7, 2020, and continued to discuss MUTSA preemption in subsequent correspondence, but could not resolve their disputes.

## III. APPLICABLE LEGAL STANDARDS

### A. Motions To Dismiss

"On a motion to dismiss for failure to state a claim upon which relief can be granted

2

pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged 'plausibly narrate a claim for relief.'" *Petrosyan v. Maserati N. Am., Inc.*, No. 19-CV-12425-DJC, 2020 WL 2104789, at *1 (D. Mass. May 1, 2020) (citations omitted). "Reading the complaint 'as a whole,' the Court must conduct a two-step, context-specific inquiry." *Id.* First, the Court must distinguish factual allegations from conclusory legal allegations. *Id.* "Second, the Court must determine whether the factual allegations present a 'reasonable inference that the defendant is liable for the conduct alleged.'" *Id.* "In sum, the complaint must provide sufficient factual allegations for the Court to find the claim 'plausible on its face.'" *Id.* Where a claim fails as a matter of law, dismissal is appropriate. *Evariste v. Massachusetts*, No. CV 19-10671-NMG, 2020 WL 409340, at *2 (D. Mass. Jan. 24, 2020) (dismissing claims because "[a]s a matter of law, the conduct does not" state a claim).

### B.     The MUTSA And Preemption

The MUTSA became effective on October 1, 2018. In addition to Massachusetts, forty-seven other states have adopted some form of the Uniform Trade Secrets Act ("UTSA").[3]

The MUTSA "does not apply to any violations that occurred before October 1, 2018 or began prior to October 1, 2018 and continued past that date." *Maine Pointe, LLC v. Collins*, No. CV 18-12072, 2018 WL 5303038, at *4 (D. Mass. Oct. 25, 2018). Thus, few cases have addressed

---

[3] The UTSA is one of many model codes developed by the Uniform Law Commission (ULC), a non-profit association dedicated to providing states with "legislation that brings clarity and stability to critical areas of state statutory law." The UTSA was drafted in 1979 and amended in 1985, and has been approved by the American Bar Association. According to the ULC, UTSA statutes have been adopted in Massachusetts as well as 47 other states, the District of Columbia, and the U.S. Virgin Islands. *See* https://www.uniformlaws.org/committees/community-home?CommunityKey=3a2538fb-e030-4e2d-a9e2-90373dc05792; *see also Brand Energy & Infrastructure Servs., Inc. v. Irex Contracting Grp.*, No. CV 16-2499, 2017 WL 1105648, at *7 (E.D. Pa. Mar. 24, 2017) ("The UTSA has formed the basis of trade secrets laws in almost every state that has passed one"). A copy of the UTSA is available at https://www.uniformlaws.org/HigherLogic/System/DownloadDocumentFile.ashx?DocumentFileKey=e19b2528-e0b1-0054-23c4-8069701a4b62&forceDialog=0.

the MUTSA or its "effect on other law" provision, which states that the MUTSA "supersede[s] any conflicting laws of the commonwealth providing civil remedies for the misappropriation of a trade secret." M.G.L. 93 § 42F(a); *cf. Amgen USA, Inc. v. Karyopharm Therapeutics, Inc.*, 2019 WL 3552515, at *4 (Mass. Super. June 12, 2019) ("exclusivity provisions of MUTSA" could not be the basis for a motion to dismiss because complaint alleged only "wrongful conduct beginning before the effective date of MUTSA"). There is, however, ample authority to guide the Court's interpretation and application of this preemption-related provision. As discussed further below, such authority demonstrates that—consistent with the express language of the MUTSA's § 42F— "any" other state law claims based on an alleged misuse of confidential information are preempted.

**1. MUTSA Preemption Applies Regardless Of Whether Allegedly Confidential Information Qualifies As A Trade Secret**

Preemption under the MUTSA should apply to all claims arising out of the alleged misuse of confidential information, regardless of whether that information meets the statutory requirements for a trade secret. This is consistent with (i) the vast majority of decisions regarding UTSA preemption and (ii) the text and history of the MUTSA.

The official UTSA comment on preemption states that the UTSA's duty is to "protect *competitively significant secret information*." UTSA § 7 (emphasis added). Thus, numerous courts across the country apply UTSA preemption broadly, to preclude claims related to misuse of any confidential information (i.e., any alleged "competitively significant secret information"), irrespective of whether that information qualifies as a trade secret.[4]

---

[4] Under the minority view, common law claims are preempted only if underlying confidential information satisfies the statutory definition of a "trade secret." Courts, however, have recognized that such a narrow focus renders preemption meaningless and transforms UTSA implementations into more difficult alternative (rather than exclusive) avenues for relief. *See, e.g., Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1345 (N.D. Ga. 2007) (rejecting minority approach: "[I]t would make little sense to go through the rigamarole of proving information was truly a trade secret if a plaintiff could alternatively plead claims with less burdensome requirements of proof.");

California, for instance, adopted the UTSA in 1984 and has a significant body of case law interpreting CUTSA preemption (or "supersession"). That case law provides that the CUTSA "supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret." *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011); *see also Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, 2017 WL 412524, at *6 (N.D. Cal. Jan. 31, 2017) ("[P]reemption extends to claims based on the misappropriation of confidential and proprietary information, regardless of whether it qualifies as a 'trade secret'") (collecting cases). Most other states (over two-thirds) adhere to this rule. *See Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 655 (E.D. Tenn. 2004) ("[T]he UTSA's preemption provision has generally been interpreted to abolish all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information," including those "falling short of trade secret status.") (collecting cases).[5]

This rule has been widely adopted because it gives effect to the "prime purpose of the [UTSA]"—"to sweep away the adopting states' bewildering web of rules and rationales and

---

*Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 949 (W.D. Mich. 2003) (rejecting minority approach: "[A]llowing otherwise displaced tort claims to proceed on the basis that the information may not rise to the level of a trade secret would defeat the purpose of the UTSA.").

[5] *See also Mortg. Specialists, Inc. v. Davey*, 153 N.H. 764, 777 (2006) (New Hampshire UTSA); *PartyLite Gifts, Inc. v. Swiss Colony Occasions*, 246 F. App'x 969, 976 (6th Cir. 2007) (Tennessee UTSA); *Diamond Power*, 540 F. Supp. 2d at 1345 (Georgia UTSA); *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 789 (W.D. Ky. 2001) (Kentucky UTSA); *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 949 (W.D. Mich. 2003) (Michigan UTSA); *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.,* 123 Haw. 314, 328 (2010) (Hawaii UTSA); *Weins v. Sporleder*, 605 N.W.2d 488, 492 (S.D. 2000) (South Dakota UTSA); *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002) (Delaware UTSA); *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 722 (N.D. Ohio 2009) (Ohio UTSA); *Firetrace USA, LLC v. Jesclard*, 800 F. Supp. 2d 1042, 1048 (D. Ariz. 2010) (Arizona UTSA); *Chatterbox, LLC v. Pulsar Ecoproducts, LLC*, 2007 WL 1388183, at *3 (D. Idaho May 9, 2007) (Idaho UTSA).

replace it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information ... of value.'" *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 (2010), *overruled on other grounds in Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011).  If UTSA implementations and their preemption provisions can be sidestepped by carefully-pled, alternative claims based on confidential or proprietary (but not trade secret) information, such statues would be meaningless.  *See Mattel*, 782 F. Supp. 2d at 986 (failure to follow the majority rule "render[s] the statute's purpose irrelevant"); *see also Hauck,* 375 F. Supp. 2d at 656 ("[A] plaintiff surely cannot use general tort causes of action to revive claims which would otherwise not be cognizable in light of the UTSA (i.e., claims alleging theft of non-trade secret information).  It is a legal *non sequit[u]r* to suggest general tort causes may be employed to protect legal rights which otherwise do not exist.").

In addition, the history and text of the MUTSA confirm that preemption under the MUTSA should apply to claims relating to any confidential information, not just information that qualifies as trade secret information.  The MUTSA was adopted in Massachusetts in 2018 after decades of other states' adoption and interpretation of the UTSA, including preemption provisions.  *See, e.g., AccuImage Diagnostics Corp v. Terarecon, Inc.,* 260 F. Supp. 2d 941, 954 (N.D. Cal. 2003).  Thus, Massachusetts' adoption of the MUTSA effectively incorporated the majority view.  *See Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 139 S. Ct. 628, 633 (2019) (where a legislature has enacted the same language previously used, courts presume "it adopted the earlier judicial construction of that" language).  Indeed, in enacting the MUTSA, the legislature made clear that the MUTSA "shall be applied and construed to effectuate [its] general purpose to make uniform the law with respect to trade secrets."  M.G.L. 93 § 42G.  Also, the MUTSA's preemption provision is broader than that of the UTSA.  Where the UTSA preempts "conflicting tort,

restitutionary, and other law," the MUTSA "supersede[s] *any* conflicting laws." UTSA § 7; M.G.L. 93 § 42F.[6] In short, the MUTSA's language is broad by design.

For these reasons, MUTSA preemption applies to all claims arising out of an alleged misuse of confidential information, whether trade secret or not.[7]

### 2. MUTSA Preemption Applies To Any Claims Arising From The Same Operative Facts As An Alleged Misuse Of Confidential Information

Preemption under the MUTSA should apply to all claims arising out of the same operative facts as an alleged misuse of confidential information. This too is consistent with (i) the vast majority of decisions regarding UTSA preemption and (ii) the history and text of the MUTSA.

The majority rule is that preemption applies to all claims "'based on the same nucleus of facts as [a] misappropriation of trade secrets claim for relief.'" *Avago*, 2017 WL 412524, at *5 (CUTSA preempts conversion claim and recovery on property claim); *see also K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009) (CUTSA "'occupies the field' of common law claims based on the misappropriation of a trade secret"; breach of confidence, interference with contract, and unfair competition claims preempted). States across the country—over 75% of the UTSA jurisdictions that have addressed the issue—adhere to this rule. *See e.g.*, *Office Depot, Inc. v. Impact Office Prod., LLC*, 821 F. Supp. 2d 912, 919 (N.D.

---

[6] As a result, the MUTSA prevents the application of the doctrines of *noscitur a sociis* and *ejusdem generis*, which might otherwise limit the scope of its preemption. *See Yates v. United States,* 574 U.S. 528, 543 (2015) (*noscitur a sociis* narrows catch-all words "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words"; *ejusdem generis* narrows because "general words are [usually] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.").

[7] That the MUTSA (like the UTSA) exempts contract claims from preemption further supports this conclusion because if confidential information needs protections other than those afforded by the MUTSA, parties are free to contract for that protection. *See Mortg. Specialists, Inc. v. Davey*, 153 N.H. 764, 777 (2006) (NHUTSA "continues to permit individuals and corporate entities to protect their valuable commercial information *contractually*, regardless of whether such information meets the statutory definition of 'trade secret'") (emphasis in original).

Ohio 2011) (Ohio UTSA preempts unjust enrichment, tortious interference, breach of duty, and other claims related to, and restating the operative facts of, a trade secret claim); *Ethypharm S.A. France v. Bentley Pharm., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005) (DUTSA preempts fraud, unjust enrichment, and, to the extent based on misappropriation, intentional interference with contractual relations claims). These states correctly recognize that under the UTSA, "all claims stemming from the same acts as the alleged misappropriation are intended to be displaced." *Id.*[8]

The alternative, minority view followed by just a handful of states, holds that claims are preempted only if they have the same elements as misappropriation claims. *See Powell Prod., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996). As a majority of courts have found, this view is too narrow, at least because "courts should be wary of the possibility of duplicative recoveries for the same injury." *Hauck*, 375 F. Supp. 2d at 657 (rejecting *Powell* test as "extreme"); *see also BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 123 Haw. 314, 320 (2010) (same).

The majority rule is the better one. "[I]f proof of a non-UTSA claim would also simultaneously establish a claim for misappropriation of trade secrets," it should be preempted "irrespective of whatever surplus elements or proof were necessary to establish it." *Hauck*, 375 F. Supp. 2d at 657. Otherwise, "a plaintiff could alternatively recover for misappropriation of non-proprietary information or misappropriation of unguarded proprietary information," and "the

---

[8] *See also Mortg. Specialists, Inc. v. Davey*, 153 N.H. 764, 777 (2006) (NHUTSA preempts conversion, and breach of fiduciary duty claims, and other claims to the extent they rely on alleged misappropriation); *Hauck,* 375 F. Supp. 2d at 659 (TUTSA preempts tortious interference claims with respect to non-disclosure, as well as conspiracy, conversion, and unjust enrichment claims); *Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 789 (W.D. Ky. 2001) (KUTSA preempts unfair competition, quasi-contract, fraud and misrepresentation, and breach of fiduciary duty claims); *BlueEarth,* 123 Haw. at 328 (HUTSA follows "same proof" standard outlined in *Hauck*); *Weins v. Sporleder*, 605 N.W.2d 488, 492 (S.D. 2000) (SDUTSA preempts fraud claims); *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 898 (Del. 2002) (DUTSA preempts unfair competition and conspiracy claims).

legislative judgment contained in the [UTSA]—that such information should otherwise flow freely in the public domain—would be subverted." *Diamond Power*, 540 F. Supp. 2d at 1345 (Georgia UTSA preempts conversion, unjust enrichment, breach of fiduciary duty, and tortious interference with contract claims). This would conflict with the purpose and mandates of the UTSA. *Id.* In contrast, the majority rule gives effect to that purpose—increasing uniformity and predictability of the law governing the protection of confidential information.

Furthermore, as discussed above, the history and text of the MUTSA confirm that MUTSA preemption should apply broadly and "supersede *any* conflicting laws of the commonwealth providing civil remedies for the misappropriation of a trade secret." M.G.L. 93 § 42F(a). That breadth is further confirmed by the narrowness of the MUTSA's exception for "other civil remedies to the extent that they are *not based upon misappropriation of a trade secret*." M.G.L. 93 § 42F(b)(3). By expressly exempting other civil remedies only "to the extent they are not based upon misappropriation," the MUTSA necessarily preempts all civil remedies that are based on misappropriation. *See BlueEarth*, 123 Haw. at 320 (excluding from preemption "only those claims 'not *based upon* misappropriation of a trade secret,' impl[ies that] the UTSA's preemptive force reaches more than just claims *of* or *for* misappropriation of a trade secret") (quoting *Hauck*, 375 F. Supp. 2d at 658) (emphasis in original); *see also K.C. Multimedia*, 171 Cal. App. 4th at 958 (preemption would be "rendered meaningless" if "claims which are based on trade secret misappropriation are not preempted").

For these reasons, MUTSA preemption applies to *any* conflicting claims with the same nucleus of operative facts as an alleged misappropriation of confidential information.

### IV. COUNTS III AND VI OF NMI'S COMPLAINT SHOULD BE DISMISSED, AND COUNT V SHOULD BE DISMISSED IN PART

NMI's Chapter 93A (Count III) and unjust enrichment (Count VI) claims are based in whole on NMI's allegations of trade secret misappropriation, and NMI's claim for tortious interference (Count V) is based in part on those allegations. Consequently, in accordance with the MUTSA's preemption provision, NMI's Counts III and VI are preempted in their entirety, and NMI's Count V is preempted in part, as a matter of law.

#### A. NMI's Chapter 93A Claim (Count III) Should Be Dismissed

NMI's Chapter 93A claim (Count III) is based solely on NMI's allegation that Facebook and Dr. Zlateski stole NMI's trade secrets. *See* D.I. 1 ¶ 60 ("Zlateski's and Facebook's unfair conduct included, but is not limited to stealing [NMI's] *trade secrets* . . . and publishing them publicly and for free."). No other bases for this claim—beyond conclusory statements parroting legal elements—are alleged. *See id.* ¶¶ 58-62. Furthermore, NMI's "complaint as a whole rests on factual allegations of trade secret misappropriation." *K.C. Multimedia*, 171 Cal. App. 4th at 959; *see also* D.I. 1 ¶¶ 13-38 (all factual allegations relate to, and are based on, the alleged theft of trade secret and proprietary information). Consequently, NMI's Chapter 93A claim (Count III) seeking "civil remedies for the misappropriation of a trade secret" is preempted by the MUTSA, and should be dismissed. *See* M.G.L. 93 § 42F(a); *Meyn America, LLC v. Tarheel Distributors, Inc.*, 36 F. Supp. 3d 1395, 1401, 1408 (M.D. Ga. 2014) (common law claims, including unfair competition claim, preempted because "Plaintiff does not contend its claims . . . are based on different factual allegations than its claim under" the GUTSA); *Office Depot, Inc. v. Impact Office Prod., LLC*, 821 F. Supp. 2d 912, 919 (N.D. Ohio 2011) (a "common-law claim that 'simply restates the same operative facts' of a UTSA claim" is preempted).

### B.      NMI's Unjust Enrichment Claim (Count VI) Should Be Dismissed

NMI's unjust enrichment claim (Count VI), like its Chapter 93A claim, is based solely on Facebook's and Dr. Zlateski's alleged improper use of "confidential, proprietary, and trade secret information from [NMI]." D.I. 1 ¶ 85. No other bases for this claim—beyond conclusory statements parroting legal elements and relating to damages—are alleged. *See id.* ¶¶ 83-87. And as noted, NMI's "complaint as a whole rests on factual allegations of trade secret misappropriation." *K.C. Multimedia*, 171 Cal. App. 4th at 959; *see also* D.I. 1 ¶¶ 13-38. Consequently, NMI's unjust enrichment claim (Count VI) seeking "civil remedies for the misappropriation of a trade secret" is preempted by the MUTSA, and should be dismissed. *See* M.G.L. 93 § 42F(a); *see also Hauck*, 375 F. Supp. 2d at 657 (unjust enrichment claim preempted by Tennessee UTSA); *Ethypharm S.A. France*, 388 F. Supp. 2d at 433 (unjust enrichment claim preempted by Delaware UTSA); *Diamond Power*, 540 F. Supp. 2d at 1345 (unjust enrichment claim preempted by Georgia UTSA).

Separately, NMI's unjust enrichment claim fails because "under Massachusetts law, a plaintiff who has an adequate remedy at law cannot maintain a parallel claim for unjust enrichment, *even if that remedy is not viable*." *Tomasella v. Nestle USA, Inc.*, 364 F. Supp. 3d 26, 37 (D. Mass. 2019) (emphasis added); *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 466 (D. Mass. 2018). Indeed, "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Id.* (quoting *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017)). NMI has asserted multiple claims, including MUTSA and DTSA claims, under which it could (theoretically) obtain remedies for the same harm alleged in the unjust enrichment claim. *See, e.g.*, D.I. 1 at ¶¶ 39-57 (NMI's MUTSA and DTSA claims); *see also* M.G.L. 93 §§ 42A-42B (providing for injunctive relief and recovery of damages); 18 U.S.C. §§ 1836(b)(3)(A)-(B) (same). In fact, both the MUTSA and the DTSA expressly provide for recovery of damages

based on "unjust enrichment." *See* M.G.L. 93 § 42B; 1836(b)(3)(B)(i)(II). NMI, therefore, cannot maintain a parallel claim for unjust enrichment, and NMI's Count VI fails twice.

### C. NMI's Tortious Interference Claim (Count V) Should Be Dismissed In Part

NMI's tortious interference claim (Count V) is preempted by the MUTSA to the extent it is based on the same operative facts as NMI's trade secret misappropriation claim. *See* M.G.L. 93 § 42F.

In Count V of its complaint, NMI alleges that Facebook interfered with, and caused Dr. Zlateski to breach, two separate provisions of his contract with NMI, a non-disclosure provision and a non-compete provision. *See* D.I. 1 ¶¶ 77-78. The portion of this claim that relates to Dr. Zlateski's non-disclosure obligation is based on the same operative facts as NMI's trade secret misappropriation claims. *See id.* ¶ 78 (alleging that Facebook interfered with NMI's contract with Dr. Zlateski "by seeking disclosure of [NMI's] *trade secrets*, and other confidential and proprietary information.") (emphasis added). Consequently, this portion of NMI's tortious interference claim seeks "civil remedies for the misappropriation of a trade secret," is preempted by the MUTSA, and should be dismissed. *See* M.G.L. 93 § 42F; *Hauck,* 375 F. Supp. 2d at 659 (Tennessee UTSA preempts portion of tortious interference claim based on non-disclosure provision); *Office Depot*, 821 F. Supp. 2d at 919 (same).[9]

---

[9] One of the few exceptions to MUTSA preemption is that "[s]ections 42 to 42G, inclusive, do not affect … contractual remedies." M.G.L. 93 § 42F(b)(1). As the cases cited above show, this exception does not apply to a claim for tortious interference (a tort). *Cf. Swanset Dev. Corp. v. City of Taunton*, 423 Mass. 390, 397 (1996) (claim for tortious interference is an "intentional tort").

## V. CONCLUSION

For the foregoing reasons, Defendants Facebook and Dr. Zlateski respectfully request that Counts III and VI of NMI's complaint be dismissed in their entirety,[10] and Count V of NMI's complaint be dismissed in part, to the extent it is premised on an alleged breach of the non-disclosure provision of Dr. Zlateski's contract with NMI.

---

[10] Defendants note that if the Court adopts the majority view of preemption, NMI should not be granted leave to amend Counts III and VI. Whether NMI's Chapter 93A and unjust enrichment allegations refer specifically to allegedly misappropriated trade secrets (as they currently do), or not, the foundation for these causes of action would inevitably remain the alleged misuse of confidential information. Thus, any amended Counts III and VI would remain squarely within the purview of MUTSA preemption and be futile. *Cf. Hauck*, 375 F. Supp. 2d at 657 ("[A] claim does not miraculously become 'not based upon misappropriation of a trade secret' simply because a plaintiff denotes it by a different label").

Dated: May 11, 2020                                Respectfully submitted,

   */s/ William J. Trach*
William J. Trach (BBO No. 661401)
Christopher W. Henry (BBO No. 676033)
Nathanial McPherson (BBO No. 697666)
LATHAM & WATKINS LLP
John Hancock Tower
200 Clarendon Street, 27th Floor
Boston, MA 02116
(617) 948-6000 / (617) 948-6001 Fax
william.trach@lw.com
christopher.henry@lw.com
nathanial.mcpherson@lw.com

Douglas E. Lumish (*pro hac vice*)
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600 / (650) 463-2600 Fax
douglas.lumish@lw.com

Jennifer L. Barry (*pro hac vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400 / (858) 523-5450 Fax
jennifer.barry@lw.com

*Attorneys for Defendant*
*Facebook, Inc.*

   */s/ Russell Beck*
Russell Beck (BBO No. 561031)
Stephen D. Riden (BBO No. 644451)
Hanna Tso Joseph (BBO No. 688132)
BECK REED RIDEN LLP
155 Federal Street, Suite 1302
Boston, MA 02110
(617)500-8670 / (617) 500-8665 Fax
rbeck@beckreed.com
sriden@beckreed.com
hjoseph@beckreed.com

*Attorneys for Defendant*
*Aleksandar Zlateski*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system on May 11, 2020, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF").

                                              */s/ William J. Trach*
                                              William J. Trach