**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NEURALMAGIC, INC.<br><br>*Plaintiff*,<br><br>v.<br><br>FACEBOOK, INC. AND ALEKSANDAR ZLATESKI<br><br>*Defendants*. | Civil Action No. 20-CV-10444 |

**NEURAL MAGIC'S OPPOSITION TO
<u>DEFENDANTS' PARTIAL MOTION TO DISMISS</u>**

i

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................................1
II.  DISCUSSION ................................................................................................................2
     A.   Defendants Admit Their Position Is Unsupported by Massachusetts
          Caselaw ...............................................................................................................2
     B.   Neural Magic's Claims Are Not Preempted by the MTSA ..................................3
     C.   Neural Magic's Unjust Enrichment Claim Should Not Be Dismissed ................11
III. CONCLUSION .............................................................................................................11

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*,
   469 Mass. 813 (2014) ........................................................................................................ 8, 10

*Boston Scientific Corp. v. Lee*,
   2014 WL 1946687 (D. Mass. May 14, 2014) ......................................................................... 8

*Brand Servs., L.L.C. v. Irex Corp.*,
   909 F.3d 151 (5th Cir. 2018) ............................................................................................... 4, 5

*CareOne Mgmt., LLC v. Navisite, Inc.*,
   No. 1484CV00378BLS2, 2017 WL 2803060 (Mass. Super. Apr. 25, 2017) .......................... 8

*Cenveo Corp. v. Slater*,
   2007 WL 527720 (E.D. Pa. Feb. 12, 2007) ........................................................................... 10

*Ciardi v. Hoffmann-LaRoche, LTD*,
   No. 993244, 2000 WL 33162197 (Mass. Super. Sept. 29, 2000) ........................................... 9

*Commonwealth v. Peterson*,
   476 Mass. 163 (2017) .............................................................................................................. 7

*Davis v. Bredvik*,
   No. 951185B, 1998 WL 34064621 (Mass. Super. Mar. 30, 1998) ....................................... 10

*DeLuca v. Gwinn*,
   No. CA925294, 1995 WL 808934 (Mass. Super. Mar. 6, 1995) ............................................ 9

*Dodd v. Commercial Union Ins. Co.*,
   373 Mass. 72 (1977) .............................................................................................................. 10

*Gates Corp. v. CRP Indus., Inc.*,
   No. 16-CV-01145-KLM, 2017 WL 5714342 (D. Colo. Nov. 28, 2017) ................................ 8

*GMAC Commercial Mortg. Corp. v. Gleichman*,
   84 F. Supp. 2d 127 (D. Me. 1999) ........................................................................................ 11

*Hannigan v. Bank of Am., N.A.*,
   48 F. Supp. 3d 135 (D. Mass. 2014) ....................................................................................... 9

*Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*,
   139 S. Ct. 628 (2019) .............................................................................................................. 3

*Metro. Life Ins. Co. v. Cotter*,
   464 Mass. 623 (2013) .............................................................................................................. 8

*Mktg. All., Inc. v. First Am. Ins. Underwriters, Inc.*,
   No. CV 05-12046-REK, 2006 WL 8458338 (D. Mass. Jan. 25, 2006) ................................ 11

*Nat'l Private Truck Council, Inc. v. Comm'r of Revenue*,
   426 Mass. 324 (1997) .............................................................................................................. 3

*Nucor Corp. v. Bell*,
    482 F. Supp. 2d 714 (D.S.C. 2007) .................................................................................. 8

*Orca Commc'ns Unlimited, LLC v. Noder*,
    236 Ariz. 180 (2014) ........................................................................................................ 5

*Powell Prods., Inc. v. Marks,*
    948 F. Supp. 1469 (D. Colo. 1996) .................................................................................. 8

*Seideman v. City of Newton*,
    452 Mass. 472 (2008) ....................................................................................................... 2

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
    332 F. Supp. 3d 446 (D. Mass. 2018) .............................................................................11

### **Rules and Regulations**

Fed. R. Civ. P. 8(d)(2) ............................................................................................................ 4

G.L.c. 93 ................................................................................................................................ 2

G.L.c. 93A ................................................................................................................. 1, 3, 8-10

## I. INTRODUCTION

Defendants ask the Court to dismiss several of Neural Magic's claims pursuant to the preemption clause of the Massachusetts Trade Secrets Act ("MTSA"), ignoring that such dismissal would be contrary to the plain language and purpose of the MTSA, the broad scope of the Massachusetts unfair competition statute, G.L.c. 93A, and equitable principles. In addition, Defendants' entire motion relies on erasing the distinction between trade secret information and other confidential or proprietary information—the very distinction Defendants have spent the rest of their time trying to make and now pretend does not exist.

What Defendants dub the "minority view" of the MTSA's preemption clause is in fact the better interpretation, as numerous courts have concluded in analyzing similar statutes, and the one the Court should use here. First, a narrow interpretation of the MTSA's preemption clause is more faithful to the plain language of the statute—which expressly applies only to claims for misappropriation of trade secrets, a defined term. Further, Defendants' position would improperly limit the application of c. 93A, an explicitly broad and expansive remedy meant to discourage unfair competition and unlawful business practices. Finally, such limitation would create a gap in available remedies, with potential plaintiffs unable to recover for theft or misuse of confidential or proprietary information.

As the first court to decide the scope of the MTSA's preemption provision, this Court should decline to foreclose remedies available to victims of unfair business practices—particularly at the motion to dismiss phase prior to fact discovery—and should deny Defendants' motion.

## II.   DISCUSSION

### A.   Defendants Admit Their Position Is Unsupported by Massachusetts Caselaw

As Defendants acknowledge, no Massachusetts court or court applying Massachusetts law has interpreted the MTSA to preempt claims such as Neural Magic's. D. 75. at 3-4. In the face of that lack of authority, Defendants argue that: 1) the plain language of the MTSA supports a finding of preemption; 2) the enactment of the MTSA "effectively incorporate[d] the majority view" of similar preemption provisions; and 3) a desire for uniformity mandates dismissal. None of these arguments withstand scrutiny.

First, the plain language of the MTSA belies Defendants' position. The statute reads, "Except as provided in subsection (b), sections 42 to 42G, inclusive, shall supersede any conflicting laws of the commonwealth providing civil remedies for the *misappropriation of a trade secret*." G.L.c. 93, § 42F (a) (emphasis added). The exceptions to the preemption provision include "other civil remedies to the extent that they are not based upon *misappropriation of a trade secret*." G.L.c. 93, § 42F (b) (emphasis added). The plain language is clear—the MTSA preempts laws and remedies that seek recovery for misappropriation of *a trade secret*. "Trade secret" is a defined term in the MTSA, as Defendants well know. G.L.c. 93, § 42. Accordingly, the Court should reject Defendants' unsupported attempts to recast the statute as applying to "confidential information, ***whether trade secret or not***." D. 75 at 7 (emphasis added). *See, e.g.*, *Seideman v. City of Newton*, 452 Mass. 472, 477 (2008) (noting that "courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense").

Second, there is no indication whatsoever that the Massachusetts legislature intended to incorporate Defendants' view of preemption into the MTSA. Particularly when, in

2

Massachusetts, "generally preemption is not favored." *Nat'l Private Truck Council, Inc. v. Comm'r of Revenue*, 426 Mass. 324, 327 (1997). Defendants' citation to *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 139 S. Ct. 628, 633 (2019), is inapposite. *Helsinn* dealt with the passage of a federal statute that incorporated the federal courts' unanimous interpretation of a patent rule. Defendants offer no explanation why the *Helsinn* reasoning should apply to the Massachusetts legislature and its supposed intent silently to choose a side in the debate between courts in other states interpreting the laws of other states.

Finally, Defendants' focus on the need for uniformity is belied by the fact that there are different views on the preemption clauses within the various state trade secret laws. The very existence of that divide establishes that this Court's decision will have no impact on the overall uniformity of trade secret laws among the states. There currently is no uniformity in the interpretation of the preemption statutes and this Court's decision will not affect that status quo.

### B. Neural Magic's Claims Are Not Preempted by the MTSA

Neural Magic's claims are not preempted by the MTSA. This is the necessary conclusion under reasoning applied by various courts throughout the country: (1) the well-reasoned narrow interpretation of the trade secret statutory preemption, which allows remedies for theft of *confidential* and *proprietary* information to remain **alongside** trade secret claims; (2) the alternative "comparison of the elements" test applied by several courts to UTSA preemption; and (3) Massachusetts' own policy of broadly applying chapter 93A, and requiring that preemption of chapter 93A be made explicit in the enacting legislation.

1) **This Court Should Adopt the Narrow Interpretation of Trade Secret Statutory Preemption and Find That Neural Magic's Claims Are Not Preempted by the MTSA.**

The Court should follow the reasoning of many courts and adopt a narrow interpretation of trade secret statute preemption and hold that the MTSA's preemption provision does not

3

preclude Neural Magic's claims. Defendants raise the specter of "carefully-pled, alternative claims based on confidential or proprietary" information rendering the MTSA and similar statutes meaningless, but that does not make sense. It does not render one statute meaningless to enact other statutes that address complementary and overlapping situations and that provide remedies for additional infractions. First, Defendants implicitly acknowledge that Neural Magic's claims at issue are based in part on misuse and theft of confidential and/or proprietary information, not solely on trade secret misappropriation; indeed Defendants explicitly argued as much in opposing Neural Magic's motion for a preliminary injunction.[1] Second, alternative pleading is a basic aspect of making claims based on conduct, such as Defendants' conduct here, that implicates a wide range of violations. *See* Fed. R. Civ. P. 8(d)(2). Finally, Defendants' interpretation threatens to remove protections from an entire class of protected information—namely, confidential or proprietary information that may or may not also meet the statutory definition of a trade secret. For all of these reasons, several courts have analyzed other state trade secret law preemption provisions and decided that a narrow interpretation is the better one. Such a narrow reading of the MTSA's preemption provision is the correct outcome here and the one the Court should adopt.

The circuit court that most recently considered the scope of a state law preemption provision held that the state statute—substantially similar to the MTSA—***did not*** preempt claims involving "confidential information that is not a trade secret." *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 157–59 (5th Cir. 2018). Specifically, the Fifth Circuit held that "if confidential information that is not a trade secret is nonetheless stolen and used to the unjust benefit of the

---

[1] Neural Magic maintains that it has adequately pled—and sufficiently identified in the context of its preliminary injunction motion—trade secrets that were misappropriated by Defendants, in addition to its separate claims of theft of confidential and proprietary information.

thief or detriment of the victim, then a cause of action remains under" other civil law. *Id.* With respect to uniformity, the court noted that "courts interpreting their respective states' versions of the Uniform Trade Secret Act ("UTSA") have not uniformly applied UTSA's preemption provision; instead, courts have come to varying conclusions about the preemption provision's intended scope." *Id.* The court concluded that the narrow interpretation of the preemption provision was more "consistent with the plain text and stated purpose of" the trade secret statute. *Id.*

Nevada and Arizona courts have come to the same conclusion. In *Orca Commc'ns Unlimited, LLC v. Noder*, 236 Ariz. 180, 182 (2014), the Arizona Supreme Court looked to the plain language of the state trade secret statute—which mirrors the MTSA—and held that when a "statute is unambiguous, we apply its terms without resorting to other tools of statutory interpretation, unless doing so leads to impossible or absurd results." *Id.* at 182. The court noted that "[n]othing in this [statutory] language suggests that the legislature intended to displace any cause of action other than one for misappropriation of a trade secret." *Id.* With respect to the intent of the Uniform Trade Secrets Act, the court looked to the commentary on the Act, writing, "Although the Uniform Act promotes uniformity regarding the treatment of trade secrets, it says nothing about confidential information generally. Nor does the Uniform Act affect various other claims and remedies." *Id.* at 183 (citing Unif. Trade Secrets Act § 7 cmt. (amended 1985), 14 U.L.A. 463 (2005) (noting that the Uniform Act "is not a comprehensive statement of civil remedies," and does not apply to duties imposed by law that are independent of the existence of a trade secret)). On the scope of preemption generally, the court said that "[i]f the legislature seeks to preempt a cause of action . . . ***the law's text or at least the legislative record should say so explicitly***." *Orca Commc'ns Unlimited, LLC v. Noder*, 236 Ariz. 180, 182 (2014) (emphasis

added).  The District of Nevada, in *Newmark Grp., Inc. v. Avison Young (Canada) Inc.*, No. 215CV00531RFBGWF, 2019 WL 575476, at *1 (D. Nev. Jan. 7, 2019), following a lengthy and in-depth analysis of the conflicting interpretations among the states, recently held that "Plaintiffs should be permitted to allege noncontractual claims for misappropriation of confidential information that does not constitute a trade secret." *Id.* at 10.

Even California courts, which Defendants laud for their "significant body of case law interpreting California Uniform Trade Secrets Act ("CUTSA") preemption," disagree about the interpretation of the CUTSA's preemption clause. D. 75 at 5.  In *Leatt Corp. v. Innovative Safety Tech., LLC*, 09–CV–1301–IEG (POR), 2010 WL 2803947, (S.D. Cal. July 15, 2010), the court held that the CUTSA did not preempt plaintiffs' claims for unfair competition and tortious interference—***the very claims that Defendants attempt to preempt here***. *Id.* at *6.  The *Leatt* court's conclusion applies with full force here—"[t]o the extent these claims are based upon non-trade secret information, the Court agrees that they should be allowed to go forward at this stage." *Id.*  In declining to dismiss the claims, the court noted that plaintiffs' unfair competition count included, but was not limited to, misappropriation of trade secrets and that the complaint included repeated references to "confidential" and "proprietary" information in addition to trade secrets. *Id.*  Neural Magic's claims include precisely the same information:

- Zlateski's and Facebook's unfair conduct included, *but is not limited to* stealing Neural Magic's trade secrets.  Compl. ¶ 60 (emphasis added).

- Facebook willfully interfered with Neural Magic's contractual relations with Zlateski by soliciting him and information from him for Facebook while his Non-Competition Agreement was still in effect, and by seeking disclosure of Neural

6

>Magic's trade secrets, and ***other confidential and proprietary information including technical know-how***. Compl. ¶ 78 (emphasis added).

- Facebook's and Zlateski's economic benefit is a direct and proximate result of their unjust and unconscionable conduct in using ***confidential, proprietary***, and trade secret information from Neural Magic obtained through Zlateski's status as Neural Magic's Technology Director and first employee, to harm Neural Magic and benefit Zlateski and Facebook. Compl. ¶ 85 (emphasis added).

Neural Magic's challenged claims are broader than its claims for misappropriation of trade secrets, including the theft of confidential and proprietary information and unfair competition. Adopting Facebook's view of the MTSA's preemption provision would hold that such violations are not compensable, at least not when trade secrets are also implicated. That result, which runs contrary to the plain language of the statute, would be exactly the type of "absurd result" that courts should avoid when interpreting statutory language. *See, e.g.*, *Commonwealth v. Peterson*, 476 Mass. 163, 167 (2017) (noting the need to avoid "absurd" or "illogical" results when interpreting a statute). Simply put, according to Facebook, Facebook should be made better off because it and Zlateski are accused of trade secret misappropriation as well as other statutory violations addressing unfair competition and theft of confidential information instead of merely being accused of the latter violations.

2) **The "Comparison of the Elements" Test Applied by Other Courts Similarly Demands that Neural Magic's Claims Are Not Preempted by the MTSA.**

Even were the court to adopt Defendants' view, Defendants neglect to mention an entire body of case law that employs the "comparison of the elements" test under that allegedly majority view (as opposed to the common nucleus of facts test Defendants mention). The comparison of the elements test also counsels against preemption of the Neural Magic claims at

7

issue. Under this test, a state trade secrets statute *only preempts other claims if the two claims have the same elements; any additional element of the challenged claim will defeat preemption*. *See, e.g.*, *Gates Corp. v. CRP Indus., Inc.*, No. 16-CV-01145-KLM, 2017 WL 5714342, at *5 (D. Colo. Nov. 28, 2017) (holding "a plaintiff may also bring claims that, although involving a trade secret misappropriation issue, include additional elements not necessary for a misappropriation claim under the [C]UTSA") (citing *Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996)); *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 725 (D.S.C. 2007) (noting that "[t]o determine whether a particular cause of action involves rights equivalent to those protected by the Trade Secrets Act, the elements of the causes of action should be compared, not the facts pled to prove them"). Importantly for this test, each of the claims that Defendants seek to dismiss contain elements apart from those involved in a misappropriation of a trade secret claim. *See, e.g.*, *Boston Scientific Corp. v. Lee*, 2014 WL 1946687, at *3 (D. Mass. May 14, 2014) (Casper, J.) (giving elements of misappropriation of trade secrets); *CareOne Mgmt., LLC v. Navisite, Inc.*, No. 1484CV00378BLS2, 2017 WL 2803060, at *11 (Mass. Super. Apr. 25, 2017) (giving elements of tortious interference, including existence of a contract with a third party and interference with such contract); *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013) (giving elements of unjust enrichment, including defendant's receipt of a benefit that was unjust based on the parties' reasonable expectations); *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 820 (2014) (giving elements of c. 93A claim for unfair business practices, including that plaintiff must be engaged in trade or commerce and suffer loss from unfair or deceptive act or practice, or unfair method of competition). Because each of Neural Magic's challenged claims involve additional elements preemption would be inappropriate under the additional elements test. If the court were to adopt the rule Defendants' advance, it should also

apply the comparison of the elements test (as opposed to the common nucleus of facts test), and properly find that Neural Magic's additional claims are not preempted under that analysis.

### 3) **Massachusetts Caselaw Makes Clear that Chapter 93A Is Not Preempted Absent Explicit Statutory Language—Which Does Not Exist Here.**

Defendants' attempt to use the MTSA's preemption provision to narrow the scope of chapter 93A's protections against unfair trade practices is particularly questionable. Courts have repeatedly held that this statute has a "broad scope and flexible guidelines," and resisted attempts to limit its scope absent explicit statutory language expressing that intent. *DeLuca v. Gwinn*, No. CA925294, 1995 WL 808934, at *2 (Mass. Super. Mar. 6, 1995); *see also Ciardi v. Hoffmann-LaRoche, LTD*, No. 993244, 2000 WL 33162197, at *4 (Mass. Super. Sept. 29, 2000) (noting that 93A is a "broad remedial statute, creating new substantive rights"); *Hannigan v. Bank of Am., N.A.*, 48 F. Supp. 3d 135, 142 (D. Mass. 2014) ("the lodestar of Chapter 93A claims is whether the defendant's actions 'would raise an eyebrow of someone inured to the rough and tumble of the world of commerce'" and is broader than other statutory and common law claims). For instance, in *Ciardi*, the court analyzed whether a plaintiff could seek recovery for an alleged antitrust violation under chapter 93A even where she could not do so under the Massachusetts Antitrust Act, a preemption question. 2000 WL 33162197 at *8. The court declined to dismiss plaintiff's chapter 93A claim, holding that "there is no evidence that the Legislature intended to limit the broad scope of Chapter 93A" in enacting the Antitrust Act. *Id.* Here, Defendants have made no showing that the Massachusetts legislature intended to narrow the broad scope of 93A's protections against unfair business practices. There is ample further evidence of 93A's broad scope and strong protections. For instance, the Supreme Judicial Court has noted that 93A "is a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights" and that "recovery under the statute is not limited by

9

traditional tort and contract law requirements." *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 469 Mass. 813, 822 (2014). The fact that 93A is not limited by traditional tort and contract requirements is crucial here. As Massachusetts courts have noted, 93A is intended to "forbid[] conduct not previously unlawful under the common law of contract and tort or under any prior statute," so to preempt application of 93A would fly in the face of its intended purpose. *See Davis v. Bredvik*, No. 951185B, 1998 WL 34064621, at *4 (Mass. Super. Mar. 30, 1998) (holding 93A claim remains viable even following death of party) (citing *Dodd v. Commercial Union Ins. Co.*, 373 Mass. 72, 78 (1977)).[2]

Moreover even if the court were inclined to credit Defendants' position, this issue is premature and should await discovery. Defendants explicitly contest that the information at issue rises to the level of a trade secret. Courts confronted with similar facts have declined to decide preemption at the motion to dismiss phase, waiting instead for summary judgment. *See, e.g.*, *Cenveo Corp. v. Slater*, 2007 WL 527720, at *10 (E.D. Pa. Feb. 12, 2007) ("The Court finds that the cases holding that the Trade Secrets Act does not preempt common law tort claims when it has yet to be determined whether the information at issue constitutes a trade secret take the better approach.") Absent this approach, plaintiffs could be left with no remedy for theft of information that is later judged to be confidential but not a trade secret. Here, this could strip Neural Magic of its protections under Massachusetts' chapter 93A claim—something MTSA did not contemplate or address.

---

[2] It is hard to believe that Zlateski going to Facebook to work in an unrelated area (*see* D. 62 at ¶¶ 20-23 and D. 61 ¶ 24) and then, admittedly, immediately and covertly going to work in the very area for which he worked for Neural Magic, despite his non-compete, would not meet the threshold of raising an eyebrow).

### C. Neural Magic's Unjust Enrichment Claim Should Not Be Dismissed

Separate and apart from their preemption arguments, Defendants urge the Court to dismiss Neural Magic's unjust enrichment claim based on the availability of other remedies at law. Although distinct from the preemption issue, this argument fails for the same basic reason—Neural Magic's unjust enrichment claim includes the use of Neural Magic's "confidential" and "proprietary" information and unfair and deceptive acts and practices in addition to the theft of Neural Magic's trade secrets. Such misuse of confidential and proprietary information is not covered by the MTSA or the Defend Trade Secrets Act and therefore no adequate remedy at law is available to Neural Magic. *Cf. SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 332 F. Supp. 3d 446, 475 (D. Mass. 2018) (denying summary judgment to defendant on unjust enrichment claim based on misuse of confidential information). Moreover, this is an argument more appropriately raised at summary judgment or trial, when the full extent of the harm Neural Magic has suffered as a result of Defendants' conduct—as well as the determination of the trade secrets at issue—has been probed through fact and expert discovery. *See, e.g.*, *GMAC Commercial Mortg. Corp. v. Gleichman*, 84 F. Supp. 2d 127, 137 (D. Me. 1999) (applying Maine law and denying motion for summary judgment on unjust enrichment claim because factfinder could find facts preserving viability of claim); *see also Mktg. All., Inc. v. First Am. Ins. Underwriters, Inc.*, No. CV 05-12046-REK, 2006 WL 8458338, at *3 (D. Mass. Jan. 25, 2006) (denying motion to dismiss noting that the "existence of a trade secret is a fact to be found by the factfinder at trial").

### III. CONCLUSION

For the foregoing reasons, Neural Magic hereby requests that the Court deny Defendant's Motion to Dismiss, D. 74.

12

Dated: May 26, 2020  /s/ *Steven Cherny*
Steven Cherny (BBO# 706132) (*pro hac vice*)
Patrick D. Curran (BBO# 568701)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: (617) 712-7100
stevencherny@quinnemanuel.com
patrickcurran@quinnemanuel.com


## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 26th day of May, 2020.

/s/ *Patrick D. Curran*
Patrick D. Curran