# Exhibit A

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| NEURAL MAGIC, INC., <br><br> Plaintiff, <br><br> v. <br><br> FACEBOOK, INC. and ALEKSANDAR ZLATESKI, <br><br> Defendants. | Civil Action No. 1:20-cv-10444-DJC |

**REPLY IN SUPPORT OF DEFENDANTS'
PARTIAL MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. COUNTS III AND VI OF NMI'S COMPLAINT SHOULD BE DISMISSED, AND COUNT V SHOULD BE DISMISSED IN PART, BECAUSE THESE COUNTS ARE PREEMPTED AS A MATTER OF LAW ...............................................2

    A. NMI's "Plain Language" Argument Has Been Repeatedly Rejected......................2

    B. The MUTSA's Text And History Dictate Adoption Of The Majority Approach..................................................................................................................4

    C. The Minority Approach Is Not "The Better One" ..................................................5

    D. The "Comparison Of The Elements" Test Has Been Soundly Rejected .................7

    E. The Breadth Of Chapter 93A Does Not Preclude Preemption ...............................8

    F. Discovery Is Not Needed To Resolve The Preemption Issue .................................9

    G. NMI Cannot Maintain A Parallel Claim For Unjust Enrichment ...........................9

III. CONCLUSION .....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*3A Composites USA v. United Indus.*,
2015 WL 5437119 (W.D. Ark. Sept. 15, 2015)..................................................................3

*Allied Erecting & Dismantling v. Genesis Equip. & Mfg.*,
649 F. Supp. 2d 702 (N.D. Ohio 2009)..............................................................................3

*Artec Grp. v. Klimov*,
2016 WL 7157635 (N.D. Cal. Dec. 8, 2016)......................................................................7

*Auto Channel v. Speedvision Network*,
144 F. Supp. 2d 784 (W.D. Ky. 2001)................................................................................3

*Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*,
2017 WL 412524 (N.D. Cal. Jan. 31, 2017)....................................................................2, 9

*Bliss Clearing Niagara v. Midwest Brake Bond*,
270 F. Supp. 2d 943 (W.D. Mich. 2003) .......................................................................3, 9

*Chatterbox v. Pulsar Ecoproducts*,
2007 WL 1388183 (D. Idaho May 9, 2007) ......................................................................3

*Combined Ins. Co. of Am. v. Hubley*,
2014 WL 2808272 (D. Mont. June 20, 2014).....................................................................3

*Diamond Power Int'l v. Davidson*,
540 F. Supp. 2d 1322 (N.D. Ga. 2007)...........................................................................3, 7

*Hauck Mfg. Co. v. Astec Indus., Inc.*,
375 F. Supp. 2d 649 (E.D. Tenn. 2004) ....................................................................3, 4, 8

*Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*,
139 S. Ct. 628 (2019) (D.I. 78 at 3)....................................................................................4

*Leatt Corp. v. Innovative Safety Tech.*,
2010 WL 2803947 (S.D. Cal. July 15, 2010) ....................................................................7

*Mattel, Inc. v. MGA Entm't, Inc.*,
782 F. Supp. 2d 911 (C.D. Cal. 2011) ...............................................................................2

*New S. Equip. Mats v. Keener*,
989 F. Supp. 2d 522 (S.D. Miss. 2013)..........................................................................3, 6

*Pereyra v. Sedky*,
    148 F. Supp. 3d 134 (D. Mass. 2015) ..................................................................................9

*Prods., Inc. v. Marks*,
    948 F. Supp. 1469 (D. Colo. 1996) .....................................................................................8

*PartyLite Gifts, Inc. v. Swiss Colony Occasions*,
    246 F. App'x 969 (6th Cir. 2007) .......................................................................................3

*ScaleFactor v. Process Pro Consulting*,
    394 F. Supp. 3d 680 (W.D. Tex. 2019) ...............................................................................6

*SiOnyx v. Hamamatsu Photonics*,
    332 F. Supp. 3d 446 (D. Mass. 2018) ...............................................................................10

*StoneCoat of Texas v. ProCal Stone Design*,
    426 F. Supp. 3d 311 (E.D. Tex. 2019) ................................................................................6

*Taxinet v. Leon*,
    2018 WL 3405243 (S.D. Fla. July 12, 2018) ..................................................................3, 9

*Tomasella v. Nestle USA*,
    364 F. Supp. 3d 26 (D. Mass. 2019) .................................................................................10

*Zayo Grp. v. Hisa*,
    2013 WL 12201401 (C.D. Cal. Sept. 17, 2013) ..............................................................7, 8

**State Cases**

*BlueEarth Biofuels v. Hawaiian Elec.*,
    123 Haw. 314 (2010) ............................................................................................3, 4, 8, 9

*Casseus v. E. Bus Co., Inc.*,
    478 Mass. 786 (2018) .........................................................................................................4

*Ciardi v. Hoffmann-LaRoche, LTD*,
    2000 WL 33162197 (Mass. Super. Sept. 29, 2000) ............................................................8

*Commonwealth v. Matta*,
    483 Mass. 357 (2019) .........................................................................................................5

*DeLuca v. Gwinn*,
    1995 WL 808934 (Mass. Super. Mar. 6, 1995) ..................................................................8

*HDNet v. N. Am. Boxing Council*,
    972 N.E.2d 920 (Ind. Ct. App. 2012) ..............................................................................3, 4

*K.C. Multimedia v. Bank of Am. Tech. & Operations*,
    171 Cal. App. 4th 939 (2009) .............................................................................................9

*Mortg. Specialists v. Davey*,
  153 N.H. 764 (2006) ............................................................................................. 3, 4, 9

*Nat'l Waste Assocs. v. Scharf*,
  2015 WL 7421645 (Conn. Super. Ct. Oct. 29, 2015) ............................................. 3

*Savor v. FMR*,
  812 A.2d 894 (Del. 2002) ....................................................................................... 3

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App. 4th 210 (2010) .............................................................................. 5, 9

*Wing v. Comm'r of Prob.*,
  473 Mass. 368 (2015) ............................................................................................. 8

**State Statutes**

Conn. Gen. Stat. § 35-57 ................................................................................................ 3

Del. Code Title 6 § 2007 ............................................................................................... 3

Fla. Stat. § 688.008 ....................................................................................................... 3

Ga. Code § 10-1-767 ..................................................................................................... 3

Haw. Rev. Stat. § 482B-8 .............................................................................................. 3

Idaho Code § 48-806 ..................................................................................................... 3

Ind. Code § 24-2-3-1 ..................................................................................................... 3

Ky. Rev. Stat. § 365.892 ............................................................................................... 3

M.G.L. 93 § 42 ..................................................................................................... *passim*

Mich. Comp. Laws § 445.1908 ..................................................................................... 3

Mont. Code § 30-14-408 ............................................................................................... 3

N.H. Rev. Stat. § 350-B:7 ............................................................................................. 3

Ohio Rev. Code § 1333.67 ............................................................................................ 3

**I.      INTRODUCTION**

NMI does not dispute that its Chapter 93A, unjust enrichment, and tortious interference claims are preempted, in whole or in part, under the majority approach to UTSA preemption, which holds that preemption applies to all claims arising from the same operative facts as an alleged misuse of confidential information. Instead, NMI argues that because there are no Massachusetts cases interpreting § 42F of the MUTSA yet—a point that is not in dispute—the Court should adopt the overly narrow minority approach, which has been rejected in numerous, well-reasoned decisions.

NMI's request that the Court swim against the tide rests primarily on three cases—a Fifth Circuit decision that guessed at how the Louisiana Supreme Court might rule and did not set a Fifth Circuit-wide rule (as NMI implies), and two decisions from Arizona and Nevada that turned on the absence of a uniformity provision like the MUTSA's § 42G, which directs that the MUTSA "be applied and construed to effectuate the[] general purpose to make uniform the law with respect [to] trade secrets," i.e., that the majority approach be adopted. The other preemption-related cases NMI cites are a decision from the Southern District of California that has been criticized as inconsistent with precedent applying the majority approach; three decisions following a "comparison of the elements" test that has been soundly rejected; and one case allegedly supporting NMI's last-ditch plea for this Court to stay its hand until after discovery, a request other courts have "emphatically" rejected. NMI's cases do not reflect the "better" interpretation of MUTSA preemption. Far from it.

This Court should adopt the majority approach to UTSA preemption to advance the clarity and uniformity the MUTSA was expressly designed to promote. NMI's Chapter 93A and unjust enrichments claims (Counts III and VI) should be dismissed in their entirety, and NMI's tortious interference claim (Count V) should be dismissed in part.

## II. COUNTS III AND VI OF NMI'S COMPLAINT SHOULD BE DISMISSED, AND COUNT V SHOULD BE DISMISSED IN PART, BECAUSE THESE COUNTS ARE PREEMPTED AS A MATTER OF LAW

NMI does not (and cannot) dispute that its Chapter 93A, unjust enrichment claims, and tortious interference claims are based, in whole or in part, on the same nucleus of facts as NMI's MUTSA claim. *See* D.I. 75 § IV. Consequently, under the majority approach to preemption, those claims are preempted and should be dismissed. M.G.L. 93 § 42F; *see also* D.I. 75 §§ III.B.1-2.

Instead, NMI urges the Court to adopt the minority approach to UTSA preemption. D.I. 78 at 1. NMI argues that (i) the "plain language" of § 42F exempts from preemption claims that are based on "confidential" or "proprietary"—but not trade secret—information, *id.* at 2; (ii) there is "no indication whatsoever" that the Massachusetts legislature intended to adopt the majority approach, *id.*; (iii) the minority approach is the better one, *id.* at 4; (iv) the "'comparison of the elements' test" applies and bars preemption, *id.*; (v) Chapter 93A is "broad" and "flexible" and thus cannot be preempted, *id.*; and (iv) discovery must precede a decision on preemption. On all fronts, NMI is wrong.

### A. NMI's "Plain Language" Argument Has Been Repeatedly Rejected

NMI contends that the "plain language" of § 42F exempts from preemption claims based on information that does not rise to the level of a trade secret. D.I. 78 at 2. NMI ignores the fact that, as Facebook and Dr. Zlateski previously explained (*see* D.I. 75 § III.B.1), this contention has been repeatedly rejected by courts across the country addressing *the very same statutory language*.

Numerous courts hold that UTSA preemption applies to any claims "based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret." *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011); *see also Avago Techs. U.S. Inc. v. Nanoprecision Prod., Inc.*, 2017 WL 412524, at *6 (N.D. Cal. Jan. 31, 2017) (same) (collecting cases). And courts routinely adopt this approach even

when preemption provisions include language that is identical to the MUTSA. *See, e.g.*, *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 654-58 (E.D. Tenn. 2004) (adopting the majority approach where "[t]he UTSA, as adopted by Tennessee," displaced "'conflicting tort, restitutionary, and other law . . . providing civil remedies for misappropriation of a trade secret,' but d[id] not affect 'other civil remedies that are not based upon misappropriation of a trade secret.'"); *cf. PartyLite Gifts, Inc. v. Swiss Colony Occasions*, 246 F. App'x 969, 976 (6th Cir. 2007) (affirming preemption of unfair competition and tortious interference claims, relying on "the well-reasoned *Hauck* decision").[1]

Courts have "soundly and vigorously rejected" the approach NMI advocates because it is "inconsistent with" and "would defeat the purpose of the UTSA." *Hauck*, 375 F. Supp. 2d at 656-57; *Bliss Clearing*, 270 F. Supp. 2d at 948-49. Courts recognize that the UTSA "is intended to foster uniformity in the definition of state laws, and a party may not read this design out of the statutory scheme under the guise of 'plain language' or any other rule of construction." *HDNet*,

---

[1] Jurisdictions that (i) have UTSA preemption provisions tracking the MUTSA's and (ii) follow the majority approach include: **Arkansas**, *see* Ark. Code § 4-75-602, *3A Composites USA v. United Indus.*, 2015 WL 5437119 (W.D. Ark. Sept. 15, 2015); **Connecticut**, *see* Conn. Gen. Stat. § 35-57, *Nat'l Waste Assocs. v. Scharf*, 2015 WL 7421645 (Conn. Super. Ct. Oct. 29, 2015); **Delaware**, *see* Del. Code Title 6 § 2007, *Savor v. FMR*, 812 A.2d 894, 898 (Del. 2002); **Florida**, *see* Fla. Stat. § 688.008, *Taxinet. v. Leon*, 2018 WL 3405243 (S.D. Fla. July 12, 2018); **Georgia**, *see* Ga. Code § 10-1-767, *Diamond Power Int'l v. Davidson*, 540 F. Supp. 2d 1322, 1345 (N.D. Ga. 2007); **Hawaii**, *see* Haw. Rev. Stat. § 482B-8, *BlueEarth Biofuels v. Hawaiian Elec.*, 123 Haw. 314, 328 (2010); **Idaho**, *see* Idaho Code § 48-806, *Chatterbox v. Pulsar Ecoproducts*, 2007 WL 1388183, at *3 (D. Idaho May 9, 2007); **Indiana**, *see* Ind. Code § 24-2-3-1, *HDNet v. N. Am. Boxing Council*, 972 N.E.2d 920 (Ind. Ct. App. 2012); **Kentucky**, *see* Ky. Rev. Stat. § 365.892, *Auto Channel v. Speedvision Network*, 144 F. Supp. 2d 784, 789 (W.D. Ky. 2001); **Michigan**, *see* Mich. Comp. Laws § 445.1908, *Bliss Clearing Niagara v. Midwest Brake Bond*, 270 F. Supp. 2d 943, 949 (W.D. Mich. 2003); **Mississippi**, *see* Miss. Code. § 75-26-15, *New S. Equip. Mats v. Keener*, 989 F. Supp. 2d 522, 531 (S.D. Miss. 2013); **Montana**, *see* Mont. Code § 30-14-408, *Combined Ins. Co. of Am. v. Hubley*, 2014 WL 2808272 (D. Mont. June 20, 2014); **New Hampshire**, *see* N.H. Rev. Stat. § 350-B:7; *Mortg. Specialists v. Davey*, 153 N.H. 764, 777 (2006); and **Ohio**, *see* Ohio Rev. Code § 1333.67, *Allied Erecting & Dismantling v. Genesis Equip. & Mfg.*, 649 F. Supp. 2d 702, 722 (N.D. Ohio 2009), among others.

972 N.E.2d at 927. Thus, "the UTSA's preemption provision has generally been interpreted to abolish all free-standing alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade secret status (e.g., idea misappropriation, information piracy, theft of commercial information, etc.)." *Hauck*, 375 F. Supp. 2d at 655 (collecting cases). The MUTSA should be applied the same way.

### B. The MUTSA's Text And History Dictate Adoption Of The Majority Approach

NMI asserts that there is "no indication whatsoever" that the Massachusetts legislature intended to follow the majority approach to preemption. D.I. 78 at 2. But NMI ignores the express language of M.G.L. 93 § 42G, which provides that "Sections 42 to 42F" of the MUTSA "shall be applied and construed to effectuate their general purpose to make uniform the law with respect [to] trade secrets." Massachusetts courts "do not read statutory language in isolation," *Casseus v. E. Bus Co., Inc.*, 478 Mass. 786, 795 (2018), and UTSA uniformity provisions, like § 42G, dictate adoption of the majority approach. *See, e.g.*, *Mortg. Specialists*, 153 N.H. at 775-77 (rejecting the minority approach as inconsistent with the NHUTSA's "overall legislative scheme" and "statutory directive" for uniformity); *BlueEarth Biofuels*, 123 Haw. at 327 (ruling that the decision to apply preemption to "non-contract claims based on information which does not rise to the level of a statutorily-defined trade secret," "reached by the majority of courts to have considered the issue, comports with the HUTSA's goal of uniformity in the area of trade secret misappropriation"); *HDNet*, 972 N.E.2d at 925 (minority approach "would encourage piece meal litigation and would thus fail to implement the legislature's intended goal of uniformity").

NMI also criticizes Facebook and Dr. Zlateski's citation to *Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 139 S. Ct. 628, 633 (2019) (D.I. 78 at 3), but NMI offers no reason why this Court should ignore the fact that the Massachusetts legislature enacted the MUTSA in 2018, after

4

decades of other states' adoption and interpretation of the UTSA. When interpreting a statute, Massachusetts courts "presume that as part of familiarizing themselves with the subject matter of the legislation, legislators became familiar with that pertinent precedent," *Commonwealth v. Matta*, 483 Mass. 357, 371 (2019), "even where the legislative history contains no specific indication of the Legislature's awareness of any particular decision," *McCarty's Case*, 445 Mass. 361, 379 (2005). Consequently, it must be presumed that when the MUTSA was enacted, the Massachusetts legislature was familiar with the UTSA and the majority approach to preemption. As noted, this is confirmed by the legislature's explicit call for uniformity.

Also, with respect to uniformity, NMI incorrectly contends that "Defendants' focus on the need for uniformity is belied by the fact that there are different views on . . . preemption." D.I. 78 at 3. The majority approach has been widely adopted because it gives effect to the "prime purpose of the [UTSA]"—"to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is—and is not—liable for acquiring, disclosing, or using 'information . . . of value.'" *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 (2010). This Court's adoption of that approach would further advance the nation's progress toward uniformity. Such progress would be disserved by adoption of a widely-rejected minority approach.

C.     **The Minority Approach Is Not "The Better One"**

NMI does not dispute that an overwhelming majority of states adhere to the majority rule. *See* D.I. 75 at § III.B.1-2. NMI nevertheless asks the Court to adopt the minority approach because "several courts" have "decided that a narrow interpretation is the better one." D.I. 78 at 4. NMI, however, relies primarily on just three cases—a decision from the Fifth Circuit and two decisions from courts in Arizona and Nevada.

In the Fifth Circuit decision, *Brand Servs., L.L.C. v. Irex Corp.*, the court explained that

5

"[b]ecause the Louisiana Supreme Court ha[d] not decided" whether to follow the majority or minority approach, the court had to "make an '*Erie* guess' as to how it would do so." 909 F.3d 151, 157 (5th Cir. 2018). The court decided to follow the minority approach because two earlier Louisiana state appellate court decisions had "held that LUTSA does not preempt where non-trade secret information was at issue" in the context of "breach of fiduciary duty claims" that were "specifically excepted from LUTSA's preemption provision." *Id.* at 159. No Fifth Circuit-wide rule was set, as NMI implies (*see* D.I. 78 at 4-5), and other courts in the Fifth Circuit rightly follow the majority approach. *See, e.g.*, *ScaleFactor v. Process Pro Consulting*, 394 F. Supp. 3d 680, 684 (W.D. Tex. 2019) (TUTSA preempts claims based on unauthorized use of confidential information that is not a trade secret); *StoneCoat of Texas v. ProCal Stone Design*, 426 F. Supp. 3d 311, 337 (E.D. Tex. 2019) (unfair competition claim that was "fundamentally concerned" with the unauthorized acquisition of information, "some but not all of which is trade-secret," preempted); *New S. Equip. Mats*, 989 F. Supp. 2d at 534 (following the majority approach).

In *Orca Commc'ns Unlimited v. Noder*, the Arizona Supreme Court decided to follow the minority approach, but only after emphasizing the absence of a uniformity provision in the AUTSA. *See* 236 Ariz. 180, 184 (2014) (highlighting that the AUTSA lacked "a uniformity directive"). In *Newmark Grp. v. Avison Young (Canada)*, the U.S. District Court for the District of Nevada recognized that "[t]he majority approach may well be the better rule in light of the purposes of the Uniform Trade Secrets Act." 2019 WL 575476, at *10 (D. Nev. Jan. 7, 2019). But the court followed the minority approach because (i) an earlier case indicated that "the Nevada Supreme Court may adopt the plain language interpretation," and (ii) the Nevada legislature had **repealed** the NUTSA's uniformity provision. *Id.* Here, there is no Massachusetts case law favoring the minority approach, and the MUTSA includes an express uniformity directive.

6

NMI also cites *Leatt Corp. v. Innovative Safety Tech.*, 2010 WL 2803947 (S.D. Cal. July 15, 2010), attempting to impugn Facebook and Dr. Zlateski's citations to California cases addressing CUTSA preemption. D.I. 78 at 6. NMI, however, fails to mention that *Leatt* has been criticized for unpersuasive reasoning and as inconsistent with California precedent applying the majority approach. *See, e.g.*, *Artec Grp. v. Klimov*, 2016 WL 7157635, at *7 (N.D. Cal. Dec. 8, 2016) (criticizing *Leatt* because "the California Court of Appeal emphatically rejected" the minority view); *Zayo Grp. v. Hisa*, 2013 WL 12201401, at *3 (C.D. Cal. Sept. 17, 2013) (declining to follow *Leatt* and other minority view decisions, adopting the majority approach).

The Court should be unpersuaded by the few, inapposite cases NMI cites to urge the minority approach. The majority approach should be adopted.[2]

### D. The "Comparison Of The Elements" Test Has Been Soundly Rejected

NMI argues that "Defendants neglect to mention an entire body of case law that employs the 'comparison of the elements' test under th[e] allegedly majority view." D.I. 78 at 7-8. That is not true. In their opening motion, Facebook and Dr. Zlateski explained in detail why "over 75% of the UTSA jurisdiction that have addressed th[e] issue" adhere to the rule that preemption applies to any claims arising from the same nucleus of facts as an alleged misuse of confidential information. *See* D.I. 75 at 7-9. These courts eschew the "minority view followed by just a handful of states," which "holds that claims are preempted only if they have the same elements as misappropriation claims." *Id.* This minority view—what NMI calls the "comparison of the elements" test—has been rejected because it is overly narrow, and courts must "be wary of the

---

[2] The majority approach will not lead to "absurd results," as NMI argues. D.I. 78 at 7. To the contrary, as courts recognize, it is the minority approach that makes "little sense." *See, e.g.*, *Diamond Power*, 540 F. Supp. 2d at 1345 ("[I]t would make little sense to go through the rigamarole of proving information was truly a trade secret if a plaintiff could alternatively plead claims with less burdensome requirements of proof.")

7

possibility of duplicative recoveries for the same injury." *Id.* at 8; (quoting *Hauck*, 375 F. Supp. 2d at 658); *see also Hauck*, 375 F. Supp. 2d at 657 ("[T]he standard for preemption cannot be a . . . same elements test as suggested in *Powell* [*Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474 (D. Colo. 1996)]"); *BlueEarth Biofuels*, 123 Haw. at 320 ("The majority of courts . . . have rejected the 'elements' test" because that test "would allow a party to raise multiple different claims based on the same trade secret misappropriation injury" and thus "undermine the purpose of the UTSA").

Tellingly, NMI fails to provide any **reason** the Court should adopt the "comparison of the elements" test, rather than the majority approach's common nucleus of facts test. NMI merely identifies the "comparison of the element" test and states that under it, Chapter 93A, unjust enrichment, and tortious interference claims survive. D.I. 78 at 8-9. NMI does not dispute that its claims are preempted, in whole and in part, under the better, widely-adopted majority approach.

### E. The Breadth Of Chapter 93A Does Not Preclude Preemption

NMI incorrectly argues that its Chapter 93A claims cannot be preempted because Chapter 93A is a "broad" and "flexible" statute. D.I. 78 at 9. For that proposition, NMI relies on *DeLuca v. Gwinn*, 1995 WL 808934 (Mass. Super. Mar. 6, 1995), a two-page case unrelated to preemption, and a handful of inapposite antitrust cases in which parties argued for preemption of Chapter 93A claims though the Massachusetts Antitrust Act lacked a preemption provision. *Id.*; *see also Ciardi v. Hoffmann-LaRoche, LTD*, 2000 WL 33162197 (Mass. Super. Sept. 29, 2000) (discussing the Antitrust Act and Chapter 93A and emphasizing the absence of a preemption provision). Unlike the Antitrust Act, the MUTSA includes an express preemption provision. M.G.L. 93 § 42F.

Furthermore, the breadth of Chapter 93A undercuts NMI's argument. A "more specific statute controls [a] more general one," and "where two statutes conflict, the later statute governs because the Legislature is presumed to be aware of existing statutes when it amends or enacts a new one." *Wing v. Comm'r of Prob.*, 473 Mass. 368, 373 (2015). Here, the more specific and

8

more recent MUTSA should control with respect to claims arising from the alleged misuse of confidential information. Also, as previously noted, numerous courts following the majority approach to preemption have found unfair competition claims, like NMI's Chapter 93A claims, preempted. *See K.C. Multimedia v. Bank of Am. Tech. & Operations*, 171 Cal. App. 4th 939, 962 (2009) ("statutory unfair competition claim" preempted); *Taxinet,* 2018 WL 3405243 at *5 ("Florida Deceptive and Unfair Trade Practices Act" claim preempted).

### F. Discovery Is Not Needed To Resolve The Preemption Issue

NMI requests that the Court "await discovery" before ruling on preemption. D.I. 78 at 10. But NMI's claims are preempted as a matter of law, and "[a] primary purpose of a motion to dismiss . . . is to weed out cases that do not warrant reaching the (oftentimes) laborious and expensive discovery process." *Pereyra v. Sedky,* 148 F. Supp. 3d 134, 141 (D. Mass. 2015). Courts recognize that "it is unnecessary to determine whether or not . . . information at issue meets the definition of a trade secret before addressing" preemption. *BlueEarth Biofuels*, 123 Haw. at 328 ("Preemption analysis is appropriate at the motion to dismiss stage"); *Mortg. Specialists*, 153 N.H. at 777 ("the preemption provision [does] not require that [courts] make a determination of whether the information at issue constituted a trade secret . . . prior to determining whether any of [a plaintiff's other] claims was preempted"). Indeed, Courts following the majority view have "emphatically reject[ed]" the approach NMI proposes. *Avago Techs.*, 2017 WL 412524 at *6.[3]

### G. NMI Cannot Maintain A Parallel Claim For Unjust Enrichment

NMI's unjust enrichment claim should be dismissed because it is preempted, for reasons

---

[3] *See also Bliss Clearing*, 270 F. Supp. 2d at 948-49 ("the disputed status of information . . . does not preclude a court from" ruling on preemption); *Silvaco*, 184 Cal. App. 4th at 239 ("If the plaintiff identifies no property right outside of trade secrets law, then he has no remedy outside that law, and there is nothing unsound or unjust about holding other theories superseded.").

9

discussed, and because "under Massachusetts law, a plaintiff who has an adequate remedy at law cannot maintain a parallel claim for unjust enrichment, even if that remedy is not viable." *Tomasella v. Nestle USA*, 364 F. Supp. 3d 26, 37 (D. Mass. 2019). NMI asserts that its unjust enrichment claim should survive because the MUTSA and DTSA do not cover "'confidential' and 'proprietary' information" that is not trade secret information. D.I. 78 at 11. But that argument goes to the viability of NMI's misappropriation claims, and "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Tomasella*, 364 F. Supp. 3d at 37. Because NMI does not dispute that it could (theoretically) recover damages if it prevails on its MUTSA and DTSA claims, including damages for "unjust enrichment," M.G.L. 93 § 42B; 1836(b)(3)(B)(i)(II), NMI's unjust enrichment claim should be dismissed.[4]

## III.  CONCLUSION

For the reasons set out above and in Facebook and Dr. Zlateski's opening motion, Defendants respectfully request that Counts III and VI of NMI's complaint be dismissed in their entirety,[5] and Count V of NMI's complaint be dismissed in part.

---

[4] The one Massachusetts case NMI cites that is relevant to this issue, *SiOnyx v. Hamamatsu Photonics*, 332 F. Supp. 3d 446 (D. Mass. 2018), supports Facebook and Dr. Zlateski, not NMI. Contrary to what NMI states (*see* D.I. 78 at 11 ("denying summary judgment")), in *SiOnyx*, this Court **granted** defendant HPK summary judgment, ruling that SiOnyx could not pursue an unjust enrichment claim because its contract claim "ma[de] available an adequate remedy at law." *Id.* at 473. "[T]he parties dispute[d] whether the information [at issue] was confidential and therefore whether SiOnyx's breach of contract claim w[ould] ultimately succeed," but the Court ruled "that goes to the viability, not the availability, of the claim." *Id.* Even if NMI did not have adequate remedies at law through the MUTSA and DTSA (it does), NMI also asserts a separate breach of contract claim, which bars its unjust enrichment claim in accordance with *SiOnyx*.

[5] NMI does not dispute that if the Court adopts the majority view of preemption, NMI should not be granted leave to amend Counts III and VI. *See* D.I. 75 at 13 n.10.

Dated:  June 2, 2020                                    Respectfully submitted,

                                                     */s/ William J. Trach*  
William J. Trach (BBO No. 661401)  
Christopher W. Henry (BBO No. 676033)  
Nathanial McPherson (BBO No. 697666)  
LATHAM & WATKINS LLP  
John Hancock Tower  
200 Clarendon Street, 27th Floor  
Boston, MA 02116  
(617) 948-6000 / (617) 948-6001 Fax  
william.trach@lw.com  
christopher.henry@lw.com  
nathanial.mcpherson@lw.com  

Douglas E. Lumish (*pro hac vice*)  
LATHAM & WATKINS LLP  
140 Scott Drive  
Menlo Park, CA 94025  
(650) 328-4600 / (650) 463-2600 Fax  
douglas.lumish@lw.com  

Jennifer L. Barry (*pro hac vice*)  
LATHAM & WATKINS LLP  
12670 High Bluff Drive  
San Diego, CA 92130  
(858) 523-5400 / (858) 523-5450 Fax  
jennifer.barry@lw.com  

*Attorneys for Defendant*  
*Facebook, Inc.*

    */s/ Stephen D. Riden*  
Russell Beck (BBO No. 561031)  
Stephen D. Riden (BBO No. 644451)  
Hanna Tso Joseph (BBO No. 688132)  
BECK REED RIDEN LLP  
155 Federal Street, Suite 1302  
Boston, MA 02110  
(617)500-8670 / (617) 500-8665 Fax  
rbeck@beckreed.com  
sriden@beckreed.com  
hjoseph@beckreed.com  

*Attorneys for Defendant*  
*Aleksandar Zlateski*

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system on June 2, 2020, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF").

                                                   */s/ William J. Trach*
                                                   William J. Trach