# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

NEURAL MAGIC, INC.,

      Plaintiff,

           v.

FACEBOOK, INC. and ALEKSANDAR ZLATESKI,

      Defendants.

Civil Action No. 1:20-cv-10444-DJC

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO COMPEL AND FOR A PROTECTIVE ORDER

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND ................................................................................................2

III.   APPLICABLE LEGAL STANDARDS ............................................................5

     A.    Motions to Compel and for Protective Orders ........................................5

     B.    Pre-Discovery Identifications of Trade Secret and Confidential
          Information .............................................................................................5

     C.    Rule 26(a)(1)(A)(iii) and Damages Computations ..................................8

IV.   ARGUMENT ....................................................................................................8

     A.    NMI Must Supplement Its Identification Of Trade Secret And
          Confidential Information, Before Discovery Of Defendants' Proprietary
          Information .............................................................................................8

     B.    NMI Must Provide Damages Computations And Documents At This Time ........17

V.    CONCLUSION................................................................................................20

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*A&P Tech., Inc. v. Lariviere*,
   No. 1:17-cv-534, 2017 WL 6606961 (S.D. Ohio Dec. 27, 2017) .................................. *passim*

*Aquila, LLC v. City of Bangor*,
   No. 08-cv-64, 2009 WL 3326765 (D. Me. Oct. 9, 2009) ....................................................18

*Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Finance Corp.*,
   No. 04 Civ. 3854, 2005 WL 977850 (S.D.N.Y. Apr. 28, 2005) .............................................19

*AutoMed Techs. v. Eller*,
   160 F. Supp. 2d 915 (N.D. Ill. 2001) ..........................................................................7

*City & Cty. of S.F. v. Tutor-Saliba Corp.*,
   218 F.R.D. 219 (N.D. Cal. 2003) ...............................................................................20

*Clark v. Berkshire Med. Ctr.*,
   No. 17-cv-30186, 2019 WL 78994 (D. Mass. Jan. 2, 2019) ...................................................18

*Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*,
   306 F.R.D. 276 (N.D. Cal. 2015) ...............................................................................20

*Cruz v. Boston Litig. Sols. LLC*,
   No. 13-cv-11127, 2015 WL 12964732 (D. Mass. Jan. 9, 2015) ..............................................19

*DeRubeis v. Witten Techs., Inc.*,
   244 F.R.D. 676 (N.D. Ga. 2007) ........................................................................... *passim*

*Gabriel Techs. Corp. v. Qualcomm, Inc.*,
   No. 08-cv-1992, 2011 WL 6152240 (S.D. Cal. Dec. 12, 2011) ...............................................7

*Hill v. Best Med. Int'l, Inc.*,
   No. 09-cv-1194, 2010 WL 2546023 (W.D. Pa. Jun. 24, 2010) ..........................................7, 17

*Ikon Office Sols. v. Konica Minolta Bus. Sols., U.S.A.*,
   No. 3:08-cv-539, 2009 WL 4429156 (W.D.N.C. Nov. 25, 2009) .............................................7

*J&M Indus., Inc. v. Raven Indus., Inc.*,
   No. 16-2723, 2018 WL 1427952 (D. Kan. Mar. 22, 2018) ....................................................19

*JJ Plank Co., LLC v. Bowman*,
   No. 3:18-cv-00798, 2018 WL 3545319 (W.D. La. Jul. 23, 2018) ...........................................7

*Kalencom Corp. v. Shulman*,
No. 17-cv-5453, 2018 WL 1806037 (E.D. La. Apr. 17, 2018)..................................................7

*Kirouac v. Donahue*,
No. 2:11-cv-00423, 2013 WL 5773818 (D. Me. Oct. 23, 2013) ...............................................8

*LT Game Int'l Ltd. v. Shuffle Master, Inc.*,
No. 2:12-cv-01216, 2013 WL 321659 (D. Nev. Jan. 28, 2013) .......................................19, 20

*Microwave Research Corp. v. Sanders Assoc.*,
110 F.R.D. 669 (D. Mass. 1986).............................................................................................6

*Powerweb Energy v. Hubbell Lighting*,
No. 3:12-cv-220, 2012 WL 3113162 (D. Conn. Jul. 31, 2012)...............................................17

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
280 F.R.D. 147 (S.D.N.Y. 2012) ............................................................................................19

*Shea v. Millett*,
No. 17-cv-12233, 2019 WL 4218477 (D. Mass. Sept. 4, 2019)...............................................5

*Social Apps, LLC v. Zynga, Inc.*,
No. 4:11-CV-04910, 2012 WL 2203063 (N.D. Cal. June 14, 2012)............................. *passim*

*Song v. Drenberg*,
No. 18-cv-06283, 2019 WL 1949785 (N.D. Cal. May 2, 2019)...............................................18

*StoneEagle Servs., Inc. v. Valentine*,
No. 3:12-cv-1687, 2013 WL 9554563 (N.D. Tex. Jun. 5, 2013)..................................... *passim*

*Structural Pres. Sys., LLC v. Andrews*,
No. 12-cv-1850-MJG, 2013 WL 12244886 (D. Md. Dec. 17, 2013) ...............................6, 7, 9

*Switch Commc'ns Grp. v. Ballard*,
No. 2:11-cv-00285, 2012 WL 2342929 (D. Nev. Jun. 19, 2012) ..................................7, 16, 17

*THX, Ltd. v. Apple, Inc.*,
No. 13-cv-01161, 2016 WL 2899506 (N.D. Cal. May 13, 2016)............................................19

*United Servs. Auto. Ass'n v. Mitek Sys., Inc.*,
289 F.R.D. 244 (W.D. Tex. 2013) ................................................................................. *passim*

*Wilson v. Pharmerica Corp. Long Term Disability Plan*,
No. 14-cv-12345, 2015 WL 4572833 (D. Mass. Jul. 29, 2015) ...............................................5

*Xerox Corp. v. Int'l Bus. Machines Corp.*,
64 F.R.D. 367 (S.D.N.Y. 1974) ...............................................................................................10

**State Cases**

*Alnylam Pharm., Inc. v. Dicerna Pharm., Inc.*,
No. MICV20154126, 2016 WL 4063565 (Mass. Super. Apr. 6, 2016) ......................... *passim*

*L-3 Commc'ns Corp. v. Reveal Imaging Techs., Inc.*,
18 Mass. L. Rptr. 512, *13 (Mass. Sup. Ct. 2004) ................................................................10

**State Statutes**

Mass. G. L. c. 93 § 42D(b) ............................................................................... *passim*

**Rules**

Fed. R. Civ. P. 15 ................................................................................................................4

Fed. R. Civ. P. 16 ................................................................................................................6

Fed. R. Civ. P. 26 ................................................................................................... *passim*

Fed. R. Civ. P. 34 ...................................................................................................5, 8, 17

Fed. R. Civ. P. 37 ...................................................................................................5, 20

## I.      INTRODUCTION

For nearly a year, Defendants Facebook, Inc. ("Facebook") and Dr. Aleksandar Zlateski have been asking Plaintiff Neural Magic, Inc. ("NMI") to identify with specificity the alleged trade secret and confidential information that forms the bases for its claims.  And for nearly a year, NMI has failed to fulfill its basic obligations and has left Facebook and Dr. Zlateski without the clarity they need to defend themselves.

NMI tried to identify allegedly proprietary information when it moved for a preliminary injunction in April.  But, in denying that motion, the Court correctly recognized that NMI failed to show a reasonable likelihood of success on its claims that the *four* alleged trade secrets NMI was able to muster were, in fact, trade secrets.  *See* D.I. 80 at 10-16.  Then, in November, because the Court recognized the "live dispute between the parties about whether the trade secrets claimed are in fact trade secrets," it ordered NMI to comply with Mass. G. L. c. 93 § 42D(b)'s requirement of a pre-discovery identification of trade secrets by December 2.  D.I. 105.  Still, NMI resisted.

On December 2, NMI served a "Statement of Identification of Trade Secrets," which violates Mass. G. L. c. 93 § 42D(b) and the Court's order. Ex. A.[1]  Instead of identifying its alleged trade secrets with specificity as required, NMI identified thirty-eight "categories of trade secrets" (*id.* at 1) and failed to describe any of these "categories" in a manner distinguishing them from matters of general knowledge.  Throughout December, Facebook and Dr. Zlateski urged NMI to remedy its deficient disclosure, but NMI refused.  Then, on January 4, 2021, NMI served responses to Facebook and Dr. Zlateski's interrogatories, which still fail to identify the alleged trade secret and confidential information at issue.

Similarly, on December 2, NMI served deficient Rule 26(a)(1) initial disclosures.  NMI

---

[1] Lettered exhibits are attached to the accompanying Declaration of Christopher W. Henry.

failed to provide "a computation of each category of damages claimed" or "make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based," as required by Rule 26(a)(1)(A)(iii). Ex. B at 4-5. NMI refused to cure its violation of this rule as well, including through its January 4 damages-related discovery responses.

Facebook and Dr. Zlateski respectfully request that the Court order NMI to:

(i) supplement its Mass. G. L. c. 93 § 42D(b) Trade Secret Statement and responses to Interrogatories Nos. 1 and 8, to identify allegedly misappropriated trade secret and confidential information with sufficient particularity to distinguish NMI's claims from information in the public domain (including NMI's published patent applications[2]); and

(ii) supplement its initial disclosures and responses to Interrogatories Nos. 6 and 13, to provide the damages evidence, computations, and documents the law requires.

Discovery of Facebook and Dr. Zlateski's proprietary technical and commercial information should be barred until NMI remedies its unjustified delay and deficiencies.[3]

## II.   BACKGROUND

NMI sent its first letters to Dr. Zlateski and Facebook on January 22 and 23, 2020, alleging that Dr. Zlateski, a former employee of NMI, stole NMI trade secrets when he left the company to work for Facebook, and that Facebook then used and published those trade secrets. D.I. 59-1, 59-2. On March 4, 2020, NMI filed a complaint based on these allegations, asserting claims under the Massachusetts Uniform Trade Secrets Act ("MUTSA") (Count I), the Defend Trade Secrets Act ("DTSA") (Count II), and Chapter 93A (Count III), and for breach of contract (Count IV), tortious interference (Count V), and unjust enrichment (Count VI). D.I. 1.

---

[2] On May 21, 2020, the PTO published NMI's U.S. Patent Application Publications Nos. 2020/0160181 and 2020/0160182. *See* Exs. C-D. These publications list Dr. Zlateski as an inventor and disclose—and therefore commit to the public domain—much of the information NMI erroneously contends is trade secret and/or confidential information. *See* Sections IV.A.1-IV.A.4.

[3] There are deficiencies in other NMI discovery responses, but Defendants focus on NMI's Trade Secret Statement, initial disclosures, and responses to Interrogatories Nos. 1, 6, 8, and 13 in this motion, because these disclosures raise gating issues that will define go-forward discovery.

Throughout February, March, and early April, Facebook and Dr. Zlateski asked NMI to identify the information it alleges was misappropriated or misused, e.g., by specifying the algorithms and source code that NMI contends use such information. *See* D.I. 43 at 8-9 (recounting the parties' negotiations). NMI never provided this information. *See id.* Then, on April 9, NMI moved for a preliminary injunction, identifying four alleged trade secrets: ███████████████ ██████████████████████████████████████████████████████████ ████████████████████████ D.I. 32 at 11-12.

On April 23, Facebook and Dr. Zlateski opposed NMI's motion for preliminary injunction, explaining that "the amorphous categories of information" NMI says are trade secrets "are, in reality, well-known approaches commonly used by computer scientists in the field." D.I. 43 at 1; *see also id.* at 13-18. On May 29, the Court denied NMI's motion, ruling, among other things, that NMI failed to show a reasonable likelihood of success on its claims that its alleged trade secrets were, in fact, trade secrets. *See* D.I. 80 at 10-16.

On May 11, Facebook and Dr. Zlateski filed a partial motion to dismiss. D.I. 74. That motion was granted in part and denied in part on October 29, with NMI's unjust enrichment claim being dismissed. D.I. 88. About two weeks later, on November 16, the parties appeared for a scheduling conference. D.I. 104. During this conference, the Court recognized the "live dispute between the parties about whether the trade secrets claimed are in fact trade secrets." D.I. 105; Nov. 16 Hr'g Tr. at 12:21-23. The Court therefore ordered NMI to serve a pre-discovery trade secret identification pursuant to Mass. Gen. L. c. 93 § 42D(b) by December 2. D.I. 105.

On December 2, the parties exchanged Rule 26(a)(1) initial disclosures, and NMI served its Trade Secret Statement. *See* Exs. A-B. That same day, Facebook and Dr. Zlateski emailed NMI because, in violation of Rule 26(a)(1)(A)(iii), NMI's disclosures lacked "a computation of

each category of damages claimed by the disclosing party," and NMI did not "make available for inspection and copying . . . the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based." Ex. E (Dec. 2 email). NMI refused to remedy these rule violations. *Id.* (Dec. 4 email). In response, Facebook and Dr. Zlateski told NMI that, "in the spirit of compromise," they would "await NMI's discovery responses, due January 4," before seeking Court intervention, because those responses "should address and detail NMI's damages theories as precisely as possible at that juncture." *Id.* (Dec. 7 email).

On December 11, Facebook and Dr. Zlateski wrote NMI concerning its Trade Secret Statement. Ex. F. NMI had wrongly identified "categories of trade secrets," instead of identifying its alleged trade secrets with the specificity the law requires. *Id.* at 2. Facebook and Dr. Zlateski asked NMI to confirm that it would address its statement's deficiencies by January 4. *Id.* Again, Facebook and Dr. Zlateski were willing "to provide NMI an additional three weeks . . . in the interest of cooperation," "in view of the upcoming holidays," and because "on January 4, 2021, NMI [would have to] specifically identify each allegedly misappropriated trade secret and/or item of confidential information and produce documents substantiating same, in response to Defendants' first sets of discovery requests." *Id.* In continued correspondence, NMI refused to supplement. *See* Exs. G-J.[4]

On January 4, the parties exchanged responses to first sets of interrogatories and requests for production. Exs. K-L. NMI's responses to Defendants' Interrogatories Nos. 1 and 8 just incorporated, and repeated statements from, NMI's deficient Trade Secret Statement, and referred back to NMI's preliminary injunction filings. *See* Ex. K at 7-11, 23-24. And NMI's responses to

---

[4] On December 16, NMI filed an Amended Complaint without seeking Facebook and Dr. Zlateski's consent, or the Court's leave, violating Rule 15(a)(2). D.I. 109. Regardless, Facebook and Dr. Zlateski each answered that Amended Complaint on December 30. D.I. 110, 111.

Interrogatories Nos. 6 and 13 again failed to provide the damages information that NMI should have produced with its Rule 26(a)(1) initial disclosures.  *See id.* at 21-22, 33-34.  Facebook and Dr. Zlateski immediately requested a conference.  Ex. M (Jan. 4 email).

On January 7, 2021, the parties conferred but were unable to resolve their disputes.

## III.   APPLICABLE LEGAL STANDARDS

### A.   Motions to Compel and for Protective Orders

Trial courts have broad discretion in managing discovery.  *Shea v. Millett*, No. 17-cv-12233, 2019 WL 4218477, at *1 (D. Mass. Sept. 4, 2019).  "If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions."  Fed. R. Civ. P. 37(a)(3)(A).  Similarly, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to answer an interrogatory submitted under Rule 33" or "fails to produce documents . . . as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(iii)-(iv).

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Wilson v. Pharmerica Corp. Long Term Disability Plan*, No. 14-cv-12345, 2015 WL 4572833, at *2 (D. Mass. Jul. 29, 2015).  The Court may enter protective orders "forbidding" certain discovery and/or "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1).

### B.   Pre-Discovery Identifications of Trade Secret and Confidential Information

Courts in Massachusetts have long recognized that the disclosure of allegedly stolen proprietary information "must come *before* a plaintiff is allowed to obtain discovery of a defendant's confidential information regarding the development of the defendant's own technology."  *Alnylam Pharm., Inc. v. Dicerna Pharm., Inc.*, No. MICV20154126, 2016 WL

4063565, at *2 (Mass. Super. Apr. 6, 2016) (italics original).  That way, "the burden of time and expense to respond to discovery propounded by the plaintiff" may be "circumscribed by what the plaintiff fairly and specifically claims are the stolen trade secrets."  *Alnylam Pharm.*, 2016 WL 4063565 at *2 (citing *Microwave Research Corp. v. Sanders Assoc.*, 110 F.R.D. 669, 674 (D. Mass. 1986) (denying a plaintiff's motion to compel because the plaintiff had not "specif[ied] the trade secrets and/or confidential information which it claim[ed] were misappropriated")).  As this Court already recognized, pre-discovery identifications became statutorily prescribed in Massachusetts in 2018, through enactment of the MUTSA, which states:

> Before commencing discovery relating to an alleged trade secret, the party alleging misappropriation shall identify the trade secret with sufficient particularity under the circumstances of the case to allow the court to determine the appropriate parameters of discovery and to enable reasonably other parties to prepare their defense.

Mass. G. L. c. 93 § 42D(b); D.I. 105 (quoting, and ordering NMI to comply with, this statute).[5]

Courts across the country, including in jurisdictions without statutes like Mas. G. L. c. 93 § 42D(b), recognize that pre-discovery identifications serve important purposes, including:

> (1) discouraging frivolous pleadings, (2) allowing the Court and parties to better determine the scope of discovery, (3) allowing defendant the means to challenge the alleged secrecy of the information at issue; (4) preventing plaintiffs from making overbroad secrecy claims encompassing vast categories of information; (5) ensuring that plaintiff does not mold its cause of action around the discovery it receives; and (6) making discovery more efficient….

*Structural Pres. Sys., LLC v. Andrews*, No. 12-cv-1850-MJG, 2013 WL 12244886, at *3 (D. Md. Dec. 17, 2013) (citing *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680 (N.D. Ga. 2007)).  Consequently, there is a "growing consensus"—a "legion of cases"—favoring particularized pre-discovery identifications of allegedly misappropriated "Trade Secret and Confidential

---

[5] Rule 16(c)(2)(L) also provides a court with "broad discretion" to "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues," such as trade secret cases. Fed. R. Civ. P. 16(c)(2)(L); *United Servs. Auto. Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244, 248 (W.D. Tex. 2013) (*USAA*), *aff'd*, 2013 WL 1867417 (W.D. Tex. Apr. 24, 2013).

Information." *StoneEagle Servs., Inc. v. Valentine*, No. 3:12-cv-1687, 2013 WL 9554563, at *2 (N.D. Tex. Jun. 5, 2013); *Kalencom Corp. v. Shulman*, No. 17-cv-5453, 2018 WL 1806037, at *2 (E.D. La. Apr. 17, 2018); *JJ Plank Co., LLC v. Bowman*, No. 3:18-cv-00798, 2018 WL 3545319, at *2 (W.D. La. Jul. 23, 2018); *A&P Tech., Inc. v. Lariviere*, No. 1:17-cv-534, 2017 WL 6606961, at *7 (S.D. Ohio Dec. 27, 2017).[6]

In these pre-discovery identifications, plaintiffs must provide "clarity that can be understood by a lay person" and "sufficient particularity so that the reader can understand how each claim differs from information in the public domain." *Alnylam Pharm.*, 2016 WL 4063565 at *3; *see also Structural Pres.*, 2013 WL 12244886 at *6 ("[P]laintiffs must make their identification particular enough as to separate the trade secret from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade."); *Kalencom*, 2018 WL 1806037 at *5 (similar); *StoneEagle Servs.*, 2013 WL 9554563, at *5 (identification must "separately break out each of the individual alleged trade secrets that Plaintiffs claim Defendants have misappropriated" and "identify all such claims with sufficient particularity so that the reader understands how each such claim differs from public domain information—including Plaintiffs' public patent filings"); *USAA*, 289 F.R.D. at 249 (same). "General allegations of drawings, patterns, software programs, methods, techniques, processes, source code, libraries, [and] data files" are "insufficient." *Hill v. Best Med. Int'l, Inc.*, No. 09-cv-1194, 2010 WL 2546023, at *4 (W.D. Pa. Jun. 24, 2010); *see also A&P Tech.*, 2017 WL 6606961 at *10 (a "list of categories of

---

[6] *See also, e.g.*, *USAA*, 289 F.R.D. at 248-49; *Switch Commc'ns Grp. v. Ballard*, No. 2:11-cv-00285, 2012 WL 2342929, at *5 (D. Nev. Jun. 19, 2012); *Ikon Office Sols. v. Konica Minolta Bus. Sols., U.S.A.*, No. 3:08-cv-539, 2009 WL 4429156, at *5 (W.D.N.C. Nov. 25, 2009); *DeRubeis*, 244 F.R.D. at 681; *AutoMed Techs. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001); *Gabriel Techs. Corp. v. Qualcomm, Inc.*, No. 08-cv-1992, 2011 WL 6152240, at *5 (S.D. Cal. Dec. 12, 2011), *objections overruled*, 2012 WL 849167 (S.D. Cal. Mar. 13, 2012).

business information," including unspecific "source code," "is not a list of actual trade secrets").

### C.      Rule 26(a)(1)(A)(iii) and Damages Computations

Rule 26(a)(1)(A)(iii) requires that, "without awaiting a discovery request," a party must provide in initial disclosures "a computation of each category of damages claimed" and "make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26(a)(1)(E) identifies "***unacceptable excuses***" for the failure to make such disclosures:

> A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

Fed. R. Civ. P. 26(a)(1)(E) (emphasis added). Thus, even at any early stage, Rule 26(a)(1) necessitates substantive damages-related disclosures, which enable defendants to make informed assessments of potential exposure and impact the scope of discovery. *See, e.g.*, *Kirouac v. Donahue*, No. 2:11-cv-00423, 2013 WL 5773818, at *2 (D. Me. Oct. 23, 2013) (Rule 26(a)(1) "requires a true computation of the damages a plaintiff will seek early in the discovery process").

## IV.    ARGUMENT

### A.      NMI Must Supplement Its Identification Of Trade Secret And Confidential Information, Before Discovery Of Defendants' Proprietary Information

NMI should be ordered to (i) revise its Trade Secret Statement to comply with Mass. G. L. c. 93 § 42D(b) and the Court's November 17 order (D.I. 105) and (ii) supplement its responses to Interrogatories Nos. 1 and 8, to identify allegedly misappropriated trade secret and confidential information with sufficient particularity to distinguish its claims from information in the public domain—including NMI's published patent applications. *See Alnylam Pharm.*, 2016 WL 4063565

at *3; *Structural Pres.*, 2013 WL 12244886 at *6.[7]

Even though it failed to identify its alleged trade secrets and confidential information with specificity, NMI propounded numerous, overbroad discovery requests that would appear to require the production of wide swaths of technical information, including information that cannot reasonably relate to NMI's claims. For example, NMI repeatedly admitted to the Court that "sparsity has been around forever." D.I. 76 at 11:6-11. Yet NMI demanded the production of "All Documents" relating to any plans—business, strategic, operating, marketing, financial, sales, etc.—"relating to sparsity." Ex. N (NMI RFP No. 19).[8] "[T]he burden of time and expense" to respond to such requests cannot be "circumscribed by what [NMI] fairly and specifically claims" are the stolen trade secrets and confidential information, as the law requires, because NMI refuses to identify that information. *Alnylam Pharm.*, 2016 WL 4063565 at *2.

Instead, NMI served a Trade Secret Statement and interrogatory responses that list thirty-eight alleged "categories of trade secrets" (Ex. A at 1). *See A&P Tech.*, 2017 WL 6606961 at *10 (a "list of categories of business information," including unspecific "source code" and "processes," "is not a list of actual trade secrets").[9] NMI contends that this list provides "more exacting

---

[7] Defendants' Interrogatory No. 1 asked NMI to "State the Basis, in full and complete detail . . . for any claim that NMI possessed one or more trade secrets and/or items of Confidential Information that were misappropriated or otherwise misused by Facebook and/or Dr. Zlateski." Ex. K at 6. Interrogatory No. 8 asked NMI to identify allegedly misappropriated source code or algorithms by "path, filename, and lines of . . . code." *Id.* at 23.

[8] Other improper requests include NMI's demands for "[a]ll Documents" relating to the "development and use of "loop unrolling," and NMI's request that Defendants identify all non-public general (not even sparse) matrix multiplication code and code relating to loop unrolling. Ex. N (RFP Nos. 2, 3); Ex. O (Rog. Nos. 1, 7). As the Court already found, Facebook "used sparse matrix multiplication since at least 2015" and "used loop unrolling in the context of sparse matrix multiplication and JIT compilers prior to Zlateski's arrival." D.I. 80 at 20; *see also id.* at 22 ("[NMI] acknowledges that prior to Zlateski's arrival, Facebook did in fact use full-tile loop unrolling"); D.I. 45 (Kaeli Decl.) ¶¶ 47-48, 68-73 (sparse matrix multiplication and loop unrolling were well-known before NMI was founded).

[9] As noted, in pertinent parts, NMI's interrogatory responses just repeat and incorporate NMI's

delineations of" the four trade secrets that NMI proffered—and failed to substantiate—in moving for a preliminary injunction. Ex. G at 1. But that contention is belied by the fact that NMI's alleged trade secrets ballooned almost ten-fold (from four to thirty-eight) from April to December. And regardless, for reasons described below, NMI's disclosures do not describe allegedly proprietary information with "sufficient particularity" to distinguish each of NMI's claims "from information in the public domain." *Alnylam Pharm.*, 2016 WL 4063565 at *3.

"Both for the defendants to respond to the charges against them, and for the Court to make appropriate findings and rulings on the case, there must be a clear designation that distinguishes unique or proprietary material from" information "alluded to" in NMI's disclosures. *L-3 Commc'ns Corp. v. Reveal Imaging Techs., Inc.*, 18 Mass. L. Rptr. 512, *13 (Mass. Sup. Ct. 2004) (citing, among other cases, *Xerox Corp. v. Int'l Bus. Machines Corp.*, 64 F.R.D. 367 (S.D.N.Y. 1974)). Until NMI "identif[ies] in detail the trade secrets and confidential information alleged to have been misappropriated by" Defendants, "neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not," and Defendants cannot "undertake a meaningful discovery program," e.g., by "attempt[ing] to trace the flow of [alleged] trade secrets and confidential information through" Facebook. *Xerox Corp.*, 64 F.R.D. at 371-72. There also is serious risk that NMI will adopt a shifting sands approach to discovery and its claims while "rummaging through [Defendants'] scientific files." *Alnylam Pharm.*, 2016 WL 4063565 at *2.

**1.** ███████████████████████████████

████████████████████████████████████████████████████

Items 1, 2, 5, and 6 in NMI's Trade Secret Statement repeat, but appear to expand, elements

---

Trade Secret Statement and preliminary injunction filings. *See* Ex. K at 7-11, 23-24.

of what NMI contended in its preliminary injunction papers was ***one*** trade secret— █████████ ████████████████████████████ *Compare* Ex. A, Items 1, 2, 5, and 6 *with* D.I. 97 (Scott Decl.) ¶¶ 99-101.  Facebook, Dr. Zlateski, and their expert, Dr. David Kaeli, explained that NMI's ████████████████████ cannot be a trade secret because it comprises "common technique[s]" that were "used in the field long before NMI was founded in 2018." D.I. 43 at 13-15; D.I. 45 (Kaeli Decl.) ¶¶ 124-51; D.I. 47 (Zlateski Decl.) ¶¶ 28-30.  Item 6 also purports to identify ████████████████████ but fails to identify any specific algorithms and hedges with the open-ended language "for example." Ex. A at 4.  Furthermore, NMI has publicly disclosed these concepts, including in patent applications published on May 21, 2020.[10]  NMI should be compelled to describe Items 1, 2, 5, and 6 in a manner distinguishing these items from the public domain, "especially in light of the fact that the [alleged proprietary information] may also be found in [NMI's] public patent filings" and therefore "could not be a trade secret." *StoneEagle*, 2013 WL 9554563 at *5; *see also Alnylam Pharm.*, 2016 WL 4063565 at *3; *USAA*, 289 F.R.D. at 249.

NMI's Items 3 and 4 identify █████████████████████████████████ ███████████████████████████████████ Ex. A at 3.  ██████████



████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████    *See* D.I. 43 at 12; Kaeli Decl. ¶¶ 66-67, 84-87; Zlateski Decl. ¶ 29.  NMI's

own publications admit as much.  *E.g.*, Ex. C, '181 Pub. ¶¶ 54, 56, 61, 72 ████████████

████████████████████████████████████    NMI's Items 3 and 4 are therefore insufficient.

*Alnylam Pharm.*, 2016 WL 4063565 at *3; *StoneEagle*, 2013 WL 9554563 at *5.

        NMI's Items 7, 8, and 10 purport to identify ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████    Ex. A at

4-5.  Because the specific code that NMI contends is proprietary is not identified—e.g., by file

name, line numbers, or key aspects—"[t]his is not sufficient."  *Soc. Apps*, 2012 WL 2203063 at

*5 ("[L]eaving aside the two instances where SocialApps identified a specific file name or source

code line numbers, SocialApps has only offered the most general concepts to describe what it

believes is its trade secret information.").  A disclosure listing "the end results of, or the functions

performed by" allegedly proprietary "software" and "algorithms" "does not specify any trade

secrets at all."  *DeRubeis*, 244 F.R.D. at 679.[11]  NMI has represented that "[t]he relevant source

code for these trade secrets will be made available for inspection."  Ex. K at 11.  If NMI knows

what the "relevant source code" is, that code must be specifically identified.

        **2.**    ████████████████████████████████████████████████████

            ████████████████████████████████████████████████████████

████████████████████████████████████████    NMI's Items 11-15 identify

---

[11] In Item 9, NMI does identify 22 lines of source code.  Ex. A at 4-5.  But even this, NMI
characterizes as just an "exemplar."  Ex. G at 1.

████████████████████████████████████████████████



D.I. 68 ¶ 44.

Defendants thus are unable to distinguish Items 11-15 from information in the public domain, including information that NMI admits was known and has itself publicly disclosed.  These items are inadequate.  *Alnylam Pharm.*, 2016 WL 4063565 at *3; *StoneEagle*, 2013 WL 9554563 at *5.[13]

But this disclosure is inadequate because the code that NMI contends is proprietary remains unspecified.  *See Soc. Apps*, 2012 WL 2203063 at *5; *DeRubeis*, 244 F.R.D. at 679.

**3.**

---

[13] NMI's Item 16 identifies the same code as Item 9 (Ex. A at 6).  *See* note 11.



Consequently, Defendants cannot distinguish NMI's Items 18-24 from information in the public domain, and these items are insufficient.  *See Alnylam Pharm.*, 2016 WL 4063565 at *3; *USAA*, 289 F.R.D. at 249; *StoneEagle*, 2013 WL 9554563 at *5.

Ex. A at 7-8.  Again, these disclosures are insufficient because the code

that NMI contends is proprietary is not specifically identified.  *See Soc. Apps*, 2012 WL 2203063

at *5; *DeRubeis*, 244 F.R.D. at 679.[15]

**4.**



*See* D.I. 76 (May 15 Hr'g Tr) at 29:18-25 'sparse instruction

streaming and compact FMA encoding and FMA input buffering had never been used together for

sparse matrix multiplication.  Neural Magic and Zlateski at Neural Magic put it all together.").[16]



Despite this "substantial evidence" of public availability (presented over eight months

ago), NMI made no effort to "specifically describe what particular combination of components

renders each of its designs novel or unique, how the components are combined, and how they

---

[15] NMI's Item 27 identifies 10 lines of code (Ex. A at 7), but this too is merely an "exemplar" according to NMI (Ex. G at 1).

[16] *See also* D.I. 76 at 5:16-20 ("[W]e are aware this is on the public record in open court'); *A&P Tech.,* 2017 WL 6606961 at *10 ("[I]nformation that has been publicly disclosed . . . is no longer eligible for trade-secret protection").

Kaeli Decl. ¶ 169; Zlateski Decl. ¶¶ 36-41.

operate in unique combination." *Switch Commc'ns*, 2012 WL 2342929 at *5.  NMI thus failed to

"meet its burden of describing its alleged trade secrets with reasonable particularity." *Id.* █████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

NMI's Items 29-34 are thus inadequate.  *Switch Commc'ns*, 2012 WL 2342929 at *5; *Alnylam*

*Pharm.*, 2016 WL 4063565 at *3; *USAA*, 289 F.R.D. at 249; *StoneEagle*, 2013 WL 9554563 at *5.

███████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████  NMI's descriptions of these items are insufficient for the same

reasons NMI's other code-related identifications fail.  The allegedly proprietary code is not

specified.  *E.g.*, *Soc. Apps*, 2012 WL 2203063 at *5; *DeRubeis*, 244 F.R.D. at 679.

*        *        *

For the foregoing reasons, the Court should order NMI to serve a revised Trade Secret

Statement and supplemental interrogatory responses that provide the particularized identification

of allegedly misappropriated trade secret and confidential information that the law requires.  *E.g.*,

*Alnylam Pharm.*, 2016 WL 4063565 at *2 (ordering a revised trade secret disclosure); *Soc. Apps*,

2012 WL 2203063 at *5 (ordering a supplemental identification and interrogatory responses).

Further, because NMI's vague disclosures (i) prevent determinations of the relevance of

discovery sought by NMI, (ii) obstruct Facebook and Dr. Zlateski's ability to undertake a

meaningful discovery program and to challenge the alleged secrecy of the information at issue,

---

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

and (iii) risk NMI molding its case around discovery it receives, the Court should bar discovery of Defendants' proprietary information until NMI serves adequate disclosures.  *See, e.g.*, *Hill*, 2010 WL 2546023 at *4; *Switch Commc'ns*, 2012 WL 2342929 at *6.  And NMI should not be allowed amend its revised disclosures absent a showing of "good cause."  *Powerweb Energy v. Hubbell Lighting*, No. 3:12-cv-220, 2012 WL 3113162, at *2 (D. Conn. Jul. 31, 2012) (granting protective order pending adequate trade secret identification).  Indeed, "given that the Court has already found no strong case for requiring preliminary injunctive relief against Defendants, it follows that the Court should therefore err on the side of caution in protecting Defendants' [proprietary information] against unnecessary disclosure."  *A&P Tech.*, 2017 WL 6606961, at *9.

### B.   NMI Must Provide Damages Computations And Documents At This Time

The Court should order NMI to (i) serve supplemental initial disclosures providing the damages computations and documents required by Rule 26(a)(1)(A)(iii) and (ii) supplement its damages-related responses to Interrogatories Nos. 6 and 13.[19]

NMI unjustifiably refuses to comply with Rule 26(a)(1)(A)(iii)'s requirement that a party disclose "a computation of each category of damages" and "make available for inspection and copying under Rule 34 the documents or evidentiary material, unless privileged or protected from disclosure, on which each computation is based."  Fed. R. Civ. P. 26(a)(1)(A)(iii).[20]  To date, NMI has merely identified the types of damages it may seek (e.g., "actual damages," "punitive

---

[19] Defendants' Interrogatory No. 6 asked NMI to "State the Basis, in full and complete detail . . . for any assertion that" Defendants' alleged misconduct "reduced the value, monetarily or otherwise" of NMI's purported proprietary information.  Interrogatory No. 13 asked NMI to "State the Basis, in full and complete detail . . . for any claim that NMI is entitled to financial and/or equitable remedies in this Case, and describe in detail th[ose] remedies."  Ex. K (Rogs. 6 & 13).

[20] NMI must produce damages-related documents pursuant to the "standing Request for Production" imposed by Rule 26(a)(1)(A)(iii) (*see* Fed. R. Civ. P. 26(a)(1) advisory committee notes to 1993 amendment), in response to Defendants' Interrogatories Nos. 6 and 13 (*see* Ex. K; L.R. 26.5(c)(8)), and also in response to Defendants' RFPs Nos. 31 and 69 (*see* Ex. L).

damages," "fees and costs"), parroted its complaint's prayers for relief, and claimed that "amount[s] of damages" are "not yet ascertainable," "not susceptible to calculation," and "may require expert testimony." Ex. B at 4-5 (NMI's initial disclosures); *see also* Ex. K (NMI's Resp. to Rog. Nos. 6 & 13). This is improper. *See LT Game Int'l Ltd. v. Shuffle Master, Inc.*, No. 2:12-cv-01216, 2013 WL 321659, at *5 (D. Nev. Jan. 28, 2013) (a "regurgitation of [a] prayer for relief" does not "comply with the requirements of Rule 26(a)(1)(A)(iii)"); *Aquila, LLC v. City of Bangor*, No. 08-cv-64, 2009 WL 3326765, at *4 (D. Me. Oct. 9, 2009) (plaintiff "clearly violated its initial disclosure obligations" where it "did not set forth a 'computation of each category of damages'").

The fact that NMI "may not be able to precisely compute [its] claimed damages does not excuse [it] from [its] obligation to compute [its] losses as precisely as possible" at this juncture, "and to supplement that computation in the event that [it] obtain[s] new information relevant to the calculation of [its] alleged losses." *Clark v. Berkshire Med. Ctr.*, No. 17-cv-30186, 2019 WL 78994, at *3 (D. Mass. Jan. 2, 2019). Rule 26 requires that NMI "make its initial disclosures based on the information . . . reasonably available to it," and provides that NMI "is not excused from making its disclosures because it has not fully investigated the case" or because Defendants have not made all of their discovery disclosures. Fed. R. Civ. P. 26(a)(1)(E). "If [NMI] wish[es] to maintain [its] suit, [it] ha[s] no excuse for avoiding [Rule 26(a)(1)(A)(iii)'s] basic discovery obligation." *Clark*, 2019 WL 78994, at *3. At a minimum, NMI must disclose ***how*** it intends to calculate each category of damages it seeks, i.e., NMI must disclose its theories of recovery, and explain what (missing) information it needs to complete its calculations. *See Song v. Drenberg*, No. 18-cv-06283, 2019 WL 1949785, at *2 (N.D. Cal. May 2, 2019) ("[P]laintiffs must describe on a claim-by-claim basis the nature of the damages claimed (e.g. actual damages), and how such

damages may be calculated (e.g. estimated value of specific lost business opportunities).").[21]

NMI initiated this litigation almost a year ago.  By now, NMI should be able to provide *some* meaningful information regarding its damages claims.  *Cf. THX, Ltd. v. Apple, Inc.*, No. 13-cv-01161, 2016 WL 2899506, at *7 (N.D. Cal. May 13, 2016) ("THX's reliance on the 'early stage' of litigation is misplaced.  THX, as the plaintiff, was responsible for pre-filing investigation under Rule 11, and must have some basis for its claim for damages."); *J&M Indus., Inc. v. Raven Indus., Inc.*, No. 16-2723, 2018 WL 1427952, at *3 (D. Kan. Mar. 22, 2018) ("Plaintiff is suing Defendant for damages.  As such, Plaintiff must have some general understanding of the nature and extent of its damages.").  For example, NMI alleges a loss of a "significant expenditure of time, labor and talent" used for its alleged trade secrets, as well as a "loss of value of [those] trade secrets, loss of customers, loss of investors, and loss of key hires or potential hires."  D.I. 109 ¶¶ 42, 62.  By now, NMI should know, for instance, which customers it lost, which investors it lost, and which key hires or potential hires it lost, and should also be able to, at minimum, generally articulate how those losses impacted NMI financially.  Yet NMI's initial disclosures and responses to Defendants' interrogatories provide no details on those losses or any computations for, or explanations regarding how NMI aims to quantify, these alleged losses.

NMI must remedy these discovery violations.  *See, e.g.*, *Cruz v. Boston Litig. Sols. LLC*, No. 13-cv-11127, 2015 WL 12964732, at *1 (D. Mass. Jan. 9, 2015) (ordering supplemental Rule 26(a)(1)(A)(iii) disclosures, including underlying documents, be served "within seven days"); *LT*

---

[21] *See also Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159–60 (S.D.N.Y. 2012) ("[E]ven if Plaintiffs could not provide an exact or complete calculation of their damages without an expert analysis," Plaintiffs still should have "notif[ied] Defendants of their theory"); *Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Finance Corp.*, No. 04 Civ. 3854, 2005 WL 977850, at *2 (S.D.N.Y. Apr. 28, 2005) ("[E]ven if plaintiff could not calculate its currency conversion damages at the time of its initial disclosure . . . there is no reason that it did not disclose its currency conversion damage theory").

*Game Int'l*, 2013 WL 321659 at *6 (ordering supplemental Rule 26(a)(1)(A)(iii) disclosures: "Plaintiff . . . should be able to provide . . . a preliminary computation of its damages. If Plaintiff does not presently have information that its contractual or business relationship have, in fact, been damaged by Defendant's alleged conduct, then it should so state."). If NMI does not comply with its discovery obligations, the objectives of Rule 26(a)(1) will be frustrated, Defendants will be left to guess at their potential exposure, and Defendants and the Court will be unable to make determinations about the relevance and proportionality of NMI's discovery requests. *See City & Cty. of S.F. v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003) (ordering plaintiff to "provide its assessment of damages in light of the information currently available to it in sufficient detail so as to enable each of the multiple Defendants in this case to understand the contours of its potential exposure and make informed decisions as to settlement and discovery").

"Even if [Defendants] were willing to wait to find out what this case is worth—which [they are] not—the court still needs to know as it resolves the parties' various discovery-related disputes." *Corning Optical Commc'ns Wireless Ltd. v. Solid, Inc.*, 306 F.R.D. 276, 279 (N.D. Cal. 2015) (granting motion to compel supplemental Rule 26(a)(1)(A)(iii) disclosures and interrogatory response concerning damages). Put simply, NMI must not "bludgeon first and value second." *Id.* at 277.

## V.     CONCLUSION

Facebook and Dr. Zlateski respectfully request that the Court grant their motion to compel and for a protective order.[22]

---

[22] Because Facebook and Dr. Zlateski were required to file this motion due to NMI's unjustified refusal to comply with its obligations under the Federal Rules of Civil Procedure, Mass. G. L. c. 93 § 42D(b), and the Court's November 17 order (D.I. 105), NMI should be ordered to pay Defendants' reasonable fees and costs incurred in filing this motion, pursuant to Rule 37(a)(5)(A).

Dated:  January 8, 2021

Respectfully submitted,

/s/ Christopher W. Henry
William J. Trach (BBO No. 661401)
Christopher W. Henry (BBO No. 676033)
Nathanial McPherson (BBO No. 697666)
LATHAM & WATKINS LLP
John Hancock Tower
200 Clarendon Street, 27th Floor
Boston, MA 02116
(617) 948-6000 / (617) 948-6001 Fax
william.trach@lw.com
christopher.henry@lw.com
nathanial.mcpherson@lw.com

Douglas E. Lumish (*pro hac vice*)
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600 / (650) 463-2600 Fax
douglas.lumish@lw.com

Jennifer L. Barry (*pro hac vice*)
Melanie J. Grindle (*pro hac vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400 / (858) 523-5450 Fax
jennifer.barry@lw.com
melanie.grindle@lw.com

*Attorneys for Defendant*
*Facebook, Inc.*

/s/ Stephen D. Riden
Russell Beck (BBO No. 561031)
Stephen D. Riden (BBO No. 644451)
Hanna Tso Joseph (BBO No. 688132)
BECK REED RIDEN LLP
155 Federal Street, Suite 1302
Boston, MA 02110
(617)500-8670 / (617) 500-8665 Fax
rbeck@beckreed.com
sriden@beckreed.com
hjoseph@beckreed.com

*Attorneys for Defendant*
*Aleksandar Zlateski*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true, unredacted version of the foregoing document was served by electronic mail on all counsel of record this 8th day of January, 2021.

/s/ Christopher W. Henry

Christopher W. Henry
