**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEURALMAGIC, INC. )<br><br>*Plaintiff*, )<br><br>v. )<br><br>FACEBOOK, INC. AND ALEKSANDAR ZLATESKI )<br><br>*Defendants.* ) | **Civil Action No. 20-CV-10444** |

## MEMORANDUM IN SUPPORT OF NEURAL MAGIC'S
## <u>MOTION TO COMPEL</u>

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ..........................................................................................................................2

    A.    Facebook Refuses To Identify Responsive Code. .......................................................2

    B.    Facebook Refuses To Produce Responsive Documents. ............................................7

ARGUMENT ..............................................................................................................................8

    A.    The Source Code At Issue Is Relevant. ....................................................................9

    B.    Defendants Cannot Use Rule 33(d) To Avoid Identifying The Code At
        Issue. .....................................................................................................................10

    C.    Defendants Cannot Avoid Identifying The Requested Code By Claiming
        That Facebook Is Not Using "The Accused FBGEMM Code." ............................13

    D.    This Court Should Compel Defendants To Produce Responsive Documents
        Cited In Facebook's Own Productions. ...................................................................15

CONCLUSION ..........................................................................................................................15

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*A&V Fishing, Inc., v. Home Ins. Co.*,
  145 F.R.D. 285 (D. Mass. 1993) ................................................................................. 8

*Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*,
  No. 13CV1523-BEN BLM, 2014 WL 4961437 (S.D. Cal. Oct. 3, 2014) ............................... 11

*Chen-Oster v. Goldman, Sachs & Co.*,
  285 F.R.D. 294 (S.D.N.Y. 2012) ................................................................................. 12

*Enargy Power (Shenzhen) Co. v. Xiaolong Wang*,
  No. CIV.A. 13-11348-DJC, 2014 WL 4687784 (D. Mass. Sept. 17, 2014) .............................. 8

*Facedouble, Inc. v. Face.com, Inc.*,
  No. 12CV1584-DMS MDD, 2014 WL 585868 (S.D. Cal. Feb. 13, 2014)........................ 11, 12

*FM Generator, Inc. v. MTU Onsite Energy Corp.*,
  No. CV 14-14354-DJC, 2016 WL 8902603 (D. Mass. Aug. 25, 2016)................................ 9, 10

*Laserdynamics, Inc. v. Asus Computer Int'l*,
  No. 2:06-CV-348, 2009 WL 153161 (E.D. Tex. Jan. 21, 2009) ......................................... 11, 12

*MVS Studio Inc. v. Bingo Bean, LLC*,
  No. CV 10-07675 JHN SSX, 2011 WL 10538669 (C.D. Cal. June 24, 2011) ........................ 14

*Saint-Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.*,
  No. 05-40226-FDS, 2006 WL 8458669 (D. Mass. Oct. 17, 2006) ........................................... 8

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
  No. 3:14-CV-01142-HZ, 2017 WL 714354 (D. Or. Feb. 21, 2017) ........................................ 13

### <u>Rules and Regulations</u>

Fed. R. Civ. P. 26(b)(1) ................................................................................................. 8, 9

Fed. R. Civ. P. 33(d)............................................................................................. 5, 9, 10

Fed. R. Civ. P. 37(a)(5)(A)................................................................................................. 15

Local Rule 37.1 ................................................................................................................... 8

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

### NOTES ON CITATIONS

1. Ex. A is a true and correct copy of Neural Magic's Interrogatory No. 7, along with Defendants' responses and objections and supplemental responses and objection to that interrogatory, dated May 7, 2021.

2. Ex. B is a true and correct copy of Neural Magic Supplemental Trade Secret Identification, dated March 10, 2021.

3. Ex. C is a true and correct copy of a document produced by Defendants bearing Bates Nos. FB00000086–FB0000090.

4. Ex. D is a true and correct copy of a document produced by Defendants bearing Bates Nos. FB00004339–FB00004340.

5. Ex. E is a true and correct copy of a document produced by Defendants bearing Bates Nos. FB00003315–FB00003316.

6. Ex. F is a true and correct copy of a document produced by Defendants bearing Bates Nos. FB00008281–FB00008292.

7. Ex. G is a true and correct copy of a document produced by Defendants bearing Bates Nos. FB00003308–FB00003310.

8. Ex. H is a true and correct copy of a document produced by Defendants bearing Bates Nos. FB00004294–FB00004295.

9. Ex. I is a true and correct copy of a document produced by Defendants bearing Bates Nos. FB00011416–FB00011451.

10. Ex. J is a true and correct copy of the June 11, 2021 correspondence from Facebook's outside counsel Melanie Grindle to Neural Magic's outside counsel.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

11. Ex. K is a true and correct copy of Neural Magic's Request for Production No. 19, along with Defendants' responses and objections to that request, dated January 4, 2021.

12. EX. L is a true and correct copy of a document produced by Defendants bearing Bates Nos. FB00004313–FB00004313.

13. Ex. M is a true and correct copy of the March 30, 2020 letter from Facebook's outside counsel Doug Lumish to Neural Magic's outside counsel Patrick Curran.

14. Ex. N is a true and correct copy of the June 15, 2021 correspondence from Facebook's outside counsel Melanie Grindle to Neural Magic's outside counsel.

15. Ex. O is a true and correct copy of the July 22, 2021 correspondence from Facebook's outside counsel Melanie Grindle to Neural Magic's outside counsel.

16. Ex. P is a true and correct copy of the May 26, 2021 correspondence from Facebook's outside counsel Melanie Grindle to Neural Magic's outside counsel.

17. All emphases herein are added unless otherwise noted.

18. The lettered exhibits above refer to exhibits to the Declaration of Stacylyn Doore, filed in connection with this motion.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

## PRELIMINARY STATEMENT

Neural Magic moves to compel Defendants to respond to interrogatories seeking an identification of relevant source code for four specific projects that, ███████████████████ use "Dr. Zlateski's kernels." *See, e.g.*, Ex. E ███████████████████ ████████████████████████████████████████████████ ████████ Ex. D ██████████████████████████████████████ ██████████████████████████████████████████████. Facebook refuses to identify the code Facebook engineers referenced in those Facebook documents, instead saying Neural Magic is equally capable of finding this material somewhere in the ███████████████ **code files** Facebook produced. Rule 33(d) does not permit this effort to obfuscate. Facebook is uniquely capable of identifying its own code, discussed by its own engineers, in its own document production. Neural Magic respectfully requests an order requiring Facebook to make that identification.

Defendants also refuse to produce documents quantifying performance improvements, modeling financial benefits, and laying out productization plans related to Neural Magic's trade secrets. ██████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████ These documents are responsive to Request for Production No. 19, which requests Facebook's business plans, strategic plans, financial plans, and

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL

projections relating to sparsity and/or sparse matrix multiplication. Neural Magic respectfully requests that the Court compel Defendants to produce these underlying documents.

## BACKGROUND

### A.      Facebook Refuses To Identify Responsive Code.

Neural Magic served Defendants with its first set of interrogatories in December 2020. Interrogatory No. 7 asks Defendants to "[i]dentify all Facebook code that unrolls loops for sparse matrix multiplication."[1] As described by Neural Magic's expert during the preliminary injunction proceedings, "loop unrolling" is a computer programming technique used to streamline repetitive computer operations. *See* Dkt. 37 ¶¶ 71–73. Loop unrolling itself was not new – ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ Facebook knows what "loop unrolling" is, and knows where it appears in Facebook code – indeed, Facebook selectively identified loop unrolling in its own code when Facebook believed that identification would be helpful to its defenses. *See, e.g.*, Ex. O (███████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████); Ex. A at 33 (citing documents in support of its assertion that ████████████████████████████████████████████████

████████████████ But with respect to its current production-level code, Defendants refused to specifically identify any relevant code in response to Interrogatory No. 7, arguing that the request

---

[1]     This interrogatory, as well as Defendants' responses and objections to the interrogatory, is attached as Exhibit A to the Declaration of Stacylyn Doore.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

was too broad.  Although Neural Magic disagreed, it offered to narrow this request to four specific

projects ████████████████████████████████████████████████████████

████████████████████████████████████████ These four projects include:

**Facebook Ads**. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

**Facebook's ARM-Supported Products, including Portal Devices**. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[2] A sparse kernel is a programming algorithm underlying sparse matrix multiplication operations.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL

███████████████████████████████████████████████████████

████████████

**Facebook's RoBERTa Project.** ███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████

**Facebook's Language and Translation Technologies (LATTE) Projects**. ██████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████

Facebook code or kernels that unroll loops for sparse matrix multiplication are directly relevant and Facebook has an obligation to identify them.   Months ago, this Court rejected

---

[3]   Facebook's most recent June production shows that, despite its many protestations to the contrary, ██████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

Defendants' prior attempt to artificially cabin discovery, and found that Neural Magic had defined its trade secrets with sufficient particularity to allow discovery to proceed.  *See* Dkt. 142 (Sealed Ruling on Motion to Compel, Dkt. 112).  The supplemental statement served on March 10, 2021 provided Defendants with even more detail about Neural Magic's trade secrets.  *See* Ex. B. Defendants understand the trade secrets at issue, and should not be permitted to ignore the Court's prior order in another attempt to block discovery.  Defendants' continued attempt to feign ignorance about the "loop unrolling" code sought by Neural Magic's interrogatory (*see* Ex. A at 34) cannot be squared with the fact that, as mentioned above, Defendants appear to have no problem identifying code that purportedly shows Facebook's prior use of the loop unrolling techniques at issue.  *See* Ex. O (█████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ██████████████); Ex. A at 33.

Despite these facts, Facebook has refused to  identify where within these projects work based on Zlateski's kernels, including loop unrolling techniques, can be found.  Instead, Facebook has made available for inspection "full code repositories ███████████████████████ █████████████████████ – and invoked Federal Rule of Civil Procedure 33(d), asserting that the burden of identifying responsive code is substantially the same for either party.  *See* Ex. A at 34–35 (Defs.' Second Supp. Resp. to Interrog. No. 7).  Since this codebase was made available, Neural Magic has inspected Facebook's code over 7 days and has been unable to locate the requested code.  When Neural Magic has tried to perform searches on Facebook's codebase, these searches have taken hours to complete.  Some searches failed to complete before the end of Neural Magic's inspection – and Facebook refused to allow those searches to continue overnight so that they would be ready for an inspection scheduled for the next day.  After encountering these

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

difficulties and faced with a vast amount of unresponsive Facebook source code to search through, Neural Magic asked Facebook to – at the very least – identify where production-level code related to Portal products could be found. Facebook pointed Neural Magic to a repository labeled ████████████████████████████████████ without any further explanation of where within that repository the relevant code could be found. *See* Exs. P & N.

Defendants have also avoided identifying the requested code by asserting that Dr. Zlateski's code has not been used in some of the identified projects. *See* Ex. J (Grindle June 11 Email) ("The *accused code* 'has not been used in production-level Facebook projects.' . . . 'The 'Portal,' 'ARM,' and 'RoBERTa' work that NMI has identified did not *use the accused code* and/or was abandoned before any code was landed in Facebook's production-level code.'") (quoting Defs.' Resp. to Interrog. No. 13)[4]; Ex. O (Grindle July 22 Email) ("[T]he Portal, ARM, and RoBERTa work that NMI has identified did not use the accused code or Dr. Zlateski's work and/or was abandoned before any code was landed in production-level code."). ***But Neural Magic's trade secrets are not limited to the particular code created by Dr. Zlateski***. *See* Ex. B. And Defendants already tried to limit Neural Magic's trade secrets to specific implementations of code. *See* Dkt. 115. This Court rightly rejected that attempt. *See* Dkt. 142 (Sealed Ruling on Motion to Compel, Dkt. 112). Additionally, ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████ Regardless, Neural Magic's trade secrets are not limited to any specific code, and any use

---

[4] This response closely tracked earlier Facebook commitments not to use the "accused *code*" or any other derivative works – carefully avoiding any commitment not to use the *algorithms* or kernels underlying the code at issue. *See* Ex. M (Lumish Mar. 30 Ltr.). ███████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

of trade secrets Dr. Zlateski misappropriated is relevant without regard to whether the specific FBGEMM code itself is employed.

###### B. Facebook Refuses To Produce Responsive Documents.

Facebook's productions to date have included communications that reference certain other **non-produced** documents that are clearly responsive to Neural Magic's discovery requests. Neural Magic's Request for Production No. 19 seeks documents and communications "relating to Facebook's business plans, strategic plans, operating plans, marketing plans, financial plans, sales plans, investment plans, market studies, and target market, including projections for revenue generation and profitability, relating to sparsity and/or sparse matrix multiplication." *See* Ex. K.

The documents referenced in these communications are responsive to Neural Magic's Request for Production No. 19. The documents are also clearly relevant to show the value that Facebook placed on Neural Magic's trade secrets. Defendants have not contested their relevance, but have refused to produce these documents unless they are captured in ESI discovery through the use of search terms. *See* Ex. N at 1 (Grindle June 15 Email). Given that these documents are readily identifiable, responsive, and relevant, Defendants should be compelled to produce them now.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL

The parties have met and conferred multiple times on these issues, and exchanged multiple rounds of emails.  Instead of identifying the requested code, Defendants have repeatedly delayed and dodged the straightforward questions Neural Magic has asked.  *See* Ex. N at 3 (Gorman June 14 Email);  Ex. N at 1 (Grindle June 15 Email);  Ex. O (Grindle July 22 Email).  The parties are thus at an impasse.[5]

## ARGUMENT

Defendants should be compelled to identify: (1) code within Facebook's codebase that corresponds to the specific projects referenced above, as well as any other projects deploying Zlateski's kernels, and (2) within that code, any instances where Facebook employs kernels based on Zlateski's work or uses techniques for loop unrolling.  The Court should also compel Defendants to produce responsive documents referenced in Facebook's own productions.

Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  *Enargy Power (Shenzhen) Co. v. Xiaolong Wang*, No. CIV.A. 13-11348-DJC,

---

[5]  Defendants may argue that the parties are not at an impasse because they have offered to *consider* undertaking steps to identify relevant code if Neural Magic provides detailed proposed steps for such identification beyond Neural Magic's suggestion that Defendants ask the engineers who wrote the code for these projects.  Such delay tactics should not be rewarded.  Neural Magic has been asking Defendants to identify this relevant code for months, through multiple emails and conferences.  The parties are months into discovery and poised to start taking depositions.  No further delay should be permitted.  *See A&V Fishing, Inc., v. Home Ins. Co.*, 145 F.R.D. 285, 286–87 (D. Mass. 1993) ("The mechanisms of the local rules are designed to resolve or narrow areas of dispute; they are not to be employed as a stalling tactic by counsel from whom discovery is sought.");  *see also Saint-Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.*, No. 05-40226-FDS, 2006 WL 8458669, at *4 (D. Mass. Oct. 17, 2006) (rejecting argument that a party failed to meet Local Rule 37.1's meet and confer requirement where resisting parties' discovery responses had been inadequate and further conferring would have been futile).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

2014 WL 4687784, at *2 (D. Mass. Sept. 17, 2014) (internal quotations omitted).  In response to a discovery request within the scope of Rule 26, a party may cite business records pursuant to Federal Rule  of Civil Procedure 33(d); however, the producing party must specify *where* the answer can be found within those records and show that the burden of deriving the answer from the specified documents will be substantially the same for both parties.  *FM Generator, Inc. v. MTU Onsite Energy Corp.*, No. CV 14-14354-DJC, 2016 WL 8902603, at *5 (D. Mass. Aug. 25, 2016).  Here, Defendants should not be permitted to rely on their improper invocation of Rule 33(d) to shirk their discovery obligations.

      **A.**      **The Source Code At Issue Is Relevant.**

Neural Magic's trade secrets involve novel ways of arranging and processing computer instructions to achieve breakthrough improvements in processing speed and efficiency on commodity central processing units.   Among these trade secrets is a technique ███████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████   The foundational trade secret algorithm – or "kernel" – █████████████████ can be expressed differently in source code depending on the application.  Two code files may look completely different, but nonetheless employ the same underlying kernels.  As such, tracking where these particular *kernels* have been used within Facebook is highly relevant to show how Facebook has deployed, repurposed, or otherwise used Neural Magic's trade secret algorithms.

Thus, Facebook  code  that  █████████████████████████████████ █████████████████████ is relevant to Neural Magic's claims and is responsive to Neural Magic's Interrogatory No. 7.  █████████████████████████████████

█████████████████████████████████████████████████████████

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████ Defendants must identify the code referenced in these documents, and identify where within these projects Zlateski's kernels can be found.[6]

B.    **Defendants Cannot Use Rule 33(d) To Avoid Identifying The Code At Issue.**

Defendants improperly invoked Rule 33(d) in responding to Neural Magic's Interrogatory No. 7, citing to Facebook's ███████████ codebase.  That is improper, for at least three reasons:

*First*, Facebook cannot generally invoke Rule 33(d) without providing additional specificity about where relevant code likely resides.  *See FM Generator,* 2016 WL 8902603, at *6 ("[R]eferring an interrogating party to an entire database of electronically stored information does not meet the specificity requirement of Rule 33(d).").  Defendants' responses fail to meet this basic Rule 33(d) requirement because the limited additional specificity that Defendants have provided does not meaningfully narrow or identify the possible places in Facebook's codebase that the code at issue is likely to be found.  For example, in response to Neural Magic's request for identification of where relevant production-level Portal code might be, Defendants pointed Neural Magic to a repository labeled ██████████  *See* Ex. P (Grindle May 26 Email).  This repository contains ████████

---

[6]    Facebook has (inaccurately) claimed in its correspondence with Neural Magic that Neural Magic's targeted requests are "in effect" equivalent to earlier requests for ████████████ ██████████████████  *See* Ex. J at 2.  This is patently false.  Neural Magic narrowed its request to specific projects within Facebook.  *See id.* at 3–4; Ex. N at 2–3.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

███████████ As another example, as for code relating to "Ads with Caffe 2," Defendants recently identified the folder located at ██████████████████████ *See* Ex. O (Grindle July 22 Email). But even with respect to this folder, which contains ██████████ Facebook has again failed to identify the relevant loop unrolling code, by name and filepath, that it contends is responsive to Neural Magic's Interrogatory. Defendants' failure to provide any meaningful specificity about or locate where relevant code might be found makes their invocation of Rule 33(d) improper on its face.

*Second*, Neural Magic bears a much greater burden than Defendants do navigating *Facebook's own repositories* to find the code at issue. Courts routinely hold that the burden of sifting through a producing party's source code to identify relevant information is *not* the same for either party. *See, e.g.*, *Laserdynamics, Inc. v. Asus Computer Int'l*, No. 2:06-CV-348, 2009 WL 153161, at *2 (E.D. Tex. Jan. 21, 2009) (ordering producing party to identify relevant code and noting it was "implausible for the defendants to contend that the plaintiff stands on equal footing when it comes to determining how the defendants' own products operate"); *Audatex N. Am. Inc. v. Mitchell Int'l, Inc.*, No. 13CV1523-BEN BLM, 2014 WL 4961437, at *7 (S.D. Cal. Oct. 3, 2014) (ordering defendant who had provided narrative description of software functionalities to supplement interrogatory response with source code citations); *cf. Facedouble, Inc. v. Face.com, Inc.*, No. 12CV1584-DMS MDD, 2014 WL 585868, at *2 (S.D. Cal. Feb. 13, 2014) ("Plaintiff bears a substantially greater burden in determining how Defendant's software works by examining Defendant's source code than does Defendant. After all, engineers employed by Defendant wrote the code with an object in mind.").[7] There are simple steps Facebook could take to identify the

---

[7]  Notably, Defendants also served an interrogatory asking Neural Magic to identify relevant code within its database, demanding exacting specificity – down to the file name and line number. *See*

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL

code at issue which Neural Magic cannot – e.g., asking Facebook's own engineers, especially those who worked with Dr. Zlateski or worked on the projects and code *referenced in Facebook's own documents*, to identify the requested code.   Defendants are also much more familiar with the structure of Facebook's codebase, and can navigate that codebase in ways that Neural Magic cannot – e.g., by running particular searches without being bounded by the time requirements of a day-long inspection.   Defendants are in a substantially better position to identify responsive code and cannot rely on Rule 33(d) to shirk their discovery obligations.   *See Laserdynamics*, 2009 WL 153161, at *2; *Facedouble*, 2014 WL 585868, at *2.

*Finally*, Defendants cannot avoid their discovery obligations by refusing to respond to targeted requests for relevant information unless Neural Magic provides a detailed, step-by-step guide for investigating the issue.   Neural Magic has narrowed its request to specific projects and identified the relevant documents that discuss those projects, as well as some of the engineers involved who specifically discuss their use of Zlateski's work.   Facebook should be able to identify this code.   Additionally, the parties have extensively briefed the trade secrets at issue in this case. *See* Dkts. 32, 37, 43, 45, 115, 119.   And, the Court already found – months ago – that Neural Magic had identified its trade secrets with more than enough detail to allow discovery to proceed.   Dkt. 142 (Sealed Ruling on Motion to Compel, Dkt. 112).   Defendants cannot feign confusion merely to impose obligations on Neural Magic beyond what the relevant discovery rules require.   *Cf. Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 308 (S.D.N.Y. 2012) (after a requesting party propounds a "legitimate discovery demand," the producing party's "obligation is to make

---

Dkt. 115-12 (Defs.' Interrog. No. 8).   Neural Magic complied.   Defendants should be compelled to do the same.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

reasonable efforts to locate and produce information responsive to [that party's] legitimate discovery demands").

      **C.**      **Defendants Cannot Avoid Identifying The Requested Code By Claiming That Facebook Is Not Using "The Accused FBGEMM Code."**

Defendants may claim that there is no additional code to identify because the code Dr. Zlateski authored was not widely shared within Facebook. *See* Ex. J (Grindle June 11 Email). Neural Magic's trade secrets are not limited to the specific FBGEMM code. Code that uses trade secrets Dr. Zlateski misappropriated – regardless of whether it employs FBGEMM, or is copied line-for-line from code Dr. Zlateski wrote – is relevant and responsive to Interrogatory No. 7. If Facebook employees rewrote the original code that incorporates Neural Magic's trade secrets, or used ideas Dr. Zlateski misappropriated from Neural Magic when those Facebook employees wrote new code, that is highly relevant – regardless of whether that code was copied line-for-line from "the accused FBGEMM code." The fact that these projects may not have used the specific code Zlateski wrote for FBGEMM is irrelevant. *Cf. Vesta Corp. v. Amdocs Mgmt. Ltd.*, No. 3:14-CV-01142-HZ, 2017 WL 714354, at *2 (D. Or. Feb. 21, 2017) ("Defendants may have stolen Plaintiff's trade secrets even if Defendants' source code is not identical to Plaintiff's source code.").[8] Additionally, Neural Magic should not have to take Defendants' word on this point: the code referenced in these documents related to these specific Facebook projects clearly exists, and is

---

[8] After publishing the accused code on GitHub in November, Facebook took the time to "refactor" Zlateski's code "to conform coding style of other fbgemm code," altering various variable names. *See* Dkt. 37 ¶ 151. ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████ Code that was refactored or newly written that nonetheless implements Neural Magic's trade secret techniques is relevant. *Cf. Vesta Corp.* 2017 WL 714354, at *2. Facebook must identify this code.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

responsive to multiple discovery requests.  Indeed, the code is highly relevant <u>because</u> Facebook contends the code was not related to Dr. Zlateski's work – a contention Neural Magic is entitled to test.  That should end the inquiry.  Defendants should be compelled to identify the code at issue.

Moreover, the record paints a picture squarely at odds with Defendants' representations about usage.  ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████  Up until days before Neural Magic notified Defendants of their

misappropriation, ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████  Indeed, even if Facebook contends it is not employing the precise FBGEMM code Dr. Zlateski wrote, Neural Magic is entitled to test that claim by reviewing the code Facebook employees were referencing in these documents.   *Cf. MVS Studio Inc. v. Bingo Bean, LLC*, No. CV 10-07675 JHN SSX, 2011 WL 10538669, at *2 (C.D. Cal. June 24, 2011) ("Although Defendants argue that the [product] does not so infringe, the inquiry cannot end there. Instead, Plaintiffs are entitled to access information that is relevant to proving or disproving their allegations. . . . This generally includes the disclosure of raw data (source code, schematics, formulas, etc.) sufficient to show the operation of the accused aspects of the products in order to allow the patentee to make it's [sic] own determinations as to infringement.") (alteration in original) (internal citations

14

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

and quotations omitted).  Facebook's refusal to identify the code at issue has made such testing near impossible.

      **D.**      **This Court Should Compel Defendants To Produce Responsive Documents Cited In Facebook's Own Productions.**

Defendants have also refused to produce responsive documents discussed and cited in their own productions.  Specifically, documents that Facebook has already produced reference and discuss other underlying documents that are responsive to Neural Magic's Request for Production No. 19 – yet Defendants have refused to produce these underlying documents.  The underlying documents include business plans relating to sparse matrix multiplication and projections for profitability and performance improvements achieved by Neural Magic's trade secrets.  Such documents are responsive to Neural Magic's Request for Production No. 19.  Neural Magic has pointed Defendants to the specific documents that should be produced and explained why such documents are responsive. ███████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

Defendants have refused to produce these documents unless they are captured in ESI discovery through the use of search terms.  *See* Ex. N at 1.  This Court should order Defendants to produce these documents.

## CONCLUSION

Neural Magic respectfully requests that the Court compel Defendants to: (1) identify code for the specific Facebook projects identified herein; (2) within that code, identify any instances

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

where Facebook uses, used, or planned to use Dr. Zlateski's kernels or techniques for loop unrolling; and (3) produce the aforementioned documents referenced in Facebook's productions. Neural Magic further requests that Defendants be ordered to pay Neural Magic's reasonable expenses incurred in making this motion, including attorney's fees under Rule 37(a)(5)(A), and that Neural Magic be awarded such other and further relief as the Court deems appropriate.

Respectfully submitted,

Dated: August 6, 2021

/s/ Patrick D. Curran
Patrick D. Curran (BBO# 568701)
Steven Cherny (BBO# 706132) (*pro hac vice*)
Stacylyn M. Doore (BBO# 678449)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: (617) 712-7100
stevencherny@quinnemanuel.com
patrickcurran@quinnemanuel.com
stacylyndoore@quinnemanuel.com

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY / FILED UNDER SEAL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above document was served upon attorneys of record by email on this the 6th day of August, 2021.

_/s/ Patrick D. Curran_____
Patrick D. Curran
