# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEURALMAGIC, INC. <br><br> *Plaintiff*, <br><br> v. <br><br> FACEBOOK, INC. AND ALEKSANDAR ZLATESKI <br><br> *Defendants*. | **Civil Action No. 20-CV-10444** |

# NEURAL MAGIC'S OPPOSITION TO
# DEFENDANTS' MOTION TO COMPEL DISCOVERY OF LITIGATION FUNDING

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1
I.   LEGAL STANDARDS ................................................................................................. 2
II.  ARGUMENT ................................................................................................................. 4
     A.   NMI's Litigation Funding Information is Not Relevant ......................................... 6
     B.   NMI's Litigation Funding Information is Shielded From Discovery by the
          Attorney Work Product Doctrine ........................................................................... 10
CONCLUSION ....................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*AVM Techs. v. Intel Corp.*,
 C.A. No. 15-33-RGA, 2017 WL 1787562 (D. Del. Apr. 29, 2017) .......................................... 7

*Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*,
 No. CV 7841-VCP, 2015 WL 778846 (Del. Ch. Feb. 24, 2015) ............................................. 3

*Charge Injection Techs., Inc. v. E.I. DuPont*,
 07C-12-134-JRJ, 2015 WL 1540520 (Del. Super. Ct. Mar. 31, 2015) ..................................... 3

*Cobra Int'l, Inc. v. BCNY Int'l, Inc.*,
 2013 U.S. Dist. LEXIS 190268 (S.D. Fla. Nov. 4, 2013) ......................................................... 6

*Colibri Heart Valve LLC v. Medtronic CoreValve LLC, et al.*,
 8:20-cv-00847-DOC-JDE, *ECF No.* 111 (C.D. Cal. Mar. 26, 2021) ....................................... 5

*Cont'l Cirs. LLC v. Intel Corp.*,
 435 F. Supp. 3d 1014 (D. Ariz. 2020) .................................................................................... 11

*Devon It, Inc. v. IBM Corp.*,
 No. 10-2899, 2012 WL 4748160 (E.D. Pa. Sept. 27, 2012) .................................................... 11

*Doe v. Soc'y of Missionaries of Sacred Heart*,
 No. 11-CV-02518, 2014 WL 1715376 (N.D. Ill. May 1, 2014) ........................................ 3, 11

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
 No. 6:11-CV-00201-JRG, 2017 WL 2773944 (E.D. Tex. May 26, 2017) ............................... 9

*Fulton v. Foley*,
 No. 17-CV-8696, 2019 WL 6609298 (N.D. Ill. Dec. 5, 2019) ..................................... 3, 7, 10

*Gbarabe v. Chevron Corp.*,
 No. 14-cv-00173, 2016 WL 4154849 (N.D. Cal. Aug. 5, 2016) .............................................. 6

*Hickman v. Taylor*,
 329 U.S. 495 (1947) ................................................................................................................ 12

*Impact Engine, Inc. v. Google LLC*,
 2020 U.S. Dist. LEXIS 145636 (S.D. Cal. Aug. 12, 2020) .................................................... 11

*Impact Engine, Inc. v. Google LLC*,
 2020 U.S. Dist. LEXIS 194517 (S.D. Cal. Oct. 20, 2020) ..................................................... 12

*In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*,
 405 F. Supp. 3d 612 (D.N.J. 2019) ............................................................................... 2, 5, 6, 7

*In re: Nat'l Prescription Opiate Litig.*,
 No. 1:17-MD-2804, 2018 WL 2127807 (N.D. Ohio May 7, 2018) ..................... 4, 6, 7, 10, 11

*IOENGINE LLC v. Interactive Media Corp.*,
 No. 1:14-cv-01571 (D. Del. Aug. 3, 2016) ............................................................................... 4

*IOENGINE v. Interactive Media Corp.*,
    C.A. No. 14-1571 (D. Del. Aug. 2, 2016) ............................................................................ 11

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    No. 12-CV-9350 VM KNF, 2015 U.S. Dist. LEXIS 135031 (S.D.N.Y. Sept. 10,
    2015) ........................................................................................................................................ 4

*Miller UK Ltd. v. Caterpillar, Inc.*,
    17 F. Supp. 3d 711 (N.D. Ill. 2014) ........................................................................... 2, 7, 8, 13

*MLC Intellectual Prop., LLC v. Micron Tech., Inc., No 14-CV-03657*,
    2019 U.S. Dist. LEXIS 2745 (N.D. Cal. Jan. 7, 2019) ...................................................... 4, 10

*Mondis Tech., Ltd. v. LG Electronics, Inc.*,
    No. 2:07-CV-565-TJW-CE, 2011 WL 1714304 (E.D. Tex. May 4, 2011) .............................. 3

*Morley v. Square, Inc.*,
    No. 4:14-CV-172, 2015 WL 7273318 (E.D. Mo. Nov. 18, 2015) ............................... 8, 12, 13

*NorCal Tea Party Patriots v. Internal Revenue Serv.*,
    No. 1:13CV341, 2018 WL 3957364 (S.D. Ohio Aug. 17, 2018) ............................................ 8

*Odyssey Wireless, Inc. v. Samsung Elecs Co., Ltd.*,
    2016 WL 7665898 (S.D. Cal. Sept. 20, 2016) ....................................................................... 13

*Pipkin v. Acumen*,
    No. 118-CV-00113, 2019 WL 6324633 (D. Utah Nov. 26, 2019) .......................................... 2

*Space Data Corp. v. Google, LLC*,
    No. 16-CV-02360, 2018 U.S. Dist. LEXIS 228050 (N.D. Cal. June 11, 2018) .................... 4, 7

*Speyside Medical, LLC v. Medtronic Corevalve, LLC et al*,
    No. 1:20-cv-00361, (D. Del, March 2, 2021) .......................................................................... 7

*SSL Servs., LLC v. Citrix Sys., Inc.*,
    No. 2:08-cv-158-JRG, 2012 WL 12906091 (E.D. Tex. May 24, 2012) .................................. 9

*United Access Techs., LLC v. AT&T Corp.*,
    No. CV 11-338-LPS, 2020 WL 3128269 (D. Del. June 12, 2020) ................................. 2, 4, 5

*United States v. Homeward Residential, Inc.*,
    No. 4:12-CV-461, 2016 WL 1031154 (E.D. Tex. Mar. 15, 2016) ......................................... 13

*V5 Techs. v. Switch, Ltd.*,
    334 F.R.D. 306 (D. Nev. 2019) ................................................................................................ 4

*Viken Detection Corp. v. Videray Techs. Inc.*,
    384 F. Supp. 3d 168 (D. Mass. 2019) ...................................................................................... 8

*WAG Acquisition, LLC v. Multi Media, LLC*,
    No. CV142340ESMAH, 2019 WL 3804135 (D.N.J. Aug. 13, 2019) ...................................... 8

*Walker Digital v. Google*,
    C.A. No. 11-cv-00309-SLR, 2013 WL 9600775 (D. Del. Feb. 12, 2013) ............................. 11

**INTRODUCTION**

The litigation funding-related documents that Defendants Facebook, Inc. ("Facebook") and Facebook employee Dr. Zlateski (collectively, "Defendants") have moved to compel are not relevant to the claims at issue and/or are protected by the work product doctrine. Simply put, the information Defendants seek—essentially documents and/or communications that reflect how much it will cost to prosecute the case and who is paying those cost—is an irrelevant sideshow. More specifically, Defendants' motion seeks (1) the identity of Neural Magic Inc.'s ("NMI's") litigation funder and the nature of the arrangement—both of which have been held irrelevant by the overwhelming majority of courts that have considered the question; (2) NMI's counsel's assessments of NMI's claims provided to its funder—quintessential work product; and (3) documents and correspondence exchanged by NMI and its funder reflecting valuations of NMI's alleged trade secrets—which NMI has already produced to Defendants, including over fifty pages of interrogatory responses outlining the value of NMI's trade secrets and the measures NMI takes to protect them[1]—and which NMI provided to its funder pursuant to a non-disclosure and common interest agreement,[2] thus subjecting them to work product protection rendering irrelevant any question regarding disclosure to its funder.

NMI's litigation funding arrangement and related communications concern the anticipated and actual costs of prosecuting the case and counsel's assessments of the issues in dispute, including Defendants' potential litigation exposure. A mountain of authority addressing similar

---

[1] *See, e.g.*, Pl.'s Resp. to Defs. First Set of Interrogs. at 104-112, 115-121, 122-124, 174-177, 199-205; Pl.'s Resp. to Defs. Third Set of Interrogs. at 4-6, 30-31; Pl.'s Resp. to Defs. Fourth Set of Interrogs. at 7-8, 10, 12-15, 17-35; *see also, e.g.*, NMI00022926, NMI00005874, NMI00016483, NMI00005716, NMI00005861, NMI00005798, NMI00005831.

[2] NMI can provide the non-disclosure and common interest agreement for *in camera* review if necessary.

1

requests has found that these documents and communications are plainly not germane to the claims and defenses of the parties and/or are shielded by the attorney work product doctrine. And, importantly, this motion will not result in the discovery of any additional relevant, non-privileged information beyond what NMI has already produced to Defendants. The Court should follow the great weight of authority finding that information related to litigation funding is irrelevant, and counsel's assessments of claims provided to litigation funders are protected work product. For the reasons set forth below, Defendants' motion should be denied in its entirety.

## I.     **LEGAL STANDARDS**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The majority of courts that have considered the question of discovery of litigation funding materials have held that such information is either irrelevant or not proportional to the needs of the case. *See In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.,* 405 F. Supp. 3d 612, 615 (D.N.J. 2019) (there is a "plethora of authority that holds that discovery directed to a plaintiff's litigation funding is irrelevant."). For example, in *Miller UK,* a trade secret case, "[t]he terms of Miller's actual funding agreement" were found to "have no apparent relevance to the claims or defenses in [the] case, as required by Rule 26 as a precondition to discovery." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 721 (N.D. Ill. 2014).

With few rare exceptions, every federal court decision facing litigation funding discovery disputes after the seminal *Miller UK* decision has relied upon and followed its thoughtful rationale. *See, e.g.*, *United Access Techs., LLC v. AT&T Corp.*, No. CV 11-338-LPS, 2020 WL 3128269, at *2 (D. Del. June 12, 2020) ("AT&T has failed to meet the threshold requirement to show that the litigation funding-related discovery it seeks here is relevant."); *Pipkin v. Acumen*, No. 118-CV-

00113, 2019 WL 6324633, at *2 (D. Utah Nov. 26, 2019) ("[I]nformation related to funding of the litigation is irrelevant to the claims and defenses of the case."); *Fulton v. Foley*, No. 17-CV-8696, 2019 WL 6609298, at *2 (N.D. Ill. Dec. 5, 2019) ("As a general matter, courts across the country that have addressed the issue have held that litigation funding information is generally irrelevant.").

The threshold question of relevance under Rule 26(b)(1) typically ends the inquiry in favor of the party from whom such litigation funding discovery is sought. Nevertheless, litigation funding materials that reflect counsel's thoughts and mental impressions on the underlying litigation are also protected from discovery by the work product doctrine. Multiple courts have recognized the applicability of this doctrine to counsel's assessments of litigation and have denied discovery on the grounds that the documents were prepared "because of" the litigation. *See, e.g., Miller*, 17 F. Supp. 3d at 735 (finding a number of documents were only prepared to aid Miller's counsel in the preparation of the case); *Doe v. Soc'y of Missionaries of Sacred Heart*, No. 11-CV-02518, 2014 WL 1715376, at *3 (N.D. Ill. May 1, 2014) (finding "these materials were prepared only 'because of' this litigation, and that they include counsel's mental impressions, conclusions, opinions, or legal theories"); *Mondis Tech., Ltd. v. LG Electronics, Inc.*, No. 2:07-CV-565-TJW-CE, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) (concluding that documents shared with potential funders were protected by the work product protection); *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.,* No. CV 7841-VCP, 2015 WL 778846, at *9 (Del. Ch. Feb. 24, 2015) (applying work product protection to documents that were shared between a third-party funder and a party's counsel where the documents "were 'prepared in anticipation of litigation…by or for another party'" and "more likely than not include discussions of the merits of the…Litigation and potential strategies" (quoting Del. Ch. Ct. R. 26)); *Charge Injection Techs., Inc. v. E.I. DuPont de Nemours & Co.*, C.A. No. 07C-12-134-JRJ, 2015 WL 1540520, at *5 (Del. Super. Ct. Mar. 31,

3

2015) (finding payment terms at issue in the financing agreement were prepared in anticipation of litigation and reflect litigation strategies which are afforded nearly absolute protection from discovery under the work product doctrine).

## II.  ARGUMENT

Defendants present the Court with a handful of cherry-picked outlier cases that permitted discovery based either on zero analysis, an actual, particularized showing of relevance, or exceptional circumstances not found here, without disclosing the great weight of authority to the contrary holding that (1) funding-related materials are almost always irrelevant to the parties' claims and defenses;[3] and (2) even if they are relevant—which is exceedingly rare—they are

---

[3]  *See, e.g.*, *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No 14-CV-03657, 2019 U.S. Dist. LEXIS 2745, at *4-5 (N.D. Cal. Jan. 7, 2019) (denying defendant's motion to compel information regarding persons or entities which had a financial interest in the litigation, including an identification of any third-party funder, finding that the discovery was irrelevant to the claims and defenses in the action); *Space Data Corp. v. Google, LLC*, No. 16-CV-02360, 2018 U.S. Dist. LEXIS 228050, at *5 (N.D. Cal. June 11, 2018) (materials related to potential funding were not relevant to any party's claims or defenses nor proportional to the needs of the case); *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2018 WL 2127807, at *1 (N.D. Ohio May 7, 2018) (stating that "[a]bsent extraordinary circumstances, the Court will not allow discovery into [third-party contingent litigation] financing"); *VHT, Inc. v. Zillow Group, Inc.*, No. C15-1096JLR, 2016 U.S. Dist. LEXIS 172373, 2016 U.S. Dist. LEXIS 172373, at *4-5 (W.D. Wash. Sept. 8, 2016); *IOENGINE LLC v. Interactive Media Corp.*, No. 1:14-cv-01571 (D. Del. Aug. 3, 2016) ("Although [defendant] poses several imaginable hypotheticals in which [plaintiff's] litigation funding scenario becomes relevant, the dearth of evidence on the record supporting [defendant's] position renders that information negligibly relevant, minimally important in resolving the issues, and unduly burdensome."); *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-CV-9350 VM KNF, 2015 U.S. Dist. LEXIS 135031, at *15-18, (S.D.N.Y. Sept. 10, 2015), *aff'd*, 141 F. Supp. 3d 246 (S.D.N.Y. 2015) (denying defendant's motion to compel, finding that the stated basis for the need for plaintiff's litigation funding documents—which largely involved fitness of counsel to represent class—were merely hypothetical and not relevant to any party's claim or defense); *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 312 (D. Nev. 2019) (finding that defendant's proffered bases for discovery—including that one of its competitors may be funding the litigation, that non-party witnesses have some undisclosed financial interest in the litigation, and that the person or entity providing the funding would have discoverable information about the case—was not relevant to the claims or defenses and therefore failed to bring defendant's request "within the realm of permissible discovery"); *United Access Techs.*, 2020 WL 3128269, at *1 (finding defendant failed to meet its burden to show the relevance of communications to and from third parties regarding

4

almost universally subject to work product protection.  Defendants' authorities are not persuasive, and Defendants overstate both the holdings of the cases and their applicability here.

For example, Defendants cite *Acceleration Bay* for the propositions that litigation funding communications are relevant to valuation and damages and that work product protection does not apply.  Mot. to Compel Disc. of Litigation Funding Information, 6, 10, *Neural Magic, Inc. v. Facebook, Inc. et al.*, 1:20-cv-10444-DJC (hereinafter "Defs.' Mot. to Compel"); *Acceleration Bay*, 2018 U.S. Dist. LEXIS 21506, at *8 (D. Del. Feb. 9, 2018).  But Defendants ignore that the District of Delaware later cautioned that *Acceleration Bay's* findings as to relevance overreached, noting that *Acceleration Bay* did not hold—"as no case could"—that communications with funders are always relevant, and that *Acceleration Bay* "involved loans (as opposed to investments) and was a review of a special master ruling—factors which may (or may not) have been pertinent to the analysis and outcome there."  *United Access Techs.*, 2020 WL 3128269, at *1 n.3.  Defendants further fail to disclose that work product protection did not apply in that case specifically because the communications in question were sent prior to the execution of a non-disclosure or common interest agreement.  *Acceleration Bay*, 2018 U.S. Dist. LEXIS 21506, at *8 (D. Del. Feb. 9, 2018).

---

potential investment in litigation); *In re Valsartan N-Nitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 615 (D.N.J. 2019) ("litigation funding is irrelevant to the claims and defenses in the case and, therefore, plaintiffs' litigation funding is not discoverable."; *Benitez v. Lopez*, 17-CV-3827, 2019 U.S. Dist. LEXIS 64532, at *2-4 (E.D.N.Y. Mar. 14, 2019) (denying defendant's motion to compel plaintiff to produce documents and communications with funder, finding that "the financial backing of a litigation funder is as irrelevant to credibility as the Plaintiff's personal financial wealth, credit history, or indebtedness"); *Colibri Heart Valve LLC v. Medtronic CoreValve LLC, et al.*, 8:20-cv-00847-DOC-JDE, ECF No. 111 (C.D. Cal. Mar. 26, 2021) (denying defendant's motion to compel production of litigation funding documents, finding defendant failed to meet its burden to show that the requested documents were relevant to issues of standing to bring suit); *Speyside Medical, LLC v. Medtronic CoreValve, LLC et al.*, 1:20-cv-00361-LPS, ECF No. 88 (D. Del. Mar. 2, 2021) (same).

Not only are the cases on which Defendants rely outliers, but the vast majority are patent cases. As the *Valsartan* court notes, "patent infringement cases present a special litigation context," such as ownership of the patents and standing to bring the lawsuit—none of which is relevant here. *See In re Valsartan NDMA Contamination Prod. Liab. Litig.*, 405 F. Supp. 3d at 615; *see also Cobra Int'l, Inc. v. BCNY Int'l, Inc.*, 2013 U.S. Dist. LEXIS 190268, at *8-9 (S.D. Fla. Nov. 4, 2013) (finding, without any analysis, that plaintiff's funding agreement was relevant for the defendant to determine whether the plaintiff transferred ownership of the patent at issue in an infringement suit).

Defendants' reliance on *Gbarabe* is similarly inapposite. Defendants rely on *Gbarabe* for the proposition that "the litigation funding agreement is relevant to the [class certification] adequacy determination and should be produced to defendant." Defs.' Mot. to Compel at 3. But this is not a class action, and the adequacy of a class representative is not at issue for class certification purposes or any other purpose. *Gbarabe v. Chevron Corp.,* No. 14-cv-00173, 2016 WL 4154849 (N.D. Cal. Aug. 5, 2016) (defendants seeking disclosure of funding agreement to defeat class certification on "adequacy of counsel" grounds).

Defendants' cited authority—outlier cases with inapplicable facts—cannot overcome the overwhelming caselaw holding that litigation funding materials are not relevant and are protected attorney work product.

A.  **NMI's Litigation Funding Information is Not Relevant**

Defendants seek information regarding the identity of NMI's litigation funder, the terms of the financing arrangement, and communications between NMI's counsel and litigation funder, claiming that such information is relevant to damages and/or disclosure, to refute NMI's "David and Goliath" theme, and to protect against juror bias. Defs.' Mot. to Compel at 2, 7, 8 n.4. But

6

Defendants ignore that the overwhelming majority of courts that have addressed the issue have held that litigation funding information is irrelevant, particularly with respect to damages; that the parties will not be permitted to rely on such information at trial; and that the Court can handle during voir dire any issues with respect to potential juror conflicts. Moreover, even if such information were relevant (it is not), the burden of collecting and producing such materials far outweighs any tangential relevance.[4]

    i.    <u>*NMI's Litigation Funding Is Not Relevant to Damages or Trade Secret Disclosure*</u>

*First*, with respect to damages, the majority of courts that have considered this issue have held that the details of litigation funding arrangements are irrelevant. *See Fulton*, 2019 WL 6609298, at *3 (explaining "litigation funding documents have no bearing on evidence that is needed to prove a claim or defense at a trial or establish the amount of damages that a jury should award"); *AVM Techs. v. Intel Corp.*, C.A. No. 15-33-RGA, 2017 WL 1787562, at *3 (D. Del. Apr. 29, 2017) (excluding testimony regarding the litigation funding agreements as they "ha[d] no relevance" to the question of damages); *see also Speyside Medical, LLC v. Medtronic Corevalve, LLC et al*, No. 1:20-cv-00361, (D. Del, March 2, 2021) (D.I. 88) (denying discovery of litigation funding materials, in part, on the theory of relevance to damages).

Defendants attempt to manufacture relevance by referencing NMI's pursuit of attorneys fees and costs. Defs.' Mot. to Compel at 7. However, NMI's litigation funding arrangement is

---

[4] Defendants' requested discovery is not "proportional to the needs of the case." Rule 26(b)(1); *see, e.g., In re Valsartan*, 405 F. Supp. 3d at 615 (holding that "even if plaintiffs' litigation funding is marginally relevant, which is not the case, defendants' requested discovery would be denied because it is not 'proportional to the needs of the case'") (citing Fed. R. Civ. P. 26(b)(1)); *Miller*, 17 F. Supp. 3d at 721 (noting discovery was never "intended to be an excursion ticket to an unlimited exploration of every conceivable matter that captures an attorney's interest"); *Space Data Corp.*, 2018 WL 3054797, at *1 ("[e]ven if litigation funding were relevant (which is contestable), potential litigation funding is a side issue at best. The Court finds that there is much discovery that would be more . . . important in resolving the merits of this case").

irrelevant to these damages requests as well.  *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, No. 1:13CV341, 2018 WL 3957364, at *2 (S.D. Ohio Aug. 17, 2018) (explaining that the third-party funder undertook a financial burden and risk—a factor that supports reimbursement); *see also WAG Acquisition, LLC v. Multi Media, LLC*, No. CV142340ESMAH, 2019 WL 3804135, at *2 (D.N.J. Aug. 13, 2019) (rejecting defendant's argument that plaintiff lacked standing by entering into a series of litigation funding agreements with a third-party funder, and further noting defendants' inability to cite any authority for their position that a party's ability or inability to fund its suit has any bearing on the analysis).

With respect to disclosure, Facebook cites only one case, *Viken*, in support of its argument that NMI's litigation funding materials are allegedly relevant to whether NMI took reasonable measures to protect its claimed trade secrets.  Defs.' Mot. to Compel at 6.  But *Viken* is silent with respect to litigation funding, and only supports the general proposition that a plaintiff must demonstrate that it took reasonable measures to protect the confidentiality of the information.  *See Viken Detection Corp. v. Videray Techs. Inc.,* 384 F. Supp. 3d 168, 177 (D. Mass. 2019).  *Viken* does not go on to hold that based on that general proposition a defendant is entitled to every communication between a trade secrets plaintiff and its litigation funder(s) to prove that the trade secrets have not been disclosed absent a non-disclosure agreement—in fact, it says nothing about litigation funding at all.  And NMI did not disclose its trade secrets in advance of executing a non-disclosure agreement with its litigation funder, mooting the question of inappropriate disclosure. *See Miller U.K. Ltd.,* 17 F. Supp. 3d at 738 (holding Miller's disclosures under written and oral confidentiality agreements demonstrated they were not made under circumstances that substantially increased the likelihood that Caterpillar would learn of them); *see also Morley v. Square, Inc.*, No. 4:14-CV-172, 2015 WL 7273318, at *2 (E.D. Mo. Nov. 18, 2015) (holding that

based on an NDA executed prior to exchanging documents, the plaintiffs had a reasonable basis for expecting confidentiality from the recipients of their work product protected information).

    ii.    *NMI's Litigation Funding is Not Relevant to Refute a "David and Goliath" Theme*

*Second*, Defendants argue that they need the details of NMI's litigation funding agreement in order to undermine NMI's purported "David and Goliath" trial theme. Defs.' Mot. to Compel at 1, 7-8. This argument appears to stem from NMI's accurately contrasting its "small company" with "Facebook, a titan, a former Massachusetts startup" at the preliminary injunction hearing. Dkt. 76 (Prelim. Inj. Hr'g Tr.) at 40:14-16. Defendants' argument that "the jury should understand that this case is not a battle between 'a titan' company, on one hand, and a 'small,' 'vulnerable' startup," Defs.' Mot. to Compel at 8, is both nonsensical and irrelevant. Facebook does not become smaller, or NMI become bigger, simply because NMI had to obtain financing to keep up with the costs of litigating this case; litigation funding does not change either company's size, age, or market position.

Moreover, Defendants' argument is moot: even if Defendants were to discover the details of NMI's funding arrangement, Defendants will not be permitted to raise those details at trial. Every court that has considered this issue *in limine* has rejected disclosure to the jury. *See, e.g., Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2017 WL 2773944, at *1 (E.D. Tex. May 26, 2017) (precluding "references, argument, or evidence regarding litigation funding documents"); *SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2:08-cv-158-JRG, 2012 WL 12906091, at *1 (E.D. Tex. May 24, 2012) (precluding any reference to investors in the litigation, litigation financing, or attorney's fee arrangements).

      iii.    <u>*NMI's Litigation Funding is Not Relevant Pre-Trial to Combat Juror Bias*</u>

Defendants also assert that they need the details of NMI's litigation funding arrangement to combat potential juror bias at trial. Defs.' Mot. to Compel at 8 n.4. Yet they ignore relevant authority rejecting this very argument. *See MLC Intellectual Prop., LLC*, 2019 U.S. Dist. LEXIS 2745, at *5 (finding assertions of potential bias and conflicts of interest were speculative and that "the Court can question potential jurors *in camera* regarding relationships to third party funders and potential conflicts of interest").

    **B.**    **<u>NMI's Litigation Funding Information is Shielded From Discovery by the Attorney Work Product Doctrine</u>**

Defendants' motion should also be denied because even if the documents had any relevance to any claim or defense in this case, the documents Defendants seek are protected work product—they reflect the "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). Work product protection is hard-wired into Rule 26; it generally provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A).

Litigation funding materials and agreements, by their nature, are prepared in anticipation of the litigation that is the subject of financing. This is precisely why they are uniformly held to be protected work product. *See, e.g., Fulton*, 2019 WL 6609298, at *2 ("Courts that have examined this issue have generally held that litigation funding documents are protected by the work product doctrine."); *Charge Injection Techs., Inc.*, 2015 WL 1540520, at *4 ("[D]ocuments concerning the negotiation of a litigation funding agreement were protected by Delaware's work product doctrine because they were 'prepared in anticipation of litigation' and more likely than not included discussions of the merits of the litigation and potential strategies") (citations omitted);

*Carlyle Inv. Mgmt. L.L.C.*, 2015 WL 778846, at *9 (holding that "[t]he policies underlying the work product doctrine …favor a finding of protection" for documents prepared by counsel for litigation funders, and "[t]here is not, however, anything so unique about third-party funding as to require a different inquiry than usual in work product cases'") (citations omitted); *Doe*, 2014 WL 1715376, at *3 (holding that "the Financing Materials … constitute opinion work product … [to the extent they] incorporate opinions by Plaintiff's counsel regarding the strength of Plaintiff's claims, the existence and merit of certain of Defendants' defenses, and other observations and impressions regarding issues that have arisen in this litigation"); *see also IOENGINE v. Interactive Media Corp.*, C.A. No. 14-1571, slip op. at 2 n.1 (D. Del. Aug. 2, 2016) (quoting *Devon It, Inc. v. IBM Corp.*, No. 10-2899, 2012 WL 4748160, at *1 (E.D. Pa. Sept. 27, 2012)) ("documents prepared for litigation funders are protected" because "[l]itigation strategy, matters concerning merits of claims and defenses and damages would be revealed if the documents were produced"); *Walker Digital v. Google*, C.A. No. 11-cv-00309-SLR, 2013 WL 9600775, at *1 (D. Del. Feb. 12, 2013) (granting plaintiff's protective order preventing defendants from compelling production of plaintiff's communications with its patent monetization consultant, finding that plaintiff and its monetization consultant shared a common interest such that communications were protected, in part, by the work product doctrine).

In the few cases that found funding agreements were relevant, the courts nevertheless *still* refused to order their production because they "constitute work product." *Cont'l Cirs. LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1021 (D. Ariz. 2020); *see also Impact Engine, Inc. v. Google LLC*, 2020 U.S. Dist. LEXIS 145636, at * (S.D. Cal. Aug. 12, 2020) (magistrate judge decision finding that litigation funding agreements and related documents were relevant to patent infringement claims to establish the value of the patents at issue; however, district court judge subsequently held

11

that while the decision was not clearly erroneous, discovery should be denied on work product grounds, *see Impact Engine, Inc. v. Google LLC*, 2020 U.S. Dist. LEXIS 194517, at *4 (S.D. Cal. Oct. 20, 2020)).

Defendants claim "the information [they] seek does not concern the strategic impressions of counsel protected by the work product doctrine." Defs.' Mot. to Compel at 11. Yet this is precisely what Defendants are asking NMI to produce. It would be impossible for NMI's counsel to disclose the likely course of litigation, the expected issues in dispute during litigation, or the attendant anticipated cost of litigation—the primary information shared to obtain litigation funding—without revealing strategic impressions of counsel. That is quintessential work product. Defendants' motion to obtain it is an impermissible attempt to proceed "on wits borrowed from [Facebook's] adversary [NMI]." *Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring).

Defendant cites *Morley* as "granting discovery of 'underlying facts conveyed to litigation funders.'" Defs.' Mot. to Compel at 11; *Morley*, 2015 WL 7273318, at *3. But, importantly, the *Morley* court did not order the wholesale production of documents. To the contrary, and further supporting NMI's position here, the *Morley* court held that given that the parties had entered into non-disclosure agreements prior to exchanging documents, the plaintiffs had a reasonable basis for expecting confidentiality from the recipients of their work product protected information, and allowed for such information to be redacted. *Id.* at 2. And given NMI's over fifty pages of interrogatory responses regarding NMI's valuation of its trade secrets, in addition to production of multiple documents, Defendants cannot demonstrate a substantial need for NMI's protected work

product.[5] *Cf. Odyssey Wiresless, Inc. v. Samsung Elecs Co., Ltd.*, 2016 WL 7665898 (S.D. Cal. Sept. 20, 2016) (in patent infringement action, granting motion to compel production of two documents notwithstanding that they were protected by work product where defendants demonstrated a "substantial need for the materials" to prepare their case given that defendants had not been given any other documents regarding patent valuation).

Nor has NMI waived any work product protection by sharing any analyses with its funder. Any documents NMI shared with its funder were shared pursuant to confidentiality and common interest agreements. *See Miller*, 17 F. Supp. 3d at 735-36 (holding that waiver of work product protection only occurs when the protected communications are disclosed in a manner that substantially increases the opportunity for potential adversaries to obtain the information—a situation that is not triggered by efforts to fund litigation against that adversary); *see also United States v. Homeward Residential, Inc.*, No. 4:12-CV-461, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016) (finding work product protection over agreements with potential litigation funders not waived because documents were subject to NDAs); *Morley*, 2015 WL 7273318, at *3.

Thus, even if the documents Defendants seek were to be deemed relevant—and they are not—Defendants' motion should still be denied because it seeks discovery of protected attorney work product.

## **CONCLUSION**

For the foregoing reasons, Neural Magic hereby requests that the Court deny Defendants' November 17, 2021 Motion to Compel, because it seeks documents that are irrelevant to any claim

---

[5] *See, e.g.*, Pl.'s Resp. to Defs. First Set of Interrogs. at 104-112, 115-121, 122-124, 174-177, 199-205; Pl.'s Resp. to Defs. Third Set of Interrogs. at 4-6, 30-31; Pl.'s Resp. to Defs. Fourth Set of Interrogs. at 7-8, 10, 12-15, 17-35; *see also, e.g.*, NMI00022926, NMI00005874, NMI00016483, NMI00005716, NMI00005861, NMI00005798, NMI00005831.

or defense in this case and/or protected by the work product privilege.

| | |
|---|---|
| Dated: December 3, 2021 | /s/ *Patrick D. Curran*<br>Steven Cherny (BBO# 706132) (*pro hac vice*)<br>Patrick D. Curran (BBO# 568701)<br>Stacylyn M. Doore (BBO# 678449)<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>111 Huntington Avenue, Suite 520<br>Boston, MA 02199<br>Tel: (617) 712-7100<br>stevencherny@quinnemanuel.com<br>patrickcurran@quinnemanuel.com<br>stacylyndoore@quinnemanuel.com |

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 3, 2021.

/s/ *Stacylyn M. Doore*
Stacylyn M. Doore