# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEURALMAGIC, INC.<br><br>*Plaintiff,*<br><br>v.<br><br>FACEBOOK, INC. AND ALEKSANDAR ZLATESKI<br><br>*Defendants.* | **Civil Action No. 20-CV-10444**<br><br>**Leave to file granted on December 17, 2021** |

### NEURAL MAGIC'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCOVERY OF LITIGATION FUNDING INFORMATION

Defendants' Reply in Support of Their Motion to Compel Discovery of Litigation Funding ("Reply") fails to engage with the substance of Neural Magic's Opposition (Dkt. 195).  Instead, Defendants misleadingly reframe the discovery they seek, continue to cite outlier cases and ignore the bulk of case law to the contrary, and misrepresent the discovery Neural Magic has produced in response to Defendants' multiple requests.  A brief sur-reply is necessary to correct these misstatements.

### A. Defendants Effectively Concede The Communications At Issue Are Work Product.

In their Reply, Defendants do not dispute that (a) because litigation funding materials are definitionally prepared in anticipation of litigation, courts have uniformly held them to be protected work product, *see* Dkt. 195 at 10–11; or (b) the primary information exchanged between Neural Magic's litigation funder and its counsel consists of and reflects Neural Magic's counsel's opinions on the likely course of the litigation, the expected issues in dispute, and the anticipated cost of litigation (including reference to Defendants' likely exposure), *see id.* at 12.  This should end the inquiry – such communications are quintessential work product.

Defendants also ignore that they moved to compel production of "[a]ny documents and correspondence that relate to the scope and circumstances of NMI's disclosures of information to its litigation funder[] that address or relate to NMI's alleged trade secrets" (Dkt. 199 at 2).  *Every* document and communication exchanged with Neural Magic's funder would be captured by this broad request.  In their Reply, Defendants recognize this overbreadth – also apparently recognizing the weakness of their waiver and "substantial need" arguments[1] – and now reframe their request as

---

[1]   Defendants state that Neural Magic has "arguably" waived work-product protection (Reply at 9), dropping their inapposite citation to the one case on which they previously relied in support of their waiver argument.  *See Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731, at *3 (D. Del. Feb. 9, 2018) (finding waiver solely because plaintiff did not have a written confidentiality agreement).  Furthermore, the only case Defendants cite in support of their purported

1

only seeking "underlying facts" that purportedly do not disclose counsel's mental impressions, "facts" which Defendants speculate (without explanation) exist in the requested documents and communications (Reply at 8–9). The Court should reject Defendants' attempt to recast the requested discovery – originally framed in a way that would capture virtually *all* communications with Neural Magic's funder (Dkt. 199 at 2) – as mere "underlying factual information."

First, Defendants make no attempt to distinguish the purported "factual [valuation] information" they seek ("how NMI values its trade secrets") from the information that was shared with Neural Magic's funder ("counsel's assessments of . . . Defendants' potential litigation exposure"). *Compare* Reply at 8 *with* Dkt. 195 at 1. Any communications exchanged between Neural Magic and its funder regarding the litigation funding arrangement relate to how Neural Magic values *this case* (not just the underlying trade secrets at issue) – and are inextricably intertwined with counsel's assessment of Defendants' potential exposure,[2] a question separate and apart from how Neural Magic currently values its trade secrets, a factor that may not even play into a damages award. *See* M.G.L. c. 93 § 42B (providing damages for plaintiff's lost profits, defendant's unjust enrichment, or a reasonable royalty); *see also Bose Corp. v. JBL, Inc.*, 112 F. Supp. 2d 138, 165 (D. Mass. 2000) (listing fifteen factors for calculating a reasonable royalty, none of which involves a free-floating determination of how a plaintiff "valued" its trade secrets). Neural

---

"substantial need" for these materials not only found waiver inapplicable, but also only found substantial need where defendants "[had] not been given *any* other documents regarding valuations" from the plaintiff. *Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd*, 2016 WL 7665898, at *7 (S.D. Cal. Sept. 20, 2016). That is not the case here. *See infra* n.2.

[2]   Defendants misleadingly claim that Neural Magic has "cherry-pick[ed]" valuation information for production. Not so. Neural Magic has produced – through hundreds of documents and dozens of pages of interrogatory responses – information concerning: (a) the cost of developing each trade secret; (b) Neural Magic's licensing of its technology; (c) projections of the server-related cost savings associated with the trade secrets, including calculations of the number of servers the trade secrets would allow Facebook to forgo using; and (d) communications and documents from Neural Magic's recent Series A round of funding. *See also* Dkt. 195 n.1 & 2.

Magic's counsel's assessment of Neural Magic's damages theories is unquestionably work product, and Defendants do not (and cannot) cite any cases holding differently.

Moreover, even if Neural Magic's disclosure of its trade secrets to its funder were relevant (it is not, as explained below, given that no disclosures occurred prior to Defendants' misappropriation or absent a confidentiality agreement), Defendants fail to explain how any "factual information" concerning the "scope and circumstances of NMI's disclosures" is not intertwined with counsel's assessment of Neural Magic's claims (the only context in which such "disclosure" would have occurred). *See* Dkt. 195 at 12. Once again, these documents and communications are quintessential work product, and Defendants make no argument to the contrary, resorting to misrepresentations about Neural Magic's interrogatory responses – claiming that Neural Magic categorically stated it had not disclosed its trade secrets to any third parties (Reply at 5). This is false. In a prior response to the interrogatory in question, Neural Magic made clear it "had not disclosed any of its trade secrets [] to third parties *outside of the current litigation*." Dkt. 200, Ex. C at 123 (emphasis added). The statement Defendants cite was in response to later, specific inquiries about whether Neural Magic took reasonable steps to protect its trade secrets – disclosure to its funder, given the confidentiality agreement and timing of disclosure, was not relevant. *See id.* at 123–24. Accordingly, the work product protection applies to the documents and communications Defendants seek,[3] even if the requested discovery is relevant. But, as explained below, Defendants fail to make even that threshold showing.

---

[3] Defendants' claim that Neural Magic "fails to explain how a work product claim could shield discovery of the names of its funders" is a misdirection. No explanation is necessary, because the identity of Neural Magic's funder is irrelevant. Defendants effectively concede that *in camera* questioning of potential jurors assuages any concerns about "potential juror bias" (Reply at 7). *See* Opp. at 10. Defendants' "assertions of potential bias [] are speculative," and should be rejected. *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 2019 WL 118595, at *2 (N.D. Cal. Jan. 7, 2019).

3

**B. Defendants Fail To Make A Particularized Showing That The Discovery Is Relevant.**

As an initial matter, Defendants have failed, both in their opening papers and Reply, to provide the ***particularized*** showing of relevance required by virtually every court to address the relevance of litigation-funding materials. *See* Dkt. 195 at n. 3 (collecting cases). Defendants acknowledge such a showing is necessary (Reply at 3), but nonetheless rely on generic claims of relevance in an attempt to sidestep this initial burden. The Court should not permit them to do so.

1. *Defendants Fail to Show That Litigation Funding Information is Relevant to Damages.*

Defendants claim that "NMI itself relies on patent law principles in support of its damages claims" (Reply at 4) to argue that this Court should follow patent-related litigation funding cases in finding the documents that Defendants seek relevant to the instant dispute. But Defendants' argument entirely ignores that the key issue in those cases – whether the named plaintiff has standing to assert their claims – is not applicable here.

Massachusetts trade secret law expressly incorporates the purported "patent law principles" (Reply at n.2) Neural Magic cites in support of its damages – Neural Magic's entitlement to a reasonable royalty award – carefully adjusting those principles to the trade secret context. *See* M.G.L. c. 93 § 42B (providing for a reasonable royalty for disclosure of plaintiff's trade secrets). By contrast, Defendants cite no authority supporting the transportation of patent law principles regarding litigation funding agreements to the trade secret context – for good reason, given that the concerns in those patent cases relate to whether the named plaintiff has standing to assert the patent claim at issue. *See* Dkt. 195 at 6. "This is not a patent case where the ownership of a patent is relevant to determining who has standing to bring the lawsuit." *In re Valsartan N-*

---

Defendants have offered no other justifiable reason why the name of Neural Magic's funder is relevant, nor could they: the only likely explanation is that Defendants will attempt to seek the same impermissible discovery from Neural Magic's funder.

4

*Nitrosodimethylamine (NDMA) Contamination Prod. Liab. Litig.*, 405 F. Supp. 3d 612, 616 (D.N.J. 2019).

Defendants falsely claim that, "[w]ith respect to [attorneys'] fees and costs, [Neural Magic] merely reiterates its incorrect argument that litigation funding information is irrelevant to damages, full stop" (Reply at 7).  Not so.  Neural Magic included a paragraph devoted to this point separate and apart from its other damages-related arguments.  *See* Dkt. 195 at 8.  And Defendants cite no authority that litigation funding arrangements are uniquely relevant to determining fees and costs and ignore authority expressly holding otherwise.  *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2018 WL 3957364, at *2 (S.D. Ohio Aug. 17, 2018) (explaining that the financial burden and risk undertaken by a third-party funder supports their reimbursement).

>    2. *Defendants Fail to Show That Litigation Funding Correspondence is Relevant to Whether Neural Magic Took "Reasonable Measures" to Protect its Trade Secrets.*

Any disclosures by Neural Magic of its trade secrets to its litigation funder are as a matter of law irrelevant to whether Neural Magic took reasonable measures to protect its trade secrets because the disclosure happened *after* the misappropriation and *following* execution of a confidentiality agreement.  Massachusetts trade secret law explicitly provides that relevant protective measures are those that existed *at the time of the misappropriation.*[4]  Disclosure following execution of a confidentiality agreement is similarly irrelevant, *see, e.g.*, *Signal Fin. Holdings v. Looking Glass Fin.*, 2018 WL 636769, at *4 (N.D. Ill. Jan. 31, 2018) (marking documents confidential and requiring third parties to sign an NDA sufficient to warrant trade secret

---

[4] *See* M.G.L. c. 93 § 42 (defining a "trade secret" as information that "***at the time of the alleged misappropriation*** was the subject of efforts that were reasonable under the circumstances. . . to protect against it being acquired") (emphasis added); *see also Diomed, Inc. v. Vascular Sols., Inc.*, 417 F. Supp. 2d 137, 144 (D. Mass. 2006) (disclosure of trade secrets in post-misappropriation patent application irrelevant to whether plaintiff possessed a protectable trade secret).

protection), though Defendants mislead the Court regarding the existence of cases holding to the contrary.[5]  Finally, the fact that *Miller UK* and *Morley* addressed whether the parties waived work product protection rather than whether the parties took reasonable measures to protect their trade secrets (Reply at n.3) is a distinction without a difference: both courts found that the confidentiality agreements adequately protected plaintiffs' information from disclosure.  *See Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 738 (N.D. Ill. 2014);  *Morley v. Square, Inc.*, 2015 WL 7273318, at *2 (E.D. Mo. Nov. 18, 2015) (existence of non-disclosure agreement showed plaintiff "had a *reasonable* basis for expecting confidentiality" of shared information) (emphasis added).

> 3. *Defendants' Speculation About Neural Magic's Trial Themes Does Not Provide a Reasonable Basis for Discovery.*

Defendants do not contest that they will be unable to admit evidence regarding Neural Magic's litigation funding at trial (Reply at 6–7).  Yet, even so, Defendants claim they need such information now – to prepare a defense that they admit cannot include the information they seek.  Defendants provide no detail regarding how such clearly inadmissible information could help them prepare their defense (because it would not).  *See* Dkt. 195 at 9.[6]

For the foregoing reasons, information related to Neural Magic's litigation funding is irrelevant.  This Court should join the vast majority of courts who have held as much.

---

[5]  For example, contrary to Defendants' representation, *Lawrence v. NYC Med. Practice, P.C.*, 2019 WL 4194576 (S.D.N.Y. Sept. 3, 2019), did not hold that "the existence of confidentiality agreements alone is insufficient to establish plaintiff took reasonable protective measures" (Reply at 5).  The *Lawrence* Court found only that bare assertions about "trade secret protections" – which fell short of even alleging that confidentiality agreements were in place – were insufficient to establish the *existence* of a trade secret. *Lawrence*, 2019 WL 4194576 at *5.  The only other case on which Defendants rely – *Arconic Inc. v. Novelis Inc.*, 2018 WL 6738066, at *5 (W.D. Pa. Oct. 18, 2018) – provided *no* reasoning for the disclosures it ordered.  (Reply at 6).

[6]  Defendants tellingly omit that the one case they cite in support of their relevance argument held that the details of the litigation funding agreement were protected work product.  *See Cont'l Cirs.*, 435 F. Supp. 3d at 1023.

## CONCLUSION

For the foregoing reasons, as well as those presented in Neural Magic's Opposition to Defendants' Motion to Compel, this Court should deny Defendants' motion.

Respectfully submitted,

Dated: December 20, 2021

   */s/ Patrick D. Curran*
Patrick D. Curran (BBO# 568701)
Steven Cherny (BBO# 706132) (*pro hac vice*)
Stacylyn M. Doore (BBO# 678449)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel: (617) 712-7100
stevencherny@quinnemanuel.com
patrickcurran@quinnemanuel.com
stacylyndoore@quinnemanuel.com

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 20, 2021.

*/s/ Stacylyn M. Doore*
Stacylyn M. Doore