UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEURAL MAGIC, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>META PLATFORMS, INC. and ALEKSANDAR ZLATESKI,<br><br>  Defendants. | Civil Action No. 1:20-cv-10444-DJC |

# MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO REDUCE THE NUMBER OF ASSERTED TRADE SECRETS

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1
II. BACKGROUND ....................................................................................................................3
III. LEGAL STANDARDS ..........................................................................................................5
IV. ARGUMENT .........................................................................................................................7
    A. NMI Should Be Ordered To Reduce The Number Of Asserted Trade Secrets ..............................................................................................................................7
    B. NMI's Arguments Against Narrowing Should Be Rejected...................................8
    C. Defendants Will Suffer Prejudice If This Motion Is Denied, And NMI Will Not Be Prejudiced If It Is Ordered To Reduce Its Claims ............................11
V. CONCLUSION....................................................................................................................12

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

# **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Abiomed, Inc. v. Maquet Cardiovascular, LLC*,
   No. 1-16-cv-10914, D.I. 178 (D. Mass. Nov. 22, 2017)..........................................................7

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
   No. 5-10-cv-03428, D.I. 465 (N.D. Cal. Feb. 7, 2012)............................................................6

*City of Bangor v. Citizens Commc'ns Co.*,
   532 F.3d 70, 99 (1st Cir. 2008)................................................................................................5

*Impact Engine, Inc. v. Google LLC*,
   No. 19-cv-1301, D.I. 209 (S.D. Cal. May 20, 2021) ...............................................................6

*Joao Control & Monitoring v. Ford Motor Co.*,
   No. 13-cv-13615, 2014 WL 106926 (E.D. Mich. Jan. 10, 2014) ............................................6

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936).................................................................................................................5

*Medtronic Minimed Inc. v. Animas Corp.*,
   No. 12-cv-04471, 2013 WL 3322248 (C.D. Cal. Apr. 5, 2013).........................................6, 11

*Proofpoint, Inc. v. Vade Secure, Inc.*,
   No. 3:19-cv-4238, D.I. 441 (N.D. Cal. Mar. 12, 2021) .......................................................6, 7

*Rehrig Pac. Co. v. Polymer Logistics (Israel), Ltd.*,
   No. 19-cv-4952, 2019 WL 8161141 (C.D. Cal. Aug. 30, 2019) .............................................6

*Select Comfort Corp. v. Gentherm, Inc.*,
   No. 13-cv-2314, 2014 WL 4976586 (D. Minn. Oct. 3, 2014).................................................6

*Solannex, Inc. v. MiaSolé, Inc.*,
   No. 12-cv-832, D.I. 78 (N.D. Cal. Feb. 27, 2013) ...................................................................7

*Straight Path IP Grp. v. Apple Inc.*,
   No. 16-cv-03582, 2017 WL 1365124 (N.D. Cal. Apr. 13, 2017).............................................6

*Teradata Corp. v. SAP SE*,
   No. 3:18-cv-03670, D.I. 267 (N.D. Cal. June 12, 2020)..........................................................6

*Waymo, LLC v. Uber Techs., Inc.*,
   No. 3:17-cv-939, D.I. 563 (N.D. Cal. June 7, 2017) ...............................................2, 5, 7, 8

*Zond LLC v. Intel Corp.*,
  No. 1-13-cv-11570, D.I. 121 (D. Mass. Apr. 18, 2014) ........................................................... 7

**STATUTES**

18 U.S.C. § 1839 ............................................................................................................................. 8

42 Mass. G.L. c. 93 § 42 .......................................................................................................... 3, 8

**RULES**

Fed. R. Civ. P. 1 ............................................................................................................................. 5

Fed. R. Civ. P. 16 ....................................................................................................................... 5, 7

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

I.      **INTRODUCTION**

Plaintiff Neural Magic, Inc. ("NMI") currently asserts trade secret misappropriation claims based on 48 alleged secrets encompassing over a million potential combinations. This is facially unreasonable and will prove unmanageable for the parties and the Court in upcoming expert discovery, summary judgment practice, and at trial. Accordingly, Meta respectfully moves the Court to order NMI to limit the number of asserted trade secrets to no more than 10 now that fact discovery is complete and as the parties move into expert discovery. Such an order is squarely within the Court's authority and will better secure a just, speedy, and efficient determination of this action.

In early March 2020, NMI filed this lawsuit, asserting, among other things, claims of trade secret misappropriation under the Massachusetts Uniform Trade Secret Act ("MUTSA") and federal Defend Trade Secret Act ("DTSA"). D.I. 1. The next month, NMI moved for a preliminary injunction based on four alleged trade secrets. *See* D.I. 25, 32 at 11-12. The Court denied that motion, recognizing that Defendants provided "substantial evidence" that the (then four) alleged trade secrets "were widely known by those of skill in the field and that any one of them or the combination of them, were not the proprietary trade secrets of" NMI. D.I. 80 at 17. In December 2020, NMI served an initial "Statement of Identification of Trade Secrets," increasing the number of alleged secrets in dispute nearly tenfold, from four to 38. Ex. B.[1] Then, in March 2021, following motion practice relating to NMI's initial trade secret disclosure, NMI served its operative "Supplemental Identification of Trade Secrets." Ex. A ("NMI's Trade Secret Statement"). NMI further increased its list of alleged secrets, from 38 to 48, and NMI revised its so-called "unique combination" secrets to encompass over a million potential combinations. That

---

[1] Lettered exhibits are attached to the accompanying Declaration of Christopher W. Henry.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

is, alleged trade secrets Nos. 2, 3, 4, 9, 10, 11, 12, and 13 each purport to include one or more of alleged trade secrets Nos. 17-22 on their own or combined with any "one or more" of alleged trade secrets Nos. 28-33 "and/or" any "one or more" of alleged trade secrets Nos. 36-43. *See* Ex. A.[2]

NMI cannot reasonably intend to present 48 alleged trade secrets—let alone over a million possible combination trade secrets—to a jury at trial. And in upcoming expert discovery and summary judgment practice, NMI will have to address, among other things, how each of its purported secrets (including each potential combination) compares with the multipart MUTSA and DTSA standards. Likewise, Defendants and their experts will have to address how NMI cannot show that each item of information at issue satisfies the MUTSA and DTSA standards. It would be wasteful for the parties to commit time and resources to conduct extensive expert discovery on a multitude of alleged trade secrets NMI will not bring to trial. Similarly, the Court's time and resources will be wasted adjudicating summary judgment motions on a panoply of alleged trade secrets NMI cannot conceivably try.

Consequently, Defendants respectfully request that the Court order NMI to reduce the number of asserted trade secrets, including all possible combinations, to no more than ten (as other courts have done in similar circumstances), or such other reasonable number as this Court deems proper. *See, e.g.*, Ex. C, *Waymo, LLC v. Uber Techs., Inc.*, No. 3:17-cv-939, D.I. 563, ¶ 10 (N.D. Cal. June 7, 2017) (ordering parties to "agree on a deadline by which plaintiff must make a final determination regarding the exact number and lineup of trade secrets to be tried," to "consist of less than ten trade secrets").

---

[2] The combinations encompassed by one or more of any six items (e.g., Nos. 17-22) combined with zero or more of another six items (e.g., Nos. 28-33) and zero or more of another eight items (e.g., Nos. 36-43) total 1,032,192. [One or more of Nos. 17-22] * [zero or more of Nos. 28-33] * [zero or more of Nos. 36-43] = $[2^6 - 1] * [2^6] * [2^8]$ = 1,032,192.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## II. BACKGROUND

In April 2020, about a month after this case was filed, NMI moved for a preliminary injunction, advancing misappropriation claims relating to four alleged trade secrets: ███████ ███████████████████████████████████████████ ████████████████████████ D.I. 32 at 11-12. Defendants opposed NMI's motion, explaining that "the amorphous categories of information" NMI says are trade secrets "are, in reality, well-known approaches commonly used by computer scientists in the field." D.I. 43 at 1; *see also id.* at 13-18. On May 29, 2020, the Court denied NMI's motion, ruling, among other things, that NMI failed to show a reasonable likelihood of success on its claims that its alleged trade secrets were, in fact, trade secrets. *See* D.I. 80 at 10-16.

Following the parties' litigation of Defendants' partial motion to dismiss, a scheduling conference was held in November 2020. *See* D.I. 104. During that conference, the Court recognized the "live dispute between the parties about whether the trade secrets claimed are in fact trade secrets." D.I. 105; Nov. 16 Hr'g Tr. at 12:21-23. The Court thus ordered NMI to serve a pre-discovery trade secret identification pursuant to Mass. Gen. L. c. 93 § 42D(b) by December 2, 2020. D.I. 105. When that day arrived, NMI's four alleged trade secrets ballooned to 38 purported secrets. *See* Ex. B (NMI's Dec. 2, 2020 "Statement of Identification of Trade Secrets") (the "December 2020 Statement").

In the ensuing months, the parties engaged in negotiations and motion practice, and the Court held multiple hearings, regarding NMI's December 2020 Statement, Rule 26(a)(1) disclosures, and responses to Defendants' first set of interrogatories. *See, e.g.*, D.I. 112, 115, 133, 141, 145. On March 10, 2021, NMI served another trade secret disclosure document (the operative Trade Secret Statement) listing 48 alleged trade secrets, including purported "unique

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

combinations" encompassing over a million combinations. *See* Ex. A; *supra* note 2.[3] On March 16, 2021, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. D. After another hearing on March 19, the Court ordered NMI to supplement certain interrogatory responses further identifying its alleged trade secrets. D.I. 146, 147. During this early motion practice, the Court was not asked to decide, and did not address, whether NMI should reduce the number of trade secrets asserted in its operative Trade Secret Statement.

Fact discovery closed on February 22, 2022. D.I. 246. NMI's opening expert reports and Defendants' rebuttal reports are due April 8 and May 20, respectively. D.I. 251. Expert discovery is set to close on June 17. *Id.* Summary judgment practice begins a month later. *Id.*

On March 7, 2022, the Court held a brief status conference with the parties and set a new, go-forward schedule for expert discovery and summary judgment practice. *See* D.I. 251. Defendants promptly emailed NMI on March 10, seeking NMI's positions on narrowing the number of asserted trade secrets. *See* Ex. E (Defs' Mar. 10 email). Specifically, Defendants asked NMI to narrow the number of asserted trade secrets to ten (or fewer), including potential combinations, or that it commit to doing so in its opening expert reports, which at that time were

---

[3] *See also* Ex. F, Matveev Dep. Tr. 294:6-12, 298:22-299:7 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Ex. G, Kopinsky Dep. Tr. 142:11-145:3 ▮▮▮▮▮▮ (objections omitted). Dr. Matveev is NMI's co-founder and CTO. Ex. F, Matveev Dep. Tr. 70:9-12. Dr. Kopinsky is a former NMI senior engineer. *See* Ex. G, Kopinsky Dep. Tr. 50:6-51:4; Ex. H, O'Hara Dep. Tr. 107:8-15.

due over four weeks later. *See id.* (Defs' Mar. 10 email). NMI responded on March 11, making clear that, in its view, the time for any narrowing is "at trial." *Id.* (NMI's Mar. 11 email). The parties continued to discuss this issue, and NMI confirmed that it believes narrowing should only occur "during the pretrial process." *See id.* (NMI's Mar. 13 email).

On March 15, the parties conferred by Zoom, and NMI maintained its position that any narrowing should occur as part of the pre-trial process.[4]

## III. LEGAL STANDARDS

Trial courts have broad discretion to manage discovery and their dockets to "secure the just, speedy, and inexpensive determination of every action and proceeding," including by "adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues." Fed. R. Civ. P. 1, 16(c)(2)(L), 16(c)(2)(P); *see also City of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 99 (1st Cir. 2008) ("A district court enjoys inherent power to 'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'") (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

Accordingly, when a plaintiff's trade secret identifications are unwieldy and unduly burdensome, courts may order the plaintiff to limit its claims, including to focus upcoming expert discovery. *See, e.g.*, Ex. C, *Waymo*, D.I. 563, ¶ 10 (ordering parties to "agree on a deadline by which plaintiff must make a final determination regarding the exact number and lineup of trade secrets to be tried," and that "[t]he final lineup should consist of less than ten trade secrets, and the deadline should fall on a date … that will permit sufficient preparation time for opening expert

---

[4] During the meet and confer, NMI's counsel also asked Meta's counsel whether Meta would seek an amendment to the case schedule to accommodate any narrowing the Court may order. As stated in the meet and confer, Meta does not believe any extension of the schedule is required—narrowing the asserted trade secrets will reduce, not increase, the work remaining in the case—but Meta also does not object to a reasonable extension should NMI request one that the Court finds to be appropriate.

reports"); Ex. I, *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 3:19-cv-4238, D.I. 441 (N.D. Cal. Mar. 12, 2021) (ordering plaintiffs to provide "a list of trade secrets they intend to try" after defendants explained that the plaintiffs could not bring 155 alleged trade secrets to trial (D.I. 438 at 12-13)); *see also* Ex. J, *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, No. 5-10-cv-03428, D.I. 465 at 2 (N.D. Cal. Feb. 7, 2012) (ordering, before close of fact discovery, that plaintiff "must narrow its trade secrets from 25 to 20"); Ex. K, *Teradata Corp. v. SAP SE*, No. 3:18-cv-03670, D.I. 267 at 2 (N.D. Cal. June 12, 2020) (ordering parties to "submit a stipulation or competing schedules for narrowing the claims" because multiple pending patent claims and 146 pending trade secret claims made the case "unmanageable"); Ex. L, *Teradata*, No. 3:18-cv-03670, D.I. 278 (N.D. Cal. July 10, 2020) (stipulated order requiring narrowing to 25 alleged trade secrets in fact discovery and 15 by the end of expert discovery). Such orders are analogous to, and supported by the same rationales as, orders frequently issued in patent litigation requiring plaintiffs to limit asserted claims, including at very early stages. *See, e.g.*, *Medtronic Minimed Inc. v. Animas Corp.*, No. 12-cv-04471, 2013 WL 3322248, at *1-3 (C.D. Cal. Apr. 5, 2013) (ordering, before non-infringement and invalidity contentions were served, that plaintiff had to cut 255 asserted claims down to 18 due to the "unfair prejudice that Defendant will suffer if the claims are not reduced" and "the Court's goal of securing a 'just, speedy, and inexpensive' resolution").[5]

---

[5] *See also Rehrig Pac. Co. v. Polymer Logistics (Israel), Ltd.*, No. 19-cv-4952, 2019 WL 8161141, at *1 (C.D. Cal. Aug. 30, 2019) ("To promote a just, speedy, and inexpensive resolution, the Court orders Plaintiff to reduce its number of asserted claims to fifteen claims total across the five patents."); *Straight Path IP Grp. v. Apple Inc.*, No. 16-cv-03582, 2017 WL 1365124, at *2 (N.D. Cal. Apr. 13, 2017) (ordering plaintiff to limit its case to 10 claims); *Select Comfort Corp. v. Gentherm, Inc.*, No. 13-cv-2314, 2014 WL 4976586, at *2 (D. Minn. Oct. 3, 2014) (imposing a limit of 15 claims across 5 patents); *Joao Control & Monitoring v. Ford Motor Co.*, No. 13-cv-13615, 2014 WL 106926, at *4 (E.D. Mich. Jan. 10, 2014) ("It would be a waste of time and resources to conduct a claim construction hearing for a multitude of claims that Plaintiff may later elect not to pursue during the claim selection process."); Ex. M, *Impact Engine, Inc. v. Google LLC*, No. 19-cv-1301, D.I. 209 at 1 (S.D. Cal. May 20, 2021) (ordering, in advance of expert

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

IV.     **ARGUMENT**

    A.     **NMI Should Be Ordered To Reduce The Number Of Asserted Trade Secrets**

NMI should be ordered to limit the number of asserted trade secrets to no more than ten, including all possible combinations, or such other reasonable number as the Court deems proper. NMI cannot reasonably intend to try 48 alleged trade secrets at trial—let alone 48 purported secrets encompassing over a million possible combinations. The narrowing Defendants request will facilitate the just, speedy, and inexpensive prosecution of this action, including in expert discovery, summary judgment practice, and at trial. *See* Ex. C, *Waymo,* D.I. 563, ¶ 10 (plaintiff's "final lineup should consist of less than ten trade secrets" and "permit sufficient preparation time for opening expert reports"); Ex. I, *Proofpoint*, D.I. 441 (ordering plaintiffs to provide "a list of trade secrets they intend to try"); *see also* Fed. R. Civ. P. 16(a)(3)-(4), 16(c)(2)(L), 16(c)(2)(P) ("[T]he court may consider and take appropriate action" to "facilitat[e] in other ways the just, speedy, and inexpensive disposition of the action.").

On its misappropriation claims, NMI bears the burden of establishing that its allegedly proprietary information satisfies the multipart MUTSA and DTSA standards for trade secret protection. Among other things, NMI must show for each alleged trade secret item and each potential combination: (i) how the information at issue is distinguishable from information that was generally known to, or readily ascertainable through proper means by, others, (ii) how the information at issue derived independent economic value from not being generally known or

---

reports, that plaintiff had to "limit the asserted claims to a total of 15" to advance toward "a trial-ready posture"); Ex. N, *Solannex, Inc. v. MiaSolé, Inc.*, No. 12-cv-832, D.I. 78 at 2 (N.D. Cal. Feb. 27, 2013) (ordering an initial reduction of asserted claims to 25: "No jury in this case is going to resolve 58 patent claims."); Ex. O, *Abiomed, Inc. v. Maquet Cardiovascular, LLC*, No. 1-16-cv-10914, D.I. 178 (D. Mass. Nov. 22, 2017) (ordering, in advance of expert reports, that plaintiff reduce asserted claims to 18); Ex. P, *Zond LLC v. Intel Corp.*, No. 1-13-cv-11570, D.I. 121 at 1 (D. Mass. Apr. 18, 2014) (requiring plaintiff to reduce asserted claims from multiple patents to "no more than 16 claims").

readily ascertainable, and (iii) how NMI took reasonable measures to keep the information at issue secret. *See* 18 U.S.C. § 1839; 42 Mass. G.L. c. 93 § 42. Similarly, Defendants and their experts will have to assess and address, e.g., in upcoming rebuttal reports and at summary judgment, how NMI cannot meet its burden as to each item of information encompassed by NMI's Trade Secret Statement. Consequently, it is in the parties' and the Court's interests to narrow NMI's misappropriation claims now.

If NMI does not reduce the number of asserted trade secrets at this time, the parties will waste significant time and resources conducting expert discovery on a multitude of alleged trade secrets that NMI cannot reasonably intend to bring to trial. Similarly, in coming months, e.g., in upcoming summary judgment practice, the Court will need to expend—and waste—significant judicial resources analyzing a panoply of alleged trade secrets that NMI cannot try. Indeed, for these same reasons, NMI's counsel, Quinn Emanuel, has argued in other cases for the same reduction Defendants request here. *See* Ex. Q, *Agilent Techs. v. Twist Bioscience Corp.*, No. 16-CV-291137, at 1 (Cal. Super. Ct. Sept. 11, 2019) ("[J]udicial economy and an orderly trial management plan … militate in favor of [Defendant]'s proposal to require narrowing to 10 trade secrets by the close of fact discovery and 5 for trial") (citing and quoting *Waymo*, D.I. 563 (Ex. C)); *id.* at 2-3 (arguing that leaving narrowing for summary judgment, or later, "would defeat the very purpose of case narrowing *prior to* summary judgment") (emphasis original).

### B.   NMI's Arguments Against Narrowing Should Be Rejected

In the parties' correspondence about this motion, NMI advanced a number of arguments against the requested narrowing, none of which has merit.

NMI argues that no narrowing is required because its misappropriation claims already are limited to "three techniques and their combination," and NMI accuses Defendants of mischaracterizing NMI's Trade Secret Statement as identifying "48 distinct" alleged secrets.

8

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Ex. E (Mar. 11 & 13 emails). NMI's Trade Secret Statement refutes NMI's argument. The statement plainly lists 48 separately enumerated alleged trade secret items, and straightforward math confirms that the "unique combination" claims encompass over a million additional alleged secrets. *See* Ex. A; *see also supra* notes 1 & 2. Moreover, NMI has consistently asserted each alleged trade secret item and each combination individually. The Trade Secret Statement expressly states this is NMI's position: "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." *Id.* at 2. And NMI's co-founder and CTO, Dr. Alexander Matveev, recently testified █████████ █████████████████████████████ *See* Ex. F, Matveev Dep. Tr. 302:19-303:11 ("█████████████████████████████████████████████████████████████████████████████████████████████████████████████") (objections omitted).[6]

Defendants agree that this motion would have been unnecessary if NMI's claims were, in fact, already limited to just four alleged trade secrets—"three core trade secrets and their combination," as NMI writes (*see* Ex. E (NMI's Mar. 11 & Mar. 13 emails)). Defendants asked NMI to select four items from its Trade Secrets Statement to litigate going forward. Ex. E (Defs' Mar. 11 email). In response, NMI objected to limiting itself to just four "paragraphs of detail." *Id.* (NMI's Mar. 13 email) (underline original). But this new position contradicts the express

---

[6] On March 13, 2022, NMI also identified a March 16, 2021 minute order, █████████ ███████████████████████████████████████████████████████████████████████████ *See* Ex. D.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

language and enumeration in the Trade Secret Statement and Dr. Matveev's sworn testimony (discussed above), and ultimately confirms that a clarifying reduction of asserted trade secrets should be ordered.

NMI attempts to blame Defendants for its unmanageable Trade Secret Statement. *See* Ex. E (NMI's Mar. 11 email) ("That Neural Magic (twice) provided additional detail concerning these trade secrets – again, *at Defendants' request* – does not change the fact that there are three ideas (and their combined use) at issue") (emphasis original). But Defendants requested a meaningful disclosure that would allow a person of skill to understand how the information NMI claims to be proprietary differs from information that was known, or readily ascertainable, in the industry, as the law requires. *See, e.g.*, D.I. 92 at 6-7. Defendants did not ask NMI to exponentially increase its list of claimed secrets.

NMI also complains about the timing of Defendants' request. *See id.* (NMI's Mar. 11 & Mar. 13 emails). Defendants, however, promptly raised this issue with NMI on March 10, after the Court adopted a new schedule for expert discovery and summary judgment practice (D.I. 251). Furthermore, when Defendants raised this issue, the April 8 deadline for NMI's opening expert reports was over four weeks away, and Defendants only asked NMI to commit to implementing the requested narrowing in its reports. *See id.* (Defs' Mar. 10 email). NMI thus had ample additional time (over four weeks)—beyond the entire fact discovery period that already passed— to figure out how to address *fewer* alleged secrets. Moreover, this procedural history reveals that if NMI now faces any difficulties revising opening reports before they are due, such difficulties are attributable to NMI's failure to narrow on its own, which NMI's counsel has expressly advocated for in other matters (*see* Ex. Q, *Agilent Techs.*, at 1-3).

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

### C. Defendants Will Suffer Prejudice If This Motion Is Denied, And NMI Will Not Be Prejudiced If It Is Ordered To Reduce Its Claims

Streamlining the number of asserted trade secrets will promote judicial economy, lead to more efficient expert discovery and summary judgment practice, and must occur before trial as a practical matter anyway. Indeed, NMI's position that narrowing should occur during the pretrial proceedings tacitly concedes that it knows it must reduce the number of alleged trade secrets at some point, and that the only question is when that should occur. Absent such narrowing now, Defendants will be unduly burdened by the need to prepare and serve rebuttal expert reports and summary judgment papers addressing each item of information in NMI's Trade Secret Statement, knowing full well that the vast majority of those items will become moot before trial. The prejudice this would impose is plain. *See, e.g.*, *Medtronic*, 2013 WL 3322248, at *2 (granting motion to reduce the number of asserted patent claims: "Defendant will actually suffer greater prejudice if this Motion is denied than Plaintiffs will suffer if the Motion is granted").

In contrast, NMI will not be prejudiced if the Court orders NMI to reduce the number of asserted trade secrets and disclose its real theories for expert discovery and subsequent case activities. NMI plainly knows at this stage which alleged trade secrets it truly will pursue, including in view of Defendants' detailed discovery responses, and there is no legitimate need for NMI to continue to conceal that from Defendants. In fact, NMI too will likely *benefit* from the requested narrowing because, for example, NMI will be able to focus its opening expert reports and arguments concerning its burdens of proof and avoid needless expense in litigating alleged trade secrets that never will see the light of a jury trial.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## V. CONCLUSION

Defendants respectfully request that the Court grant their motion and order NMI to reduce the number of alleged trade secrets it asserts—including all possible combinations—to no more than ten, or such other reasonable number as this Court deems proper.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Dated: March 17, 2022

/s/ Christopher W. Henry
William J. Trach (BBO No. 661401)
Christopher W. Henry (BBO No. 676033)
Paul A. Weinand (BBO No. 708757)
LATHAM & WATKINS LLP
John Hancock Tower
200 Clarendon Street, 27th Floor
Boston, MA 02116
(617) 948-6000 / (617) 948-6001 Fax
william.trach@lw.com
christopher.henry@lw.com
paul.weinand@lw.com

Douglas E. Lumish (*pro hac vice*)
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
(650) 328-4600 / (650) 463-2600 Fax
douglas.lumish@lw.com

Jennifer L. Barry (*pro hac vice*)
Patrick C. Justman (*pro hac vice*)
Melanie J. Grindle (*pro hac vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
(858) 523-5400 / (858) 523-5450 Fax
jennifer.barry@lw.com
patrick.justman@lw.com
melanie.grindle@lw.com

*Attorneys for Defendant Meta Platforms, Inc.*

Respectfully submitted,

/s/ Stephen D. Riden
Russell Beck (BBO No. 561031)
Stephen D. Riden (BBO No. 644451)
Hannah Tso Joseph (BBO No. 688132)
Jillian E. Carson (BBO No. 698505)
BECK REED RIDEN LLP
155 Federal Street, Suite 1302
Boston, MA 02110
(617) 500-8670 / (617) 500-8665 Fax
rbeck@beckreed.com
sriden@beckreed.com
hjoseph@beckreed.com
jcarson@beckreed.com

*Attorneys for Defendant Aleksandar Zlateski*

13
**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## CERTIFICATE OF SERVICE

    I hereby certify that a true, unredacted version of the foregoing document was served by electronic mail on all counsel of record this 17th day of March, 2022.

/s/ Christopher W. Henry
Christopher W. Henry

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**