# EXHIBIT BV

Leave to File Under Seal Granted on 8/30/2022

HIGHLY CONFIDENTIAL

1

2                UNITED STATES DISTRICT COURT

3            FOR THE DISTRICT OF MASSACHUSETTS

4

5        ------------------------------------x

6        NEURAL MAGIC, INC.,          Civil Action No.

7                  Plaintiff,      1:20-cv-10444-DJC

8           v.

9        FACEBOOK, INC., and ALEKSANDAR

10       ZLATESKI,

11                  Defendants.

12       ------------------------------------x

13

14                  **HIGHLY CONFIDENTIAL**

15

16           REMOTE VIDEOTAPED DEPOSITION of BRIAN

17       STEVENS, and as 30(b)(6) designee of NEURAL

18       MAGIC, INC.

19                   Boston, Massachusetts

20

21

22

23       Reporter: MaryJo O'Connor, RDR, RMR

24       Job No: 5044820

                                              Page 1

HIGHLY CONFIDENTIAL

**Page 2**

1

2

3

4

5            **HIGHLY CONFIDENTIAL**

6

7            Friday, January 21, 2022

8            9:40 a.m. EST

9

10

11           REMOTE VIDEOTAPED DEPOSITION of

12   BRIAN STEVENS, and as 30(b)(6) designee of

13   NEURAL MAGIC, INC., held via Zoom

14   videoconference in Boston, Massachusetts,

15   pursuant to notice, before MaryJo O'Connor,

16   Registered Diplomat Reporter, Registered

17   Merit Reporter and Notary Public in and for

18   the Commonwealth of Massachusetts.

19

20

21

22

23

24

**Page 3**

1    A P P E A R A N C E S

2

3    ATTORNEYS FOR PLAINTIFF:

4        (Attending remotely)

5        QUINN EMANUEL URQUHART & SULLIVAN, LLP

6            111 Huntington Avenue, Suite 520

7            Boston, Massachusetts 02199

8            (617) 712-7100

9        BY:   STACYLYN DOORE, ESQ.

10           stacylyndoore@quinnemanuel.com

11

12

13   ATTORNEYS FOR DEFENDANT META PLATFORMS,

14   INC.:

15       (Attending remotely)

16       LATHAM & WATKINS LLP

17           140 Scott Drive

18           Menlo Park, California 94025

19           (650) 328-4600

20       BY:   DOUGLAS E. LUMISH, ESQ.

21           douglas.lumish@lw.com

22

23           - and -

24

**Page 4**

1    A P P E A R A N C E S (Con't):

2

3        (Attending remotely)

4        LATHAM & WATKINS LLP

5            12670 High Bluff Drive

6            San Diego, California 92130

7            (858) 523-5400

8        BY:   PATRICK C. JUSTMAN, ESQ.

9            patrick.justman@lw.com

10

11

12   ATTORNEYS FOR DEFENDANT ALEKSANDAR ZLATESKI:

13   BECK REED RIDEN LLP

14       155 Federal Street, Suite 1302

15       Boston, Massachusetts 02110

16       (617) 500-8670

17   BY:   STEPHEN D. RIDEN, ESQ.

18       sriden@beckreed.com

19       JILLIAN E. CARSON, ESQ.

20       jcarson@beckreed.com

21

22

23   ALSO PRESENT (attending remotely):

24       Michael Pellegrino, Videographer

**Page 5**

1    ------------------I N D E X----------------

2

3    EXAMINATION of BRIAN STEVENS          PAGE

4    By Mr. Lumish                11

     By Ms. Doore                 408

     By Mr. Lumish                415

5

6

7

8    ----------------INSTRUCTIONS----------------

9    Page    Line

10   288     11

         415     7

11   415     14

12

13   ------------------EXHIBITS------------------

14   STEVENS EXHIBIT                   PAGE

15   Exhibit 1   Document entitled          16

16       "Defendants' Notice of Rule

17       30(b)(6) Deposition to

18       Plaintiff Neural Magic, Inc."

19   Exhibit 2   E-mail chain, Bates        98

20       NMI00022315 to NMI00022319

21   Exhibit 3   E-mail chain, Bates        107

22       NMI00014276 to NMI00014281

23   Exhibit 4   E-mail chain, Bates        118

24       NMI00030289 to NMI00030290

2 (Pages 2 - 5)

```
 1    ---------------EXHIBITS,(Con't)-------------
 2    STEVENS EXHIBIT                    PAGE
 3    Exhibit 5  Document entitled "Neural     139
 4        Magic, Inc., Sales Order,"
 5        Bates NMI00005268 to
 6        NMI00005269
 7    Exhibit 6  Document entitled "Neural     166
 8        Magic Board Meeting July 11th,
 9        2019"
10    Exhibit 7  Document entitled "Software   203
11        Delivered AI, Simplifying the
12        Future of Machine Intelligence,"
13        Bates CV-NMI-00006257 to
14        CV-NMI-00006287
15    Exhibit 8  Document entitled "Wayfair    226
16        with Neuralmagic," Bates
17        WAYF000318 to WAYF000320
18        (EXHIBIT WITHDRAWN)......... 228
19    Exhibit 9  Document entitled "Neural     229
20        Magic Board Call December
21        19th, 2019," Bates
22        NMI00006668 to NMI00006703
23
24
```
Page 6

```
 1    ---------------EXHIBITS,(Con't)-------------
 2    STEVENS EXHIBIT                    PAGE
 3    Exhibit 17  Document entitled          373
 4        "Management Report,
 5        Neuralmagic, Inc., For the
 6        period ended October 31,
 7        2018," Bates NMI00009106 to
 8        NMI00009115
 9    Exhibit 18  Document entitled          376
10        "Management Report,
11        Neuralmagic, Inc., For the
12        period ended October 31,
13        2019," Bates NMI00011809 to
14        NMI00011818
15    Exhibit 19  Document entitled          377
16        "Neuralmagic, Inc., Fair
17        Market Value, Appraisal Report
18        As Of June 1, 2018," Bates
19        NMI00005831 to NMI00005860
20    Exhibit 20  Document entitled          386
21        "Neuralmagic, Inc., Fair
22        Market Value, Appraisal Report
23        As Of December 31, 2019," Bates
24        NMI00005798 to NMI00005830
```
Page 8

```
 1    ---------------EXHIBITS,(Con't)-------------
 2    STEVENS EXHIBIT                    PAGE
 3    Exhibit 10  Document entitled "Recent    242
 4        feature additions and
 5        improvements in FBGEMM,"
 6        Bates NMI00000043 to
 7        NMI00000047
 8    Exhibit 11  Document entitled "TVM at    246
 9        Facebook," Bates NMI00000128
10        to NMI00000155
11    Exhibit 12  E-mail, Bates NMI00010345    266
12        to NMI00010349
13    Exhibit 13  E-mail, Bates NMI00058655    273
14        to NMI00058656
15    Exhibit 14  E-mail, Bates NMI00064452    274
16        to NMI00064453
17    Exhibit 15  Document entitled "Meeting   283
18        of the Board of Directors of
19        the Corporation," Bates
20        NMI00014660 to NMI00014661
21    Exhibit 16  Table entitled "TCO data     364
22        reference," Bates
23        NMI00005874
24
```
Page 7

```
 1    ---------------EXHIBITS,(Con't)-------------
 2    STEVENS EXHIBIT                    PAGE
 3    Exhibit 21  Document entitled "Common    393
 4        stock valuation for
 5        Neuralmagic, Inc., dba
 6        Neural Magic, Valuation date
 7        January 13, 2021," Bates
 8        NMI00005716 to NMI00005797
 9    Exhibit 22  Document entitled "Series    403
10        A Preferred Stock and Series
11        A-1 Preferred Stock Purchase
12        Agreement," Bates NMI00064105
13        to NMI00064140
14
15
16
17
18
19
20
21
22
23
24
```
Page 9

3 (Pages 6 - 9)

HIGHLY CONFIDENTIAL

| | |
|---|---|
| 1    P R O C E E D I N G S | 1   Doug Lumish.  I'll be taking your deposition |
| 2 | 2   today on behalf of Meta. |
| 3         VIDEO TECHNICIAN:  Good morning. | 3         Do you understand that? |
| 4   We are going on the video record at | 4      A.   Yes, I do.  Hi, Mr. Lumish. |
| 5   approximately 9:40 a.m. on January 21, | 5      Q.   Good morning. |
| 6   2022.  Please note that audio and video | 6         And I will absolutely swing back |
| 7   recording will continue to take place | 7   and forth between calling Meta Facebook and |
| 8   unless all parties agree to go off the | 8   Facebook Meta.  So can we have an understanding |
| 9   video record. | 9   today that Meta or Facebook refer to the same |
| 10        This is the video recorded | 10  company? |
| 11  deposition of Brian Stevens in the | 11     A.   For me as well. |
| 12  matter of Neural Magic, Incorporated, | 12     Q.   I appreciate that. |
| 13  versus, Facebook, Incorporated, and | 13        My colleague, Patrick Justman, is |
| 14  Aleksandar Zlateski filed in the | 14  on, and we probably won't see or hear from him, |
| 15  United States District Court for the | 15  but he's also a lawyer for Meta.  And then you |
| 16  District of Massachusetts Civil Action | 16  met Mr. Riden briefly, as he introduced |
| 17  Number 1:20-cv-10444-DJC. | 17  himself, you understand he's a lawyer here for |
| 18        This deposition is being held | 18  Mr. -- or Dr. Zlateski. |
| 19  remotely via Zoom.  My name is Michael | 19     A.   Understood. |
| 20  Pellegrino.  I'm the videographer.  The | 20     Q.   All right.  You have excellent |
| 21  court reporter is MaryJo O'Connor. | 21  counsel with you.  I'm sure you've been |
| 22        Will counsel please state their | 22  prepared.  I won't go through all of the |
| 23  appearances and affiliations for the | 23  instructions. |
| 24  record. | 24        If you have any questions as we |
|                              Page 10 |                              Page 12 |
| 1         MR. LUMISH:  Doug Lumish, Latham & | 1   proceed, feel free to ask Ms. Doore or ask me, |
| 2   Watkins for Meta.  With me is Patrick | 2   I'm happy to try and make sure you understand |
| 3   Justman. | 3   the proceedings and understand what I'm asking |
| 4         MR. RIDEN:  Stephen Riden from | 4   of you. |
| 5   Beck Reed Riden for the Defendant, | 5         Have you had anything today that |
| 6   Dr. Zlateski. | 6   would impede your ability to give us your best |
| 7         MS. DOORE:  Stacylyn Doore from | 7   testimony.  So, for example, any drugs, |
| 8   Quinn Emanuel Urquhart & Sullivan on | 8   alcohol, medication that might do that? |
| 9   behalf of the Plaintiff, Neural Magic. | 9      A.   I have not. |
| 10        VIDEO TECHNICIAN:  Thank you. | 10     Q.   Is there any reason you can think |
| 11  Will the reporter please swear in the | 11  of that you couldn't give me your best |
| 12  witness. | 12  testimony today? |
| 13        *     *     * | 13     A.   Nothing that I can think of. |
| 14 | 14     Q.   And so I will ask you as we go |
| 15        BRIAN STEVENS, | 15  along, if you don't understand any questions I |
| 16  having been satisfactorily identified by a | 16  ask, please say so.  Please say you don't get |
| 17  Massachusetts drivers license and duly sworn | 17  the question, you don't understand it, and I |
| 18  by the Notary Public, was examined and | 18  can do my best to reframe it.  If you don't do |
| 19  testified as follows: | 19  that, I'm going to assume you understood the |
| 20  EXAMINATION | 20  question. |
| 21  BY MR. LUMISH: | 21        Does that make sense? |
| 22     Q.   Good morning, Mr. Stevens.  We | 22     A.   Yeah, I understood it. |
| 23  didn't get a chance to be introduced before we | 23     Q.   All right.  Since we're remote |
| 24  started.  I apologize for that.  My name is | 24  today, do you have any notes or materials with |
|                              Page 11 |                              Page 13 |

4 (Pages 10 - 13)

1    A.   I don't know.
2         MR. LUMISH:  I'm going to put
3    another document into the Exhibit Share
4    here, sir.
5         (Document marked for
6    identification as Stevens Exhibit 4)
7    Q.   So you should have in the Exhibit
8    Share now what's now marked as Exhibit 4.  And
9    this is an e-mail chain with production numbers
10   NMI30289 through 30290.
11   A.   I see it.
12   Q.   And is this a document you've seen
13   before?
14        Withdrawn.  Let me ask it this
15   way.
16        This is a set of e-mails you sent
17   and received to and from a man named Moshe
18   Friedman, right?
19   A.   That's what it appears to me.
20   Q.   And Mr. Friedman works at a
21   company called Amdocs; is that true?
22   A.   That's correct.
23   Q.   And tell us what Amdocs is,
24   please?

Page 118

1    A.   They are -- they are a company
2    that I believe builds software for
3    telecommunications companies.  And then Moshe,
4    you know, being part of their venture arm, I
5    believe.
6    Q.   And they invested in Neural Magic,
7    Amdocs, right?
8    A.   Yes.
9    Q.   And do you know how much money
10   they've invested in the company?
11   A.   I want to say prior to this round,
12   it was several million.  And then, as you see
13   here, 3 million additionally in this round.
14   Q.   You said several or 7 million the
15   first time?
16   A.   I said several.  So the total of
17   approximately 5 million.
18   Q.   All right.  So Amdocs has put
19   something in the order of $5 million of
20   investment into Neural Magic to date; is that
21   right?
22   A.   About there, correct.
23   Q.   Right.  If you can go to the back,
24   please, so page 30290.  The first e-mail in

Page 119

1    time is the last one printed here, and it's
2    from September 6, 2021, at 9:02 a.m.
3         And read as much as you like, sir,
4    for context, but I want to point you to the
5    third request that Mr. Friedman makes.  He
6    says:
7         "3) One question I got back from
8    my committee was why A16Z would be
9    passing totally.  They understood why
10   NEA was ready to lead faster than A16Z
11   was, but they still had some questions
12   re why A16Z wouldn't invest at all..."
13        Do you see that?
14   A.   I do see that.
15   Q.   Is A16Z a reference to Andreessen
16   Horowitz?
17   A.   Yes, it would be.
18   Q.   Why use that A16Z instead of the
19   name?
20   A.   It's a cool kind of software thing
21   that people do when they're --
22        (Court reporter clarification)
23   A.   It's a cool kind of convention
24   that people use sometimes to shorten words.

Page 120

1    Q.   Okay.  And then so you respond to
2    this e-mail, and you can see on the first page
3    your response starts a little more than halfway
4    down, dated September 6, 2021 at 9:46 a.m.  And
5    I'm just going to go back to the second page,
6    3290, and at the end of your e-mail there, I
7    think you answer his question.
8         So about two or three inches down
9    on the second page, you have:
10        "a16z - Peter Levine is a good
11   friend and just stated he is winding
12   down since recovering from cancer, so
13   would have needed to find a new partner
14   there.  I just didn't spend enough time
15   with them, IMO, so it's my failure in
16   not keeping their interest."
17        That's what you said to
18   Mr. Friedman, right?
19   A.   Yes, I did.
20   Q.   And this was your explanation to
21   him for why Andreessen Horowitz wasn't
22   investing any further in Neural Magic, right?
23        MS. DOORE:  Objection.
24   A.   That was my explanation to Moshe,

Page 121

31 (Pages 118 - 121)

1  correct.

2      Q.    And you don't mention concerns

3  that Andreessen Horowitz had about the

4  allegations of misappropriation in this cases

5  in that response, right?

6      A.    Yes, I would have found that

7  irrelevant here.

8      Q.    So were you lying to Mr. Friedman

9  in this response?

10         MS. DOORE:  Objection.

11      A.    No, I was not lying.

12      Q.    Okay.  So the reason Andreessen

13  Horowitz didn't invest was because you would

14  have needed to find a new partner, in light of

15  Mr. Levine's winding down his work, and you

16  didn't spend enough time with them; is that

17  right?

18         MS. DOORE:  Objection.

19      A.    Can you restate?  That was very

20  long.

21      Q.    Sure.  The reason Andreessen

22  Horowitz didn't invest in Neural Magic are the

23  ones you stated in your answer here; that in

24  light of Mr. Levine winding down, you would

Page 122

1  have needed to find a new partner at Andreessen

2  Horowitz, but you didn't spend enough time with

3  them to do that.

4         MS. DOORE:  Objection.

5      A.    No, that's not correct.

6      Q.    All right.  So those are not true

7  statements in the response?

8         MS. DOORE:  Objection.

9      A.    Yes, they are true statements.

10      Q.    You told Mr. Friedman at Amdocs

11  about the allegations of misappropriation,

12  right?

13      A.    Yes, they were aware.

14      Q.    And he told you on September 8,

15  2021, at the very top of the first page, that

16  they were going to send a $3 million indication

17  of interest anyway, right?

18      A.    Yes.

19      Q.    And did, in fact, Amdocs invest

20  another $3 million in Neural Magic in September

21  of 2021?

22      A.    Approximately.

23      Q.    And in the e-mail below that one,

24  you tell Mr. Friedman that Pillar would like to

Page 123

1  invest 2 million rather than the original 400K

2  you had mentioned, right?

3      A.    That is correct.

4      Q.    And did you tell Pillar about the

5  allegations of misappropriation in this case?

6      A.    They would have been already

7  aware.

8      Q.    Because you told them.

9      A.    Because they were a board member

10  and an investor prior.

11      Q.    Just like Andreessen Horowitz.

12      A.    Correct.

13      Q.    And did they, in fact, invest

14  $2 million in September of 2021?  Pillar, I

15  mean.

16      A.    I believe thereabouts, yes.

17      Q.    I asked you about the $15,000 to

18  Thermo Fisher before.  Was there any kind of

19  pricing scheme that led to that $15,000

20  acquisition price?  In other words, like a

21  pricing plan or a price list that the company

22  had generated?

23      A.    Not that I believe for the

24  developer offering.

Page 124

1      Q.    Was there ever at Neural Magic a

2  price list or pricing plan for its products?

3      A.    Nothing that I recall is -- would

4  be considered a pricing list.

5      Q.    Do you now have a plan for how to

6  price Neural Magic products?

7      A.    We do not as yet.

8      Q.    Is that something you're working

9  on?

10      A.    It's something that we're

11  committing to do early this year.

12      Q.    Is that a project you personally

13  are working on?

14      A.    Yes, I'll be driving it.

15      Q.    And are there alternatives that

16  you're considering on how you would price your

17  software?

18      A.    Well, yes, there is always

19  alternatives.

20      Q.    Well, I don't mean in an esoteric

21  sense.  I mean in fact actual alternatives that

22  you've written down or considered and you're

23  choosing them on.

24      A.    I'm going back to Zoom, so I think

Page 125

32 (Pages 122 - 125)

1　　　　MS. DOORE:  Nothing further from
2　me.  Thank you.
3　　　　MR. LUMISH:  All right.  Thank you
4　very much.
5　　　　VIDEO TECHNICIAN:  The time is
6　8:14.  We are going off the video
7　record.
8　　　　(Time Noted:  8:14 p.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Page 418

1　　　C E R T I F I C A T E
2
3　COMMONWEALTH OF MASSACHUSETTS
4　SUFFOLK, SS.
5　　　　I, MaryJo O'Connor, a Notary Public
6　in and for the Commonwealth of
7　Massachusetts, do hereby certify:
8　　　　That BRIAN STEVENS, the witness
9　whose testimony is hereinbefore set forth,
10　was duly sworn by me and that such testimony
11　is a true and accurate record of my
12　stenotype notes taken in the foregoing
13　matter to the best of my knowledge, skill
14　and ability.
15　　　　IN WITNESS WHEREOF, I have hereunto
16　set my hand and Notarial Seal this 28th day
17　of January 2022.
18
19
20
21
22　　　MARYJO O'CONNOR, RDR/RMR
　　　　Notary Public
23
24

My Commission expires: September 12, 2025

Page 420

1　　　C E R T I F I C A T E
2　　　　I, BRIAN STEVENS, do hereby certify
3　that I have read the foregoing transcript of
4　my testimony, and further certify that it is
5　a true and accurate record of my testimony
6　(with the exception of the corrections
7　listed below):
8　Page  Line　　　Correction
9
10
11
12
13
14
15
16
17
18
19　　　Signed under the pains and penalties of
20　perjury this _____ day of _____,
21　2022.
22
　　　_____
23　　　BRIAN STEVENS
24

Page 419

1 STACYLYN DOORE, ESQ.
2 stacylyndoore@quinnemanuel.com
3　　　　JANUARY 28, 2022
4 RE: NEURAL MAGIC V. FACEBOOK
5 JANUARY 21, 2022, BRIAN STEVENS, JOB NO. 5044820
6 The above-referenced transcript has been
7 completed by Veritext Legal Solutions and
8 review of the transcript is being handled as follows:
9 __ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext
10　to schedule a time to review the original transcript at
11　a Veritext office.
12 __ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF
13　Transcript - The witness should review the transcript and
14　make any necessary corrections on the errata pages included
15　below, noting the page and line number of the corrections.
16　The witness should then sign and date the errata and penalty
17　of perjury pages and return the completed pages to all
18　appearing counsel within the period of time determined at
19　the deposition or provided by the Code of Civil Procedure.
20 __ Waiving the CA Code of Civil Procedure per Stipulation of
21　Counsel - Original transcript to be released for signature
22　as determined at the deposition.
23 __ Signature Waived – Reading & Signature was waived at the
24　time of the deposition.
25

Page 421

106 (Pages 418 - 421)